# EXHIBIT H

MARCH 6TH HEARING

JUDGE LAPORTE:  We're on the record in Case

No. C06-80343, Angeles Chemical Company versus McKesson

Corporation, et al.

Counsel, please state your appearances for the

record.

MR. CAUFIELD:  Jeff Caufield for Angeles

Chemical Company, Inc.

MS. GIBSON:  Good morning, Your Honor.  Diane

Gibson for Squire, Sanders & Dempsey.  With me is also

Suzanne Henderson for Squire Sanders.

JUDGE LAPORTE:  Thank You.

MR. EDGCOMB:  Good morning, Your Honor.  John

Edgcomb for defendant and counter-claimant McKesson

Corporation.  Also with me is Todd Pickles of Bingham

McCutchen LLP.

JUDGE LAPORTE:  Thank you.  Okay, well let's

start with the McKesson motion.  In that one, I don't

agree that there was a waiver of McKesson's privileges.

And, you know, I'm very sorry to be the third court to be

dragged into all of these disputes and would like to try

to be consistent with the other judges.  And I think

that it is appropriate for McKesson to have a chance to

do a privilege log, and then if you dispute that

privilege log, you can take that up I think with the

1

Central District gain.  So I view this as the easier

motion on the whole.  I willing to -- you know, I have

looked at all the papers and considered the arguments,

so if you want to try to highlight something that you

think will change my mind, you can try.

MR. CAUFIELD:  Well, first of all, it was

already pursuant to the Western District of Washington

ruling, they already had denied a protective order.

JUDGE LAPORTE:  Right.  But I don't read it

the same way you do.  I mean, I agree they denied a

protective order as to confidentiality, but I don't agree

that the parties involved there waived McKesson's own

privileges.

MR. CAUFIELD:  And then there's also the

written agreements.  These are documents in possession

of a third party.

JUDGE LAPORTE:  Right.  But there is a

difference between common interest confidentiality and

work product and hence attorney-client.  So again, but

if I'm wrong, you can take that up with the judge in the

Central District, I think.

MR. CAUFIELD:  Okay.  So this is without

prejudice --

JUDGE LAPORTE:  Well --

MR. CAUFIELD:  -- to us being able to raise this

2

issue.

JUDGE LAPORTE:  If appropriate.  It's my
opinion that they didn't waive it.  But I recognize I'm
the third judge to be involved and I would certainly
defer -- if there is some legitimate way that the
Central District feels is legitimate.  I read
their decisions, and they've ruled against you in the
past.  But again, they know better what they meant in
the Central District than I know.

MR. CAUFIELD:  Well, these documents were not
brought -- the Central District has not issued a ruling
on --

JUDGE LAPORTE:  Okay.  Well, then if they
haven't, that's fine.

MR. CAUFIELD:  That was something
that was a completely erroneous representation to this court.

JUDGE LAPORTE:  If so, if that's the case,
like you say, you can straighten that out with the
Central District as opposed to with me.

So it's very difficult for the Court to be
involved, the third court involved in overlapping
disputes.  If I misunderstand, take it up with the
Central District.  That's really the bottom line.  That's
all I can offer on this.

MR. CAUFIELD:  Well, I would ask that the

3

order be instructed without prejudice because otherwise
what we'll end up -- having is -- we'll end up back in front
of the Central District with representations that you
ruled differently.

JUDGE LAPORTE: Well, it's my view that they
didn't waive it as far as I can tell. But it's also my
view that it would be better to have a court like the
Central District -- who has made the most substantive
rulings in this area and ultimately it's their case --
if they disagree, I'm not quite sure what the results
should be. I don't know what your comments are on this.

MR. EDGCOMB: Well, I agree with what you're
saying. I don't think there was a waiver. I think the
court in the Central District, despite what counsel just
said, has ruled that these documents are privileged,
that counsel did already raise this issue with the
Central District.

I think it's useful for you to find that McKesson
did not waive them and send this case back to the
Central District. If they want to raise whatever issues
they want to raise with the Central District they can
take it up with Judge Hatter and explain to them
that they've already ruled on a number of these
privileged documents and if there is another motion
brought, this is the fourth, fifth, sixth bite at the apple.

JUDGE LAPORTE:  Okay.

