1    Jeffery L. Caufield (SBN 166524)
     jeff@caufieldjames.com
2    Kenneth E. James (SBN 173775)
     ken@caufieldjames.com
3    CAUFIELD & JAMES, LLP
     2851 Camino Del Rio South, Suite 250
4    San Diego, California 92108
     Telephone: 619-325-0441
5    Facsimile : 619-325-0231

6    Attorneys for Plaintiffs, Greve Financial
     Services, Inc., Angeles Chemical Company,
7    Inc., and John Locke

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10   ANGELES CHEMICAL COMPANY, INC.,      )   Northern District Miscellaneous Matter No.
     et al.                               )   Case No. C 06-80343 Misc MMC (EDL)
11                                         )   Case No. C 07-80123 Misc MMC (EDL)
                    Plaintiffs,            )
12                                         )   Case No:  01-10532 TJH (Ex)
                       vs.                 )   Central District of California
13                                         )
     MCKESSON CORPORATION, a California    )   PLAINTIFF ANGELES CHEMICAL
14   Corporation, MCKESSON CHEMICAL        )   COMPANY'S REPLY TO SQUIRE
     COMPANY, FOREMOST-MCKESSON            )   SANDERS & DEMPSEY L.L.P'S
15   EXPORT CORPORTION, MORELAND-          )   OPPOSITION TO ANGELES CHEMICAL
     MCKESSON CHEMICAL COMPANY INC.,       )   COMPANY'S MOTION TO COMPEL
16   and DOES 1 through 500, Inclusive,    )   SQUIRE, SANDERS, & DEMPSEY
                                           )   L.L.P'S COMPLIANCE WITH THE
17                  Defendants.            )   MARCH 22, 2007 COURT ORDER
                                           )
18                                         )
                                           )
19                                         )   Date:  June 6, 2007
                                           )   Time:  9:00 a.m.
20                                         )   Room: Courtroom E, 15th Floor
                                           )          450 Golden Gate Ave
21                                         )          San Francisco, CA
                                           )   Judge:  Hon. Elizabeth D. Laporte
22

23

24

25

26

27

28

     Plaintiff Angeles' Reply to SSD's Opposition          Northern District Misc. Matter
                                                         Case No. C 06-90343 Misc MMC (EDL)

## Table Of Contents

I.   Introduction.................................................................................1

II.  SSD's Meet and Confer Argument is a Red Herring.............................…...........2

     A.  Attempts to Meet and Confer From the March 6 Hearing to the Court Issued Order on March 22....................................................................….............2

     B.  Attempts to Meet and Confer After the Court Rejected SSD's proposed order and Issued the Court's March 22 Order.......................................…...................2

     C.  SSD Failed to Substantively Reply to Angeles' Meet and Confer Sent on April 12.........................................................................................…..........3

     D.  SSD's Late "Compromise" was a Sham, Unreasonable, and Per Se Required Far Less than the March 22 Order...............................................................................3

III. SSD Willfully, Intentionally, and Knowingly Violated the Court's Order....................5

     A.  The Court Made it Clear that SSD could Redact Legal Analysis Or Submit a Declaration, But the Non-Privileged Information Pursuant to the Order Must Be Produced....................................................................................5

     B.  SSD's Own Actions and Statements Evidence SSD's Intentional and Willful Violation of the Court's Order .....................................................................5

IV.  The Information Sought is Not Privileged and is Critical to Angeles Claims..............…..6

     A. The Indexes and Lists are Not Work Product or Attorney-Client Privileged But Constitute Facts of What Documents were Received and Filed................................7

          a. SSD Misapplies the Rule of Law to Support a Claim of Privilege..................7

          b. Appling the Correct Standards, SSD Has Not Met the Minimum Burden for an Assertion of Privilege...................................................................7

          c. Compilation of Documents by Counsel Does Not Support a Claim for Protection...................................................................................9

          d. Facts Underlying the Existence and Location of Documents Are Not Privileged...........................................................................…......9

          e. SSD Has Not Provided the Factual Support to Claim Work Product or Attorney-Client Privileged Over the Documents..................….......................10

     B. Even if the Indexes and Lists were Privileged, Policy Considerations and Angeles' Substantial Need/ Undue Hardship would allow Disclosure................................11

a. Even if SSD Arguably Met the Minimum Standards for Asserting Privilege, Policy Considerations would weigh in Favor of Disclosure...........................11

b. These Missing Documents Are Critical to Angeles' Claims and Angeles' has No Other Means to Get the Requested Information Except McKesson and Univar's Middleman SSD..................................................................................12

c. Common Interest Exception Should Not Apply to the Murky Relationship between McKesson and Univar as No Common Legal Interest had been identified and McKesson has no Expectation of Confidentiality..............................12

V.      SSD's Response to the Subpoena is Per Se Inadequate & More "Missing" Documents.........................................................................................15

VI.     Conclusion...................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

1

## **TABLE OF AUTHORITIES**

2

3

## **CASES**

4   Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.