MR. CAUFIELD:  Your Honor, I don't understand how a court -- these documents were not even known to exist until after various other rulings were issued by the Central District.  I think to represent to this court that somehow the Central District has ruled on documents that were not even known to exist and in fact have been hidden for five years from existence my McKesson in this case.

These documents have been in possession of counsel for McKesson for five years.  They're responsive discovery, that was sent to McKesson five years ago. But for the fact that we had some correspondence produced that revealed their existence, we never would have known.

How can we have possibly address this before the magistrate in the Central District when we didn't even know they exist, moreover we don't even know what they are at this point in time because they've never --

JUDGE LAPORTE:  All right.

MR. CAUFIELD:  And so --

JUDGE LAPORTE:  All right.  Okay.  This is my ruling, and I'm going to ask you to write it up briefly, which is that in my view, the privilege was not waived. It appeared to me that the Central District also refused

5

to override the privilege, but I am not -- that's not
the only ground of my view.  My view is it's not waived,
but if the Central District thinks otherwise, I
certainly defer to their interpretation of their own
rulings, not mine.

   MR. EDGCOMB:  Right.

   JUDGE LAPORTE:  All right.  So the motion is
granted and a privilege log needs to be provided.  And I
think McKesson obviously has been very sternly taken to
task by other judges, and I am assuming that it will
obviously require -- and I have a special standing order
about what kind of privilege log is required.  It's
going to be a very legitimate, fullsome one.

   MR. EDGCOMB:  We've already produced the
privilege log, Your Honor.

   JUDGE LAPORTE:  All right.  In any case --

   MR. CAUFIELD:  No, they haven't, Your Honor,
because the remaining documents have not been produced.

   JUDGE LAPORTE:  Well, anything you're
withholding I'm not -- the issue -- this is -- I've
given my ruling on that.

   Okay.  So now I'm reaching the Squire Sanders
issue.  Now, this one is a lot more difficult motion to
my mind.  It really goes to burdensomeness.  There's no
question in any mind that these are relevant documents,

some with significant relevance.

So some degree of burden is justified under 26(B).
On the other hand, this is a third party and it's quite
burdensome for a third party to have to do a privilege
log and what's already been done. And so I don't know
if the plaintiff is willing to pay for any of the cost
of this or what?

Because I think you've narrowed -- by excluding
some privileged work product-protected documents, you've
narrowed the scope of the privilege log, but apparently
there is still some documents that you feel you would
have to withhold and therefore create a privilege log
for, and you're not willing to forego that. That's what
I understand despite the narrowing of the dispute.

MR. CAUFIELD: Well, I guess the issue is
they've never defined for us what the documents they
believe that are privilege that would be required to put
on a privilege log. So for them to say, demand that we
make a unilateral waiver of any privilege log -- because
what we've attempted to do frankly, Your honor, is we've
said the documents that McKesson sent to you, we want
produced.

Now, I don't think -- there's already been a
ruling by the Western District of Washington that
there's no privileges at this juncture that could

7

possibly attach the McKesson-generated document for the

Univar entities.  That's what the protective order

denial was in Washington.  Now -- so we narrowed our

scope to say we want the documents that McKesson sent to

you, which are McKesson-originated documents.

      JUDGE LAPORTE:  Okay.  You're not asking for

the document sent to McKesson.

      MR. CAUFIELD:  Other than corresponding.

There should be correspondence between the parties

because the correspondence between the two parties

details what they received, what they didn't receive.

      So what we did is we narrowed our scope.  If you

notice, we said we want documents reflecting the

transmittal of information -- of documents between the

parties, and to the extent -- the only other body of

documents are if the law firm received documents and the

law firm sent them to somebody, you know, the

McKesson-originated documents, we would like the

correspondence for the letters as to where they went.

Because we're in a situation where the law firm has some

undefined number of documents.

      JUDGE LAPORTE:  Hm-hmm.

      MR. CAUFIELD:  We want McKesson

Chemical-generated documents, which you've already said

can be sent back to McKesson, and McKesson can do a

privilege log and we can challenge that privilege log

and whatever else.

In the Central District we narrowed our request

because we don't want their legal analysis.  And we

sought to specifically exclude that in the way we

defined -- we put our definitions in, so that, for

example, the law firms analytical results or memos or

anything else they wrote saying this is bad doc -- this is a

risk, this is not a risk, that's what we excluded in our

definitions.