5   160 F.R.D. 437, 448-449 (S.D.N.Y.1995)……………………………………..……8

6   Blanchard v. EdgeMark Financial Corp.

7    192 F.R.D. 233 (N.D. Ill 2000)......................................................................11

8   Bohannon v. Honda Motor Co. Ltd.

9   127 F.R.D. 536, 539-40 (D.Kan.1989)……………………………………...……9

10  Borse v. Superior Court County of Sacramento

    7 Cal App. 3d 286, 290 (3rd District 1970)…………………………………….10

11  Cedolia v. CS Hill Saw Mills, Inc.

12  41 FRD 524, 526-527 (DC NC 1967)………………………………………….10

13  Clarke v. American Commerce National Bank

14  974 F2d 127, 129-130 (9th. Cir. 1992)…………………………………...……11

15  Coltec Industries, Inc. v. American Motorists Ins. Co.

16  197 F.R.D. 368, 373-376 (N.D. Ill. 2000)………………………………….…..11

17  Diamond State Ins. Co. v. Rebel Oil Co.

18  157 F.R.D. 691, 698 (D. Nev. 1994)…………………………………………….11

19  Diversified Induatries v. Meredith

20  572 F2d 596, 603-604 (CA8 1977)……………………………………………….9

21  Eureka Financial Corp. v. Hartford Accident and Indemnity Co.

22  136 F.R.D. 179, 183 (E.D.Cal. 1991)……………………………………………11

23  First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.

    163 F.R.D. 574, 581 (ND Cal. 1981)……………………………………………14
24
    Hickman v. Taylor
25
    329 U.S. 495, 508 (1947)………………………………………...………8,10,12
26
    Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp.
27
    233 F.R.D. 678, 682-683 (M.D. Fla. 2006)…………………………….…..……9

28

iii

In re Aetna Inc. Sec. Litigation

1999 WL 354527 (E.D.Pa.1999)................................................................10

In re Ashworth, Inc. Securities Litigation

213 F.R.D. 385, 387-390 (S.D.Cal 2002)....................................................10

In re Horowitz

482 F.2d 72, 81 (2d Cir.), cert. denied, 414 U.S. 867 (1973)........................13

In re Imperial Corp. of America

167 F.R.D. 447, 454-456 (SD Cal. 1995)....................................................14

In re Syncor Erisa Litigation

229 F.R.D. 636, 644-645 (CD Cal. 2005)......................................................9

In re Theragenics Corp. Securities Litigation

205 F.R.D. 631, 635-636 (N.D.Ga.2002)....................................................10

Jumsport Inc. v. Jumpking Inc

213 FRD 329, 348 (ND Cal. 2003)..............................................................8

Long Beach v. Superior Court of Los Angeles Count

64 Cal App 3d 65, 75-78 (2nd District 1976)..............................................10

McCall v. Overseas Tankship Corp.

16 FRD 467, 469 (DC NY 1954)................................................................10

Permian Corp. v. United States

665 F.2d 1214, 1220-22 (D.C.Cir.1981).....................................................15

Tornay v. United States

840 F.2d 1424, 1426 (9th Cir1988).............................................................8

Upjohn Company v. United States

449 U.S. 383, 396 (1981)..........................................................................7

U.S. v. American Tel. and Tel. Co.

642 F.2d 1285, 1299-1300 (CADC 1980)...................................................14

United States v. Lawless

709 F.2d 485, 487 (7th Cir.1983)..............................................................13

United States v. McPartlin

595 F.2d 1321, 1336-37 (7th Cir.1979), cert. denied, 444 U.S. 833, (1980)..................14

iv

US v. Reyes
239 FRD 591, 598 (ND Cal 2006)……………………………...……………..8,15

U.S. ex rel. Fago v. M & T Mortg. Corp.
238 F.R.D. 3 (D.D.C. 2006)……………………………………………………..9

Willingham v. Ashcroft
228 F.R.D. 1 (D.D.C. 2005)…………………….9

## **STATUTES & CODES**

F.R.C.P .26(b)(3)…………………………………………………………………12

F.R.C.P. 26(b)(5)…………………………………………………………………10

v

**MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO SSD's OPPOSITION TO ANGELES' MOTION TO COMPEL**

## I.    Introduction

Squire, Sanders & Dempsey's ("SSD") opposition attempts to lead the Court away from the substantive issues at hand.  SSD willfully, intentionally, and knowingly violated the Court's March 22, Order ("Order").  Angeles sent and received over 13 letters and e-mails alone since the March 22 Order was issued, not including the parties' discussions over the phone or the proposal to "compromise" SSD sent on April 24, 2007 and Angeles reply. (Supplemental Declaration of Jeffery L. Caufield in Support of Angeles' Reply to Squire, Sanders & Dempsey's Opposition to Angeles' Motion to Compel Squire, Sanders & Dempsey's Compliance with the March 22, 2007 Order ("Supp. Caufield Dec.") ¶ 2.) Interestingly, SSD's opposition focuses almost entirely on Plaintiff's Notice of Errata which included SSD's proposal to "compromise" sent after SSD's time for compliance had ended.   SSD tries to argue that Angeles should somehow accept less than full compliance with the Order.  This Court allowed SSD to redact the documents produced and SSD failed to take advantage of that protection.  Accordingly, Angeles cannot accept less than full compliance with the Order.

Since the inception of the underlying case, Angeles has been an unwilling participant in a shell game between McKesson, Univar, and now SSD.  Since the "discovery" of these documents in 2006, McKesson and Univar hid the existence of these documents at SSD since **at least** 2003 when the initial set of Requests for Production and subpoenas were issued to McKesson and Univar.  SSD's delay and stalling tactics employed for over half a year has already prejudiced Angeles.  The documents withheld are <u>critical</u> to Angeles' claims and defenses in the underlying case.  Despite being ordered to produce the indexes and transmittal letters after oral argument was heard on the **exact** documents, SSD now refuses to provide the pertinent documents under a guise of "privilege."  Unfortunately for SSD, the record from the March 6, 2007 hearing transcript, as well as, lack of substantive arguments and reason in their opposition, demonstrates that these documents were willfully, intentionally, and knowingly withheld in violation of the Court's

1

Plaintiff Angeles' Reply to SSD's Opposition

Order.   Angeles respectfully requests that the Court end the shell game and order the documents produced as soon as possible.