We're not asking for that.  We're not asking for

essentially attorney-client communications like if they

advised their client this is a good deal, bad deal.  We

don't want that.

JUDGE LAPORTE:  Alright.

MR. CAUFIELD:  The only thing we narrowly want

is the documents they received from McKesson, and we

would like the documents that reflect what happened to

the documents they got.

For example, there was supposed to be - there was supposed

to be an index as we noted.  There was supposed to be an index

generated by the law firm as part of the agreement that reflected

everything they received from McKesson.  So we should be

able to take that index and look at everything that

McKesson has given us and check off to make sure that

the production to us is actually complete.  Because

9

there's been a lot of issues in this litigation with
documents disappearing, and to date I think there's been
600 boxes have been found in this process.

     JUDGE LAPORTE:  No, I understand that.

     MR. CAUFIELD:  So we attempted to narrow -- I
don't think -- the only thing they really need to
prepare a privilege log on, I would imagine, was if they
have letters that reflect the transmittal of documents
to their client or otherwise, which we're certainly
willing to -- that they want to retain as being
privileged somehow -- I don't know.  If there's analysis
from one of those documents they may be able to redact
those.  Because if all we're talking about is where did
you send the boxes, I think they could redact those
letters and probably a privilege log would need to be
prepared.  But I would imagine it would be no more than
a few entries.

     JUDGE LAPORTE:  What about that?

     MS. GIBSON:  Your Honor, I think the issue
that we've had all along is that we have been looking at
the set of categories that are listed in the subpoena and
looking at what they specifically and literally ask us
for.

     JUDGE LAPORTE:  Right.  But one problem I have
with your side reading your papers is you don't seem to

fully acknowledge the narrowing that the plaintiff has

engaged in, specifically the privilege exclusions that

he's just referred to here:  legal analysis, your

invoices, your attorney-client communications, et

cetera, which take -- I would think will take 99 percent out of

the realm.  They're not even seeking that so you don't have to

log any of that.

     MS. GIBSON:  The principal issue that we have

Your Honor, and obviously we're being very, very careful

because we're dealing with the attorney-client privilege

relating to former clients.

     JUDGE LAPORTE:  Right.

     MS. GIBSON:  So we are being very literal

about the subpoena and have been all along.

     What we have been trying to -- and this is

addressed in our papers -- one of our principal concerns

has been every time we've gone back to plaintiff's

counsel and said, "Okay.  You're saying you don't want

anything privileged.  Now, that means you don't want a

log."  The response has been, "But if you withhold

anything that's privileged, we want it on the log."  So

maybe we can work that out here today.

     JUDGE LAPORTE:  That's what I -- it seems to

me you should be and should have been able to work that

out because I think you've really narrowed the dispute

very much.  And they're saying they don't want to take
it on faith.  You need to give them some examples of
having carved out all these exclusions what's left.  You
just pointed out maybe only the transmittal letters to
your own client.

        MS. GIBSON:  If we're talking about what
counsel said today --

        JUDGE LAPORTE:  Yes, we are.  And what he --

        MS. GIBSON:  -- and what they said before.
Because all their negotiations, Your Honor, have always
been based before on what counsel has said before.

        The narrowing of the categories in the subpoena,
there's two issues that leave us in concern about the
privilege, one is the continuing existence of the phrase "relate
to" in the categories that ask for documents received from
McKesson.

        As we explained in our papers, a document that
includes the phrase "relate to" -- this is a two-step
process, Your Honor, to explain this, so please bear
with me.

        Given the fact that the phrase "relate to" you
have to consider things such as attorney marginalia
and the like or memos or any other things
that we've been talking about could conceivably be
responsive to those categories.

        In expressing -- what plaintiffs' counsel has done

in expressing the idea that plaintiffs' counsel does not
require the production of privileged documents is
plaintiff's counsel has gone about three-quarters of the
way there by putting in the exception in the seventh
subpoena.  But what is not excepted is documents have
been prepared by the client sent to us.  Squire Sanders
own work product is not excepted in the definition of
this subpoena.

     If it were excepted in an order, if we had an
ordered that specifically allowed us -- said that the
subpoena was not seeking the full description of
privileged documents which we asked plaintiffs' counsel
to agree to and they did not agree to, then I agree,
Your Honor.  If we are confronting a subpoena that
specifically excepts, not only from production but also
from logging, our work products for any client that we
represented in the course of this, and any
attorney-client privilege for any client whose
privileged materials we hold, then I agree.  I think
probably the only thing we would have to log would be
something relating to the transmittal of documents, that
that was the one thing that counsel did not want to
except.