## II.    SSD's Meet and Confer Argument is a Red Herring

SSD offers up a red herring that somehow Angeles did not adequately represent the meet and confer process because Angeles filed a notice of errata for the last two letters sent between Ms. Gibson and Mr. Caufield.  First, the meet and confer process had already reached an impasse. (Declaration of Jeffery L. Caufield in Support of Motion to Compel SSD Compliance with the March 22, 2007 Order ("Caufield Dec.") ¶ 31.) Second, SSD's time for compliance of the March 22 Order had expired. (Supp. Caufield Dec. ¶ 3.) Third, there was no prejudice to SSD as SSD had previously received/drafted the correspondence and received the correspondence in a Notice of Errata and could raise the issue in SSD's opposition. (Supp. Caufield Dec. ¶¶ 4, 5, 6.)

As outlined thoroughly in Angeles Motion to Compel, SSD has been on notice of the exact type of documents that Angeles has been seeking since October of 2006.   Below are some examples of the many attempts to meet and confer from only March 6, 2007 to the present[1].

### A. Attempts to Meet and Confer From the March 6 Hearing to the Court Issued Order on March 22

| Date | Description |
| --- | --- |
| 3/9/07- | Mr. Caufield sent an email to Ms. Gibson regarding the stipulated Order. (Supp. Caufield Dec. ¶ 7.) |
| 3/13/07 | Ms. Gibson responded re: proposed order. (Caufield Dec. ¶ 7.) |
| 3/15/07 | Mr. Caufield responded to the March 13 letter. (Supp. Caufield Dec. ¶ 8.) |
| 3/15/07 | Ms. Gibson responded to Mr. Caulfield's letter. (Supp. Caufield Dec. ¶ 9.) |

### B. Attempts to Meet and Confer After the Court Rejected SSD's proposed order and Issued the Court's March 22 Order

| Date | Description |
| --- | --- |
| 3/28/07 | Ms. Gibson to Mr. Caufield re: Court Order (Supp. Caufield Dec. ¶ 10.) |
| 3/28/07 | Mr. Caufield to Ms. Gibson re: Court Order (Supp. Caufield Dec. ¶ 11.) |
| 4/5/07 | Ms. Gibson describing the process and production of documents to Mr. Caufield and encloses first "draft" privilege log. (Caufield Dec. ¶ 7.) |
| 4/9/07 | Mr. Caufield reiterates that indexes should be produced according to the Court's Order. (Caufield Dec. ¶ 49.) |
| 4/10/07 | Ms. Gibson to Mr. Caufield re: SSD production. (Supp. Caufield Dec. ¶ 12.) |
| 4/11/07 | SSD produces one of the other revised "draft" privilege logs. (Caufield Dec. ¶ 48.) |

---

[1] This does not purport to be an exhaustive list of every conversation or correspondence between the parties during this time nor does it include any of the dozens and dozens of correspondence from October 2006 to March 6, 2007.

Plaintiff Angeles' Reply to SSD's Opposition                    Northern District Misc. Matter
                                                               Case No. C 06-90343 Misc MMC (EDL)

| 4/12/07 | Mr. Caufield objects to certain documents withheld on the "draft" privilege log. (Caufield Dec. ¶ 30.) |
|---|---|
| 4/16/07 | SSD produced another "draft" log. (Supp. Caufield Dec. ¶ 13.) |
| 4/19/07 | SSD sends "finalized" privilege log with no substantive changes. (Caufield Dec. ¶ 32.) |
| 4/19/07 | Mr. Caulfield's e-mail to Ms. Gibson. (Supp. Caufield Dec. ¶ 14.) |
| 4/19/07 | Teleconference between Mr. Caufield and Ms. Gibson regarding the lack of response to Angeles' Meet and Confer sent on April 12, 2007. (Caufield Dec. ¶¶ 30, 41.) |
| 4/20/07 | Ms. Gibson sends an e-mail requesting to compromise regarding the issues in the 4/12/07 letter and telephonic conference. (Caufield Dec. ¶ 31.) |
| 4/20/07 | Mr. Caufield rejects any compromise short of full compliance with the Court's March 22, 2007 Order. (Caufield Dec. ¶ 31.) |
| 4/24/07 | Ms. Gibson letter to Mr. Caufield re: SSD purposed "compromise." (Supp. Caufield Dec. ¶ 5.) |
| 4/24/07 | Mr. Caufield rejects SSD's compromise, requests full compliance with the Court's Order. (Supp. Caufield Dec. ¶ 6.) |

Accordingly, there were **at least 18** different letters exchanged **after** the last hearing which the majority dealt directly with the indexes ad transmittal letters.

### C.  SSD Failed to Substantively Reply to Angeles' Meet and Confer Sent on April 12

SSD did not give any substantive explanation for the withholding documents that clearly fell squarely within the Order.  Notably, SSD spent no time in the opposition addressing the fact that no substantive changes were made from the draft privilege log to the finalized privilege log submitted on April 19, 2007.  Instead, SSD hangs their hat on a "proposal" sent after SSD's time for compliance had ended and after Angeles had stated an impasse had been reached and the issues would be taken up with the Honorable Magistrate Judge Laporte. (Supp. Caufield Dec. ¶¶ 5, 6.)

### D.  SSD's Late "Compromise" was a Sham, Unreasonable, and Per Se Required Far Less than the March 22 Order

As stated above, SSD never substantively responded to the Angeles' concerns and issues raised in the April 12, 2007 meet and confer.  SSD sent the April 24, 2007 letter after the time had run out for SSD to comply with the Court's Order and Angeles made clear the issue was going to be brought to Honorable Magistrate Judge Laporte.  (Supp. Caufield Dec. ¶¶ 5, 6.)  A simple comparison to SSD's late offer to "compromise" with the Court's March 22, Order shows that SSD requested Angeles allow SSD to produce far less than the Court's Order.