     JUDGE LAPORTE:  Okay.  Well, isn't that where
we are?  I'm asking the plaintiff now.  I think that the

two of you should work this out, and I think you have

worked out 99 percent.

Now I think, yes "relate to" in general can be a

broadly opening door, but with these exclusions, I don't

know that it is. On the other hand, you've agreed to

provide McKesson documents relating to the sale. So I

mean, you understood it in that context.

MS. GIBSON: Your Honor, we were working with

the definition that McKesson asked us to provide, and

they excluded privileged documents. It was just

documents that McKesson sent to us.

JUDGE LAPORTE: Okay.

MS. GIBSON: And so as we've indicated, Your

Honor, I do want to talk about burden if we are ordered

to produce anything more, even if we go beyond the

privilege issue --

JUDGE LAPORTE: Well, let's talk about one

thing at a time. I think the main burden though that

you identified, so they're not unrelated, is the

privilege log burden.

So plaintiff, do you hear what she just said? Are

you asking for work product for any client or any

attorney-client privilege documents?

MR. CAUFIELD: I am not asking for any work

product prepared by SSD in connection with the work

14

performed by SSD for any of their clients in connection
with the sale which I believe to be all the work product
that they would have done that was contemplated by our
subpoena.

JUDGE LAPORTE:  That seems right, doesn't it?

MS. GIBSON:  Your Honor, my only comment is
that we have documents as we've indicated we continue to
represent some of these parties on these issues after
the sale, and so it needs to be broader than that.  It
can't just be in connection --

JUDGE LAPORTE:  In connection with the sale or
issues after the sale?

MS. GIBSON:  Your Honor --

JUDGE LAPORTE:  Excuse me.

MS. GIBSON:  I beg your pardon, Your Honor.

MR. CAUFIELD:  Okay.  This is the offer.  This
is when I run into "awkward land", okay?  Because I
don't have a problem with what I call the Univar
entities.  Any work product they did for the Univar
entities I'm fine with.  So if they did any work product
for any of the Univar entities, I don't think -- our
subpoena doesn't ask for it, doesn't call for it to be
produced.

And I believe that with respect to our subpoena
the attorney-client communications -- which include

15

invoices and other things -- provided to any of the Univar

entities -- would in fact be excluded and nonresponsive

to our subpoena. So therefore a privilege log would not

be prepared.

Now one of the fundamental problems I've run into

here is that I have counsel here that's been

representing McKesson all along. So they've had all the

documents. They've been representing McKesson all

along. So one of my key issues if I'm going to talk

about waiver for failing to list documents on a

privilege log, et cetera, did McKesson ever ask SSD for

these documents earlier, because if McKesson knew that

SSD had these documents from the very beginning and if

McKesson withheld the correspondence that indicated that

SSD had the documents and then McKesson didn't ask SSD,

that may go into -- you remember the Ninth Circuit just

came out with the Burlington case in 2005 that addressed

the waiver issue.

So there's a timing for the privilege log issue

here that I've yet to address to the magistrate in the

Central District. So if there is correspondence between

SSD and McKesson where SSD is talking about documents

that SSD is holding for Univar, I think that

correspondence -- SSD in that instance -- the problem is -- SSD is

representing McKesson now and apparently represented the

16

opposing parties in a major commercial transaction in
the past.

So SSD has actually got kind of an internal
conflict.  But I think if SSD is wearing a hat of
representing Univar and communicating with McKesson
recording whether or not there's former Univar documents
they have that they're going to send, I think those
documents, that correspondence should be something --
shouldn't be privileged because --

JUDGE LAPORTE:  Now, that you can just get
from McKesson.  Why can't you get that from McKesson
instead of dragging the law firm into this?

MR. CAUFIELD:  That's a good suggestion.
That's good.  We can take it off the table.  I'll ask
McKesson for that.

JUDGE LAPORTE:  Okay.

MR. CAUFIELD:  So then the only thing we want,
as I stated again, is any documents McKesson sent to
Univar or the Univar entities -- which would be the
Graham & James law firm -- in connection with the sale
of McKesson Chemical to the Univar entities.  And any
documents that reflect what happened, if the documents
were sent out or not --

JUDGE LAPORTE:  Right.  Okay.