SSD offer to compromise stated:

> "In the letter you state that you want to know "what documents were transmitted, where the documents came from, where the documents went, who handled the documents, and how many documents were transmitted. (i.e., indexes, lists, etc.)" This is far more than the Court's Order required SSD to provide and indeed is in the nature of an interrogatory, to which SSD, a non-party, cannot be subjected. But we note the following so as to resolve what you have raised but which is a non-issue: the question of "where documents came from" is answered by the Court's Order – SSD is only to produce "documents received by Graham & James LLP from McKesson as part of the negotiations, due diligence and/or closing of the 1986 sales transaction." You already know all the recipients of documents to the extent that of this information is known because that information is listed on the log. As to "who handled the documents," we do not know what you mean by this and it does not appear that this information is either required, or relevant, or likely to lead to the discovery of non-privileged and/or relevant evidence." (Supp. Caufield Dec. ¶ 15.)

The Court's Order issued on March 22, 2007 specified that:

> "Documents received by Graham & James LLP from McKesson as part of the negotiations, due diligence and/or closing of the 1986 sales transaction, including any index or list of such documents received or prepared by Graham & James, LLP." (Caufield Dec. ¶ 9.) and

> "Documents discussing or addressing the transmittal by Graham & James to anyone of documents that were received by Graham & James LLP from McKesson as part of the negotiations, due diligence and/or closing of the 1986 sales transaction." (Caufield Dec. ¶ 9.)

In other words, SSD's offer to "compromise" did not recognize key requirements from the March 22, 2007 Order. Moreover, the "compromise" only involved <u>9 line items out of 52</u> challenged documents.[2] Without knowing what documents were received by Graham and James and where those documents were sent, the entire Order becomes impotent. Angeles would have no way of knowing where to look for the highly relevant documents. The April 24, 2007 letter was sent after Angeles attempted to resolve the issues in good faith, the time for compliance had passed, and an impasse had been reached. When lifting the veil to SSD's late "compromise," it

---

[2] SSD was willing to provide a list of documents from items 5-11, 18-20, and 56. This represented 9 documents out of 52 challenged entries. (Supp. Caufield Dec. ¶ 16.)

4

1    becomes evident the "compromise" was a sham, unreasonable, and per se did not meet the criteria

2    in the March 22 Order.

**III.    SSD Willfully, Intentionally, and Knowingly Violated the Court's Order**

3

4    SSD cannot dispute that the prior pleadings, hearing transcript from March 6, and March

5    22 Order particularly identified the documents that were in dispute.  Moreover, the transcript

6    from March 6 hearing and the March 22 Order <u>clearly</u> identified what documents were to be

7    produced.  Despite these facts, SSD ignored the Court's Order and failed to produce the list of

8    documents and indexes.

***A. The Court Made it Clear that SSD could Redact Legal Analysis Or Submit a***
9    ***Declaration, But the Non-Privileged Information Pursuant to the Order Must Be***
     ***Produced***

10    SSD tries to muddy the issues.  The Court required the <u>facts</u> of what documents were

11    <u>received</u> (including lists and indexes) and the <u>fact of</u> where the documents were <u>sent</u> be produced.

12    The March 22 Order required the production of:

13           "Documents received by Graham & James LLP from McKesson as
              part of the negotiations, due diligence and/or closing of the 1986
14           sales transaction, **including any index or list of such documents**
              **received or prepared by Graham & James, LLP**." (Caufield
15           Dec. ¶ 9.) and

16           "Documents discussing or addressing **the transmittal by Graham**
              **& James to anyone of documents that were received by**
17           **Graham & James LLP from McKesson** as part of the
              negotiations, due diligence and/or closing of the 1986 sales
18           transaction." (Caufield Dec. ¶ 9.)

19           Despite the clear Order from the Court both at the March 6, 2007 hearing and in writing

20    issued on the March 22 Order, SSD withheld the **exact** information that the Court ordered be

21    produced. (Caufield Dec. ¶¶ 38, 40, 46, 49.) There is simply no reason why the indexes and

22    transmittal letters could not have been redacted and produced.

***B. SSD's Own Actions and Statements Evidence SSD's Intentional and Willful***
23    ***Violation of the Court's Order***

24           Throughout the meet and confer process SSD has been disingenuous in resolving the

25    dispute in good faith.  The record is clear that Angeles' has been seeking indexes and lists of

26    documents transmitted by McKesson to SSD and where SSD may have transmitted those

27    documents to third parties since October 2006 (<u>seven months!</u>). (Caufield Dec. ¶¶ 21, 24, 25,

28

5

Plaintiff Angeles' Reply to SSD's Opposition                    Northern District Misc. Matter
                                                                 Case No. C 06-90343 Misc MMC (EDL)

26.)  Both parties briefed the issues in their entirety in the SSD's motion to Quash and engaged in oral argument at the March 6 hearing. (Caufield Dec. ¶¶ 3, 4, 5.)  There can be no doubt that the indexes and lists of documents were central to the issues at hand.

After the hearing, the parties could not agree on a proposed stipulated order. (Caufield Dec. ¶ 7.) In fact, the Court **rejected** SSD's proposed order, which would have omitted production of the indexes and lists of documents, and changed the March 22 Order to include the following language:

> "Documents received by Graham & James LLP from McKesson as part of the negotiations, due diligence and/or closing of the 1986 sales transaction, **including any index or list of such documents received or prepared by Graham & James, LLP**." (Caufield Dec. ¶¶ 8, 9.)