MR. CAUFIELD:  -- and then the only other

17

category is Graham & James represented Univar entities.
They corresponded with McKesson. That's part of the
sale.

The letters that went back and forth reflecting
the transmittal of documents, et cetera, between
McKesson and Graham & James, we already have a bunch of
them. However, there appears to be letters that are
missing and it would certainly be important to know, for
to us to be able to make sure we're getting everything,
to know what was sent. Particularly there's --

JUDGE LAPORTE: All right.

MR. CAUFIELD: I'm sorry.

JUDGE LAPORTE: So I think that narrows the
categories down and satisfies in my mind any concern
about the privilege log or "relating to."

MS. GIBSON: May I state back what I'm hearing
so that I'm sure that we're communicating?

JUDGE LAPORTE: All right. But communicate
with each other as well on that. Not -- talk to me, but I
see the plaintiff is looking at his papers. So I want
you to make sure you're listening to what she said. I
do not want to get two competing proposed orders out of
this today.

MS. GIBSON: Your Honor, what I'm hearing is
that the subpoena would be narrowed in scope to

documents received from McKesson by Graham & James in

connection with the sale, the 1986 sale, and documents

regarding the transmittal of such documents with the

proviso that to the extent that those -- in that latter

category were deem to be privileged -- attorney-client

privilege -- that we would then put those on a log and

that would be the subject for further discussion.

JUDGE LAPORTE:  All right.  Is that clear?

MR. CAUFIELD:  Yeah.  The proviso is, we're

not asking for -- we are requesting the fact of where

the documents went to, so that we would expect that the

fact of what happened to the documents would be included

in the letter, if there was an analysis contained, then

they should probably be redacted and reflect that they

were redacting analysis but not the fact.

JUDGE LAPORTE:  All right.  Okay.  You know,

another possible way to do this if you wanted to is --

I'm not saying you have to agree to this -- you could

just accept a declaration.

If the redaction is a lot of trouble, and I don't

know that it would be.  I don't know how many documents

they were.  But just because they are third party, you

can't ask them an interrogatory normally.  But you can

agree to answer an interrogatory, just listing

everything you know about the whereabouts, as opposed to

providing redacted document, if you both thought that
was a better way to go.

MS. GIBSON:  Your Honor, that is something --
after we go through the -- we're going to have to go
through the 103 boxes.  So we still have this issue of
burden.

I think based on what we've done so far, I think
that we should be able to respond to this category in
terms of documents received from McKesson in connection
with the sale.  I think that we should be able to do
that without substantial additional burden because that
really is covered by what we did for McKesson already.

JUDGE LAPORTE:  Right.  Right.

MS. GIBSON:  And I think that we have
received -- we've provided virtually all of that
already.  We will, however, have to go through the 103
boxes again because what we did not provide before was
correspondence back and forth between the parties.  What
McKesson had asked us to do was operational documents
only.

JUDGE LAPORTE:  You ought to be able to just
hire 50 dollar an hour people to at least make the first
cut of what's on letterhead.

MS. GIBSON:  I think we can do that --

JUDGE LAPORTE:  That should really reduce the

20

burden.

       MS. GIBSON:  And I think we can do that.  It also depends on the timing, how much time we have to do this.  But it still took us 140 hours to look at every piece of paper in those boxes, before and even at 50 dollars an hour, that still adds up.

       JUDGE LAPORTE:  Yeah, yeah.  What about -- the microfiche is on top of this, right?

       MS. GIBSON:  The microfiche is on top of this.  Can I give a report on where we are on the microfiche?

       JUDGE LAPORTE:  Yeah.

       MS. GIBSON:  There were 34,000 images.  We've reviewed them and the documents that actually relate to McKesson sites that would be responsive to whatever we're talking about here is less than five thousand.  They are currently being reviewed by Univar for privilege.  What we would propose that you do is treat them the same as what we did before which is that we would then hand -- after Univar reviews them for privilege that we would then hand them to McKesson and McKesson would also review them for privilege.  These are obviously issues that we don't have a stake in other than making sure that our former clients have a say.

       I wouldn't anticipate that that would create an additional burden for us.  We've essentially done our

work there.

JUDGE LAPORTE:  Okay.