Despite this added language, SSD <u>never</u> objected or appealed the Order. (Caufield Dec. ¶ 39.) Moreover, when SSD's draft privilege log was challenged, SSD's excuse, in part, was that Honorable Judge Laporte's Order was "unclear." (Caufield Dec. ¶ 49.)  SSD <u>never</u> sought clarification from the Court.   Indeed, SSD did not even substantively respond to Angeles' meet and confer as there were no substantive changes from the draft privilege log to the finalized privilege log. (Caufield Dec. ¶¶ 32, 46, 40.)  The sham "offer to compromise" was only transmitted <u>after</u> SSD had already knowingly violated the Court's Order .

These are same type of actions wherein Honorable Judge McMahon stated: "The court cannot and will not allow the discovery process to become a shell game in which a party and its counsel repetitively hide available evidence."  (Caufield Dec. ¶ 42. See 4:12-14.)

**IV.    The Information Sought is Not Privileged and is Critical to Angeles Claims**

SSD unsuccessful tries to argue throughout the opposition that the indexes and lists are now privileged and constitute attorney-client and/or work product.  As discussed above, it is interesting that SSD never objected at the March 6 hearing or after the March 22 Order was issued when the Court particularly identified that indexes and lists were to be produced. Nevertheless, these indexes and lists of documents are facts not mental impressions and attorney notes.  SSD makes no showing that the lists or indexes themselves are work product and/or attorney-client privileged.

6

Plaintiff Angeles' Reply to SSD's Opposition        Northern District Misc. Matter
Case No. C 06-90343 Misc MMC (EDL)

### A. The Indexes and Lists are Not Work Product or Attorney-Client Privileged But Constitute Facts of What Documents were Received and Filed

#### a. SSD Misapplies the Rule of Law to Support a Claim of Privilege

SSD cites to *Upjohn Co. v. United States*, 449 US 383, 401-402 (1981) stating that work product revealing attorney's mental processes cannot be disclosed ""simply on a showing of substantial need and inability to obtain the equivalent without undue hardship," and that a "far stronger showing"" is required. (Dfts Opp to Motion to Compel @ 6)  First, SSD applies this statement out of context.  This statement narrowly applies to the actual legal analysis of oral statements taken from witnesses.  *Id*.  Second, neither Angeles nor the Court required that SSD produce any legal analysis from the documents.  However, the fact of what documents were received is not work product or privilege in any manner.

SSD then misapplies *Sporck v. Peil*, 759 F.2d 312 (3rd. Cir. 1985), cert. *denied* by *Peil v. Sporck*, 474 US 903 (1985) and *James Julian Inc. v. Raytheon Co.,* 93 FRD 138, 144 (D.Del. 1982) to the current situation.  In *Sporck* and *James Julian* the parties requested the ***identification and production*** of a very small amount of documents out of thousands that were selected and reviewed by the attorney in preparation for his client's deposition. (See *Sprock* at 312-316; *James Julian* at 143-146).  In this case, Angeles seeks the documents identifying the documents received or sent as part of a business transaction.

In the present case, unlike *Sporck* and *James Julian,* Angeles only requested documents containing the lists or indexes that identified what documents were received by SSD and where those documents were sent by SSD.  These documents relate back over twenty years to a business transaction.  SSD cannot even identify the particular attorney that compiled the data, prepared the indexes, or cite to the litigation purpose for which the documents were created.  In other words, SSD is not even able to meet the minimum requirements of a claim of privilege.

#### b. *Appling the Correct Standards, SSD Has Not Met the Minimum Burden for an Assertion of Privilege*

The attorney-client privilege is (1) a communication; (2) made in confidence; (3) between a person who is or about to become a client; (4) an attorney; and (5) for the purpose of obtaining legal advice or assistance. *Upjohn Company v. United States*, 449 U.S. 383, 389 (1981).  On the

7

other hand, the work product doctrine complements the confidentiality protections afforded by allowing the attorney or his or her client to withhold production of statements and any other type of information possessed by the attorney, whether written or unwritten, gathered in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 508 (1947).

The burden of establishing that the attorney-client privilege applies to the documents in question rests with the party asserting the privilege. *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988). As stated by the Court in *US v. Reyes*, "[t]he work-product privilege does not insulate all of an attorney's work product; instead, under Ninth Circuit law, the test is whether the attorney would have generated the material "but for" the prospect of litigation. *US v. Reyes* 239 FRD 591, 598 (ND Cal 2006). In deciding whether documents were prepared "in anticipation of litigation," the Court in *Jumsport Inc. v. Jumpking Inc*, articulated a two part test:

> "In the first, we will consider whether the prospect of litigation was a substantial factor in the mix of considerations, purposes or forces that led to the preparation of the document. In the second stage, which we will reach only if [the party invoking privilege] persuades us to answer the first inquiry in the affirmative, we will determine how much harm would be done to the policies that work product doctrine is intended to serve if we were to conclude that the [documents are] entitled to no protection (or how much those policy objectives would be advanced if the document[s] were found to fall within the reach of the rule). *Jumsport Inc. v. Jumpking Inc*, 213 FRD 329, 348 (ND Cal. 2003)

In almost all instances, the declarations in support of SSD's opposition do not allow the Court to weigh the forces which led to the preparation of the document because no specific facts are given on how these documents relate to potential claims. In no instances did SSD provide an explanation for why simple indexes or lists of documents were prepared "in anticipation of litigation." Indeed, SSD has not shown how the preparation of an index was more than what would have been done in the ordinary course of business. Documents prepared in the ordinary course of business are not protected. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 448-449 (S.D.N.Y.1995)

SSD focuses on vague assertions of "due diligence" process and review to support a claim of privilege. Many Courts have held that work done by a law firm to investigate corporate

8

business practices, but was not employed for the purposes of giving legal advise or to represent

the corporation in pending or potential litigation was not work product. *Diversified Induatries v.*

*Meredith*, 572 F2d 596, 603-604 (CA8 1977). (*See also In re Syncor Erisa Litigation*, 229 F.R.