MS. GIBSON:  But I am concerned about the burden and cost of having to lift the lid and look at every piece of letterhead again on the 103 boxes.

JUDGE LAPORTE:  I think that becomes an issue of how much is it?  I think if you do it in the most efficient way possible -- as I say, just looking at the letterhead and so on.  How long is it going to take?

MS. GIBSON:  It's exactly what we did that last time, Your Honor.  It took us 140 hours to do that.

JUDGE LAPORTE:  Okay.  But as I said, I think a lot of those person hours can be at fifty dollars an hour.

MS. GIBSON:  They can be, Your Honor.  But we do happen to know how long it will take.

JUDGE LAPORTE:  Right.  So what is 140 times 50?

MS. GIBSON:  Seventy -- must be seven -- anybody have a calculator?

MR. CAUFIELD:  $7,000.

JUDGE LAPORTE:  Okay.  So $7,000 doesn't shock to my conscience.  Then on top of that you have to do some further review.

MS. GIBSON:  That's the part that actually

22

becomes the problem, Your Honor, because of the nature

of these documents.  Many, many, many of the documents

in the file are people's working copies.  We have

multiples of many documents.  I would suggest one thing

that could help us so that we don't have to do a lot of

redacting is that if we have one copy of the document we

don't have to redact multiples.  Otherwise if the same

(Inaudible) handwriting --

          JUDGE LAPORTE:  Right.  You would agree with

that, right?

          MR. CAUFIELD:  Yeah.

          MS. GIBSON:  And so that way the redaction was

one of the whole issues.

          JUDGE LAPORTE:  Yeah.

          MS. GIBSON:  And so if we only have to collect

documents -- there are going to be some where we only

have one copy and that copy requires redaction.  Unfortunately

we're just not in a position to be able to say to the

Court what that is at this point, how many of those are --

what our privilege issues are going to be,

except that I can say that given the nature of these files,

and many of them are working files, we just know that

there are going to be a lot of privilege issues as we go

through them.

          JUDGE LAPORTE:  Well, if it's very expensive,

23

I would consider allowing some cost shifting, like

25 percent or something like that to the plaintiff.  But

I cannot make that determination -- if it is in the 10 to $20,000

range, I don't think that that's unusual, that that's

necessarily called for.  And I also want the law firm to

do it as efficiently as possible, and I don't want to

create a cottage industry.

       MS. GIBSON:  It's not an industry we'd want to

be in either, Your Honor.

       JUDGE LAPORTE:  I don't know that anybody

would voluntarily want to be in the business.

     So I don't know what your thoughts are on that, on

the plaintiffs' side.

       MR. CAUFIELD:  Well, I have no idea how they

keep their files.  At least in my firm there's a

correspondence file.  This predates e-mail, so we don't

talk about e-mails which is always a pain.

       JUDGE LAPORTE:  Right.  I understand.

       MR. CAUFIELD:  In my firm, there's a

correspondence file that reflects all the

correspondence, and it may be this big; it may be that

big.  From what McKesson produced -- McKesson produced about

that much that they claim

to be all the correspondence.

     Now, I find it hard to believe that -- to

search -- that they don't have them in a single

correspondence file, that are readily accessible.

Plus the fact I'm a little concerned regarding --
if they searched all the files already and these clearly
would have been documents that should have been returned
to McKesson anyway.  Why are they re-searching them?

And I'm also concerned with respect to -- if all
this time was spent pulling operational documents, what
exactly was the definition given to counsel?  They had
our subpoena before McKesson apparently -- as far as I -- why
was not everything pulled at one time?

JUDGE LAPORTE:  That's a good point.

Anyway, I am not ordering any cost shifting now
without prejudice to -- after this is all done, seeking
some cost shifting for it.  But I am hopeful that it
would not come to that.  You understand that I
would not be terribly likely to do it.  I wouldn't do
it 100 percent or anything that high.  I do think
there's some merit to the point that you took a chance
by doing a partial search the first time.

And so to some degree it's the law firm's problem
that it has to do a second search of the same documents.
And I would have to be shown it is efficient.

So on the other hand though, as I say, I am
concerned.  I do think in general a law firm searching its
documents for privilege and work product and so on when

they are basically fiduciary of all their past clients

is an usually burdensome situation comparing -- and it's

a third party.