636, 644-645 (CD Cal. 2005) where defendants provided insufficient evidentiary support to claim

privilege over due diligence documents; *U.S. ex rel. Fago v. M & T Mortg. Corp.*, 238 F.R.D. 3

(D.D.C. 2006) stating the operative question is whether documents would have been created in

essentially similar form irrespective of litigation.). In any case, there is absolutely no showing

that the indexes and lists are in any way "privileged."

      c. *Compilation of Documents by Counsel Does Not Support a Claim for Protection*

Many courts have ruled that documents and compilation of documents do not support a

claim of privilege.  (See *Bohannon v. Honda Motor Co. Ltd.*, 127 F.R.D. 536, 539-40

(D.Kan.1989) where the Court rejected argument that counsel's gathering and selection of third-

party documents constitutes opinion work product; *Hunter's Ridge Golf Co., Inc. v. Georgia-*

*Pacific Corp.*, 233 F.R.D. 678, 682-683 (M.D. Fla. 2006) stated that not every selection and

compilation of third-party documents by counsel transforms that material into attorney work

product; in order to fit within the narrow exception the party asserting the privilege must show a

real, rather than speculative, concern that counsel's thought processes in relation to pending or

anticipated litigation will be exposed through disclosure of the compiled documents; and

*Willingham v. Ashcroft*, 228 F.R.D. 1 (D.D.C. 2005) specified that while the attorney's

memorandum was protected by the work-product doctrine the documents attached were not

themselves protected even though the documents were compiled by the attorney to formulate and

support a legal opinion.)

In this instance, the documents where "compiled by" McKesson, the opposing party, and

sent to SSD.  Thus, the indexes reflect what was received by SSD not compiled.  What was

received requires very little "analysis" and is a fact not privileged.

      d. *Facts Underlying the Existence and Location of Documents Are Not Privileged*

The documents that Angeles are seeking are the evidence that Angeles needs to find

9

1   critical and highly relevant "missing" documents.  These documents are the cornerstone of the

2   Angeles' claims and defenses.  Again, at this point Angeles is not seeking the documents listed on

3   the documents, but merely seeking to determine what documents were received and where those

4   documents were sent.

5          Courts have been very clear that information regarding the existence or location of

6   witnesses is not privileged.  (*See McCall v. Overseas Tankship Corp.* 16 FRD 467, 469 (DC NY

7   1954); *Cedolia v. CS Hill Saw Mills, Inc.* 41 FRD 524, 526-527 (DC NC 1967); *In re Aetna Inc.*

8   *Sec. Litigation*, 1999 WL 354527 (E.D.Pa.1999); *In re Theragenics Corp. Securities Litigation*,

9   205 F.R.D. 631, 635-636 (N.D.Ga.2002); *Long Beach v. Superior Court of Los Angeles County,*

10  64 Cal App 3d 65, 75-78 (2nd District 1976); *Borse v. Superior Court County of Sacramento*, 7

11  Cal. App. 3d 286, 290 (3rd District 1970))[3]  In much the same manner, Angeles seeks information

12  regarding the existence or location of documents.  Courts recognize the policies behind the need

13  for witness lists to be produced.  As stated in *Hickman v. Taylor*, Federal Rules of Civil

14  Procedure serve to 'ascertain the facts, or information as to the existence or whereabouts of facts,

15  relative to the issues at hand.' *Hickman v. Taylor* 329 US 495, 501 (1947).  Clearly, especially in

16  this instance, the documents Angeles are seeking promote that policy.

17          *e. SSD Has Not Provided the Factual Support to Claim Work Product or Attorney-*
        *Client Privileged Over the Documents*

18  According to FRCP Rule 26(b)(5):

19          "When a party withholds information otherwise discoverable under
        these rules by claiming that it is privileged or subject to protection

20      as trial preparation material, the party shall make the claim
        expressly and shall describe the nature of the documents,

21      communications or things not produced or disclosed in a manner
        that, without revealing information itself privileged or protected,

22      will enable other parties to assess the applicability of the privilege
        or protection." FRCP 26(b)(5)

23

24          The assertions of privilege must be made with particular specificity for each document.

25  _____

26  [3] *In re Ashworth, Inc. Securities Litigation*, 213 F.R.D. 385, 387-390 (S.D.Cal 2002) also speaks
    to the issue.  In that instance, the Court recognized the right to discover a total list of witnesses,

27  but limited its holding when a party was seeking above and beyond the total list which witnesses
    were interviewed by counsel.  In essence, the Court argued that the additional information above
    and beyond the identification of witnesses may reveal counsel's opinions regarding the relative

28  importance of these witnesses. *Id.*

                                                10

1     *Clarke v. American Commerce National Bank* 974 F2d 127, 129-130 (9th. Cir. 1992). A

2     generalized, self-serving, conclusory assertion of protection or privilege simply is insufficient.