        So the other side is I might order it.  So what

I'm also advising you both is to try to --if it does

seem that that's appropriate, to agree on something

reasonable.  I would hope that you wouldn't be coming back

to the court for that.

        But it's not something I could do in advance

because we don't know exactly how it's going to turn

out.

        All right.  Is there anything else on these

motions?

        MR. CAUFIELD:  The only other housekeeping

matter is -- I hate to raise this issue -- but on the

original one, the protective order, here's my problem.

        Technically under the procedural rules, if I

disagree with your ruling on the protective order, to

avoid --

        JUDGE LAPORTE:  Under McKessons's protective

order?

        MR. CAUFIELD:  Yes.

        JUDGE LAPORTE:  Right.  You have to appeal it.

        MR. CAUFIELD:  I have to appeal it within the

Northern District which, in light of your comments

26

regarding this is really an issue that needs to be
raised, I think in the Central District, I'm not sure --
I don't want to waste the Northern District's time by
raising this issue in the Northern District when, if you
indicate it's appropriate in the Central District --

JUDGE LAPORTE:  That's not exactly what I've
indicated.  I've indicated that insofar -- part of my
reasoning is not based on the Central District's prior
rulings.  But my own impression is there is no waiver.  But
I am partially -- and only in part -- influenced by what
I view as the Central District's ruling to the same
effect.  But I would defer to their own interpretation
of their own ruling.  So that's all I'm saying about
that.

As far as -- if you disagree with my ruling here,
you have to take it up I think with judge -- I guess
Judge Chesney.  Part of this whole case just illustrates
the somewhat questionable practice of having the
subpoena -- the district that issues the subpoena be the
one you have to do your motions in front of.  I don't
think that's working out too well in this case and it
probably doesn't work out too well on a lot of other cases. But
that's just the way it is.  Go change the federal rules
of civil procedure.  I can't change them.

MR. CAUFIELD:  Right.  Because now we have,

27

like you said, three different rulings.  At least we
have one ruling out of the Western District that denies
the protective order.

       JUDGE LAPORTE:  I read it differently then you
do.

       MR. EDGCOMB:  Your Honor, that order said
nothing about privileged documents and it it's
misrepresentation.

       JUDGE LAPORTE:  Well, it did have a line in
there, but I don't think that the issue before it was
squarely whether McKesson waived its privileges as
opposed to whether the party involved did.

       But there is some language in there that could be
interpreted in a different way. I don't interpret it
that way, but again.

       In any case I don't know what you're asking me to
do, but I'm not going to try to change the rules.

       MR. CAUFIELD:  I'm just trying to get a
clarification because I --

       JUDGE LAPORTE:  My clarification is it's my
ruling.

       MR. CAUFIELD:  Okay.  it's your ruling.  So I
need to go before the Northern District.  Okay. That's
fine.

       JUDGE LAPORTE:  All right.

28

Anything further?  So will you prepare an order on that one, and I guess I really want a stipulated order from the law firm, the plaintiff.  I don't want two competing versions of the order that we just worked out on the language.  If you need to, get a copy of the tape and transcribe it.

MS. GIBSON:  Your Honor, we will do our utmost to try to work out a stipulated order for the Court to sign.

JUDGE LAPORTE:  I think what plaintiffs' position, as expressed in the papers and today, are reasonable.  I know that the parties have gone on a long road, but this is where we are now.

MS. GIBSON:  The additional issue, Your Honor, is the timing of our production.

JUDGE LAPORTE:  Oh, all right.  I don't know what the needs of the litigation are.

MS. GIBSON:  When we did the review the first time lifting the lids on all the boxes and, looking for McKesson letterhead, the actual review of the documents took -- I'm guessing because I don't remember exactly -- but I'd say a week to ten days.

We do not have the personnel at our office to do this review.  We don't have fifty dollar people who can do this.  We will have to outsource this.  It will take time to set that up, bring them in and have them do that.

29

The principal issue that creates the time problem
for us is the redaction of the privilege. We don't know
how that's going to be until we see what additional
documents that we haven't already produced there are and what
the redactions will be.

And my understanding is just to be clear that we
don't have to log the notes that we're taking off of the
documents that were produced.

JUDGE LAPORTE: Right.

MS. GIBSON: And so that will be a help.

MR. CAUFIELD: Assuming that they are SSD
notes. If McKesson wrote notes on the documents -- like
a lot of the documents are handwritten like
questionnaires and forms that McKesson prepared. I
don't think it would be appropriate for them to redact
McKesson handwriting.