3     *Diamond State Ins. Co. v. Rebel Oil Co.,* 157 F.R.D. 691, 698 (D. Nev. 1994). In many instances,

4     SSD cannot even provide the basic information required under Honorable Magistrate Laporte's

5     local rule #5. Courts have ruled that parties did not meet their burden of privilege where vague

6     descriptions such as "summaries" were not protected from discovery under the attorney-client

7     privilege and/or work product doctrine wherein the documents did not list an author, making it a

8     matter of speculation as to whether they were authored in preparation for litigation, or whether

9     there was any degree of attorney involvement. *Id.*; *Coltec Industries, Inc. v. American Motorists*

10     *Ins. Co.,* 197 F.R.D. 368, 373-376 (N.D. Ill. 2000); *Blanchard v. EdgeMark Financial Corp.,* 192

11     F.R.D. 233 (N.D. Ill 2000).

12        As an excuse, SSD responds in their opposition on page 14:3-4, "Not surprisingly, given

13     the 21 years that have passed since the 1986 transaction, in some cases this information was

14     necessarily general." However, SSD cannot cite to any exception to the requirement of

15     specificity, due to the passage of time. Indeed, attorneys in 1986 were governed by the same

16     principals in protecting privilege as attorneys today. It appears that SSD asks this Court to carve

17     out an exception for the nonfeasance of not filing, labeling, or otherwise being able to accurately

18     track descriptions of privilege due to the passage of time. However, the same rule of law applies

19     whether asserting privilege over a document created twenty years ago or yesterday. [4]

20        ***B. Even if the Indexes and Lists were Privileged, Policy Considerations and Angeles'
Substantial Need/ Undue Hardship would allow Disclosure***

21           *a. Even if SSD Arguably Met the Minimum Standards for Asserting Privilege,
Policy Considerations would weigh in Favor of Disclosure*

22        Taking SSD's position to the extreme, assertions of privilege could very well swallow up

23     the entire foundation of the discovery process. Here, SSD's position essentially holds that

24     documents listing the existence and location of vital documents are "privileged." As Angeles

25     _____

26     [4] By allowing a party to provide the excuse that documents were created years ago in order to
forgo the basic tenants of Federal Rules of Civil Procedure would have disastrous consequences

27     to the underlying foundation of discovery. If the privilege is worth protecting, a litigant must be
prepared to expend some time to justify the assertion of the privilege. *Eureka Financial Corp. v.*

28     *Hartford Accident and Indemnity Co.,* 136 F.R.D. 179, 183 (E.D.Cal. 1991).

unfortunately knows, this process prevents a party from knowing the universe of documents in existence, knowing where to ask for highly relevant documents, being able to ensure that all relevant non-privileged documents have been produced. A party cannot hide the existence of documents by shifting documents between counsel and then claiming "privilege" over the documents whereabouts, which is <u>exactly</u> what SSD/Univar/McKesson are doing.

> *b. These Missing Documents Are Critical to Angeles' Claims and Angeles' has No Other Means to Get the Requested Information Except McKesson and Univar's Middleman SSD*

Courts recognize that attorney-work product can be discoverable where "(T)he party seeking discovery (must show a) substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FRCP 26(b)(3); *Hickman v. Taylor* 329 US 495, 511–512 (1947). As discussed in the moving papers, these documents are critical to the underlying litigation. These documents will evidence what happened to the McKesson operational documents. In turn, the McKesson operational documents are critical to Angeles' claims regarding contamination. For example, one "missing" documents sent from McKesson to G&J was a

> "42-page package prepared by regional personnel… [that] address[ed] the following items…:disposal activities – pits, major spills – leaks, off-site disposal, RCRA status, repack activities, tank farms, other major permits, underground storage tanks, evidence of contamination, previous uses of the site, water wells, visible pollution impacts, planned environmental upgrades, and future improvements to be evaluated…" (Supp. Caufield Decl. ¶ 21.)

This document, an example of one of the most pivotal missing documents in this case, was not produced by SSD. Thus, the only way to figure out what happened to this document and other like documents, is to know when it was received, where it has been stored (and with what), and where it was sent. This is the exact information the indexes and transmittal letters would provide.

> *c. Common Interest Exception Should Not Apply to the Murky Relationship between McKesson and Univar as No Common Legal Interest had been identified and McKesson has no Expectation of Confidentiality*

There is no dispute that McKesson sent critical and highly relevant documents to both Univar and SSD. Many of the documents were sent as part of the purchase agreement entered in

Plaintiff Angeles' Reply to SSD's Opposition

Northern District Misc. Matter
Case No. C 06-90343 Misc MMC (EDL)

1986 that required Univar:

> *"shall retain, and make available to Seller within (15) days of Seller's request, in readily identifiable and obtainable form, the files, books and records of MCC 'McKesson Chemical Corporation' relating to financial, tax, accounting, litigation, claims and environmental matters for a period of ten (10) years after the closing...and shall retain and make available to Seller within fifteen (15) days of Seller's request for reasonable business purpose all other books and records of MCC for a period of five (5) years after the Closing, and SHALL NOTIFY SELLER IN WRITING AT LEAST NINETY (90) DAYS PRIOR TO THE DESTRUCTION OF ANY SUCH BOOKS AND RECORDS AT THE END OF SUCH TEN AND FIVE YEAR PERIODS, RESPECTIVELY."* (Emphasis added.) (Supp. Caufield Decl. ¶ 19.)

In accordance with the documents exchanged, McKesson and Univar also entered into a five year confidentiality agreement on February 27, 1986 which was later superseded by a ten year confidentiality agreement. (Supp. Caufield Decl. ¶ 20.) Thus, the confidential nature of documents retained by SSD was <u>null and void after 1996</u>.

Shortly after the ten year period was ending, the parties do not dispute that Univar and McKesson engaged in lengthy discussions regarding some of the McKesson documents in Univar's possession. (Supp. Caufield Decl. ¶ 18). Despite the fact McKesson and Univar employees, including current in-house attorneys, were directly involved in the transmittal of documents these facts were **never** disclosed to Angeles until years after litigation ensued. (Supp.Caufield Decl. ¶ 22. .) In fact, were it not for the inadvertent production of some documents, Angeles may still very well be in the dark regarding the history.