JUDGE LAPORTE: Right. McKesson is the one
who is going to be doing any privileged issues on their
own documents.

MS. GIBSON: We will not knowingly redact any
McKesson notes, Your Honor. It is difficult sometimes
going back to 1986 to figure out whose handwriting
things are on documents. If they're in an attorney's
working file we're going to err on the side of caution,
but we are not going to redact anything that we know is

McKesson.

JUDGE LAPORTE:  Okay.

MS. GIBSON:  Then there will need to be time
for Univar to look at the documents and forward to McKesson. I
don't know what the needs are, of the underlying case, and
these two gentlemen can talk about that.  But I'm
sure we will need -- I would say we would need 30 days in order
to perform this review and get various people's approval and the
like.

JUDGE LAPORTE:  Right.  Have any problem with
that?

MR. CAUFIELD:  Well, yeah, there is.  We've
gone twice back to Judge Hatter already asking for an
extension, citing the fact we were waiting for
production from SSD.  Our current discovery cut off as
granted by Judge Hatter a couple of weeks ago is now
April 9th when we were supposed to have all of our
depositions completed, you name it.

Now the last two extension requests, we've
asked -- we've cited in part the SSD issue.  McKesson has
opposed our continuance.  So now we're essentially 30
days will be putting us, at or -- well, if they give it to
McKesson in 30 days, we're not going to see these
documents until well after the discovery cut off, and then
I'm faced with having to fight McKesson again to get
another extension before Judge Hatter.

31

JUDGE LAPORTE:  Well, it seems to me -- and I'll ask this to McKesson -- that that would be good cause for an extension.  And I assume you're going to ask for some time.

MR. EDGCOMB:  Well, Your Honor, as I understand it, the only documents that are being produced are correspondence between McKesson and Squire Sanders.  As far as I know, all those documents have already been produced by McKesson.

Counsel has made the representation, there are some missing.  I don't know what he thinks is missing.

JUDGE LAPORTE: Some may turn up but some may not.

MR. CAUFIELD:  Well, there's 5,000 documents on the microfiche that SSD has not yet even produced.

JUDGE LAPORTE:  That's true.

So you're saying you will oppose.  Okay.  You can have a day to review the documents once you get them.  One day.  Is that going to be enough?

MR. EDGCOMB:  I have no idea.

JUDGE LAPORTE:  Well, you seem to think there is going to be nothing new and it's not important.

MR. EDGCOMB:  Which documents are we talking about?  The ones that --

JUDGE LAPORTE:  Everything that the law firms is going to produce in 30 days and turn over to you for your own privilege review.  How much time do you want?

32

MR. EDGCOMB:  Not very long.  I'd say three
days would be more than enough.

JUDGE LAPORTE:  All right.  Three days.

It is my view -- and of course, it's totally up to
Judge Hatter to decide.  It's not for me.  But it's my
view that it would be unreasonable, too difficult, to
require the third party to do it any faster.  So 30 days
for them, three days for McKesson.

And, you know, for what it's worth, I think that
that's required.  It's unfortunate that it's beyond the
discovery cutoff, and so it seems to me that that would
be a good cause for extending the discovery cutoff.  But
I don't know enough about the litigation other than what
you just told me.  That certainly was under Judge
Hatter's purview.

All right.  Anything else?

MS. GIBSON:  I'm sorry, just one more thing.
Univar had asked to review any documents before we give
them to McKesson.  Given the much narrower description here, I'm
not certain whether Univar will want to build in time to review
them.  I, as you mentioned as before want to build in time for
Univar to review the documents as well.  I'm assuming this will be
a relatively small amount of documents.

JUDGE LAPORTE:  Well, can they review them
simultaneously?

MS. GIBSON:  With McKesson, they have

33

previously asked to review --

JUDGE LAPORTE:  Or with you?

MS. GIBSON:  With us?  We could do it in a
rolling fashion -- I think we can probably do it within 30 day
deadline, Your Honor.

JUDGE LAPORTE:  All right.  So that's the
order.

All right.  So submit a joint proposed order on
this motion by the end of the week.

All right?  Thank you.

MR. CAUFIELD:  Thank you, Your Honor.

MS. GIBSON:  Thank you.

---oOo---

34