Still, McKesson and Univar seem mystified at the disappearance of these highly relevant documents. SSD's most recent privilege log denotes a flurry of activity, including the transmittal of documents, between Univar and SSD shortly <u>after</u> Angeles filed the underlying case in 2001. (Caufield Dec. at ¶ 32.) SSD explains that this activity was somehow related to legal advice given to Univar for potential claims or litigation with McKesson (Bennett dec at 1:4-7). Angeles is understandably perplexed at how SSD can have both McKesson and Univar as clients, but allegedly able to <u>offer legal advice to Univar regarding potential claims against McKesson</u>. Such actions would appear to constitute an admission of a direct conflict of interest and call into question the ethics of counsel.

The general rule is that privileged material is discoverable if it has been disclosed to a third party. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983); *In re Horowitz*, 482 F.2d

1   72, 81 (2d Cir.), cert. denied, 414 U.S. 867 (1973).  An exception to this rule is the common

2   interest or joint defense doctrine where the third party shares a common interest with the

3   disclosing party which is adverse to that of the party seeking discovery; any existing privilege is

4   not waived. *United States v. McPartlin*, 595 F.2d 1321, 1336-37 (7th Cir.1979), cert. denied, 444

5   U.S. 833, (1980).   However, the common interest only applies to those documents that have

    already been deemed privileged.  *McPartlin* at 595 F.2d at 1336.

6        In this instance, SSD has not even met the minimum burden of showing that the

7   documents are somehow privilege.  However, even if SSD did meet that burden, "most courts

8   seem to insist that the two parties have in common an interest in securing legal advice related to

9   the same matter-and that the communications be made to advance their shared interest in securing

10  legal advice on that common matter." *First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.,* 163

11  F.R.D. 574, 581 (ND Cal. 1981).  Here, SSD has made no showing that the documents were

12  related to a common interest in securing legal advice.  SSD only make blankets statements and

    alludes to the fact there was a "common interest" between the parties but, SSD never connects the

13  dots.

14       Moreover, Courts have given weight to the fact whether or not there was any reasonable

15  expectation that the documents would remain confidential. *In re Imperial Corp. of America*, 167

16  F.R.D. 447, 454-456 (SD Cal. 1995); *U.S. v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1299-

    1300 (CADC 1980).  In this case, the confidentiality agreement has expired over ten years ago.

17  The expectation that these documents would remain "confidential" had passed long ago.  As

18  stated in *U.S. v. American Tel. and Tel. Co* at 1299:

19              "[T]he work product privilege does not exist to protect a
             confidential relationship, but rather to promote the adversary
20           system by safeguarding the fruits of an attorney's trial preparations
             from the discovery attempts of the opponent.  The purpose of the
21           work product doctrine is to protect information against opposing
             parties, rather than against all others outside a particular
22           confidential relationship, in order to encourage effective trial
             preparation."
23

24       Clearly, while there may be financial incentive for SSD to aid and abet both billion dollar

25  corporations in this discovery shell game, SSD has not articulated any legal reasons for asserting

26  privilege.  Moreover, even if these documents were at one point privileged, McKesson

27  expectation of confidentiality had expired in 1996.

28
                                              14
    Plaintiff Angeles' Reply to SSD's Opposition              Northern District Misc. Matter
                                                              Case No. C 06-90343 Misc MMC (EDL)

*d. SSD Cannot Waive Privilege as to Some Documents But Retain Privilege as to Others*

The Northern District of California has specifically recognized that it is improper for one to selectively waive privilege to some documents, but retain privilege to the most damaging. The Court explained that it smacks of injustice when parties pick and choose documents to disclose, waiving privilege for some while resurrecting their claim of confidentiality to obstruct the disclosure of others. *U.S. v. Reyes* 239 F.R.D. 591, 602-603 (ND Cal. 2006), citing *Permian Corp. v. United States,* 665 F.2d 1214, 1220-22 (D.C.Cir.1981)

**V.     SSD's Response to the Subpoena is Per Se Inadequate & More "Missing" Documents**

SSD points to the fact that approximately 10,000 pages of documents have been produced. However, assuming that 100 boxes have an average of 2500 pages, along with the 30,000 pages on microfiche there was a total of over 280,000 pages. Thus, SSD produced less than 3% of the total amount of potentially responsive pages. Further, SSD failed to produce the correspondence that McKesson sent to SSD and vice versa. (Supp. Caufield Decl. at ¶ 17, 23.) In other words, the SSD "correspondence" file was apparently not searched or produced. Angeles knows that this correspondence exists because McKesson produced bits and pieces. In fact, the correspondence included letters to Mr. Unkovic, who provided a declaration in support of SSD's opposition. Moreover, and most unfortunate for Angeles, are the missing portions of documents 24-28, 32, 38, and 40 listed on the privilege log. (Dec of Ms. Gibson 2:9-14) Surprisingly, these originally "appeared" to have multiple listings of McKesson documents and files. Once again, critical information seems to "disappear" without reason or explanation.

**VI.    Conclusion**

In conclusion, the real issue is SSD's willful, intentional, and knowing violation of the Court's Order. Angeles respectfully requests the Court to end to the shell game and order SSD to produce the documents immediately.

DATED:  May 28, 2007                                      Caufield & James, LLP

_____

Jeffery L. Caufield, Esq.
Attorneys for Plaintiff/Counter-Defendant

15

Plaintiff Angeles' Reply to SSD's Opposition              Northern District Misc. Matter
                                                          Case No. C 06-90343 Misc MMC (EDL)