# EXHIBIT LL

**From:** Joe Rossettie
**Sent:** Friday, October 13, 2006 1:31 PM
**To:** shenderson@ssd.com
**Cc:** Jeff Caufield; Amber Hinojosa
**Subject:** McKesson Chemical Documents

Ms. Henderson—

Please see attached some of the correspondence between McKesson and Graham & James regarding the sale of McKesson Chemical in the mid-1980's. We are looking for any correspondence and the referenced attachments that appear to be sent to Graham & James regarding McKesson Chemical. Many of the letters reference binders, folders, and other documents regarding environmental impact or investigation at many of the McKesson Chemical sites. We are also looking for any correspondence that references the location of any McKesson Chemical documents. (i.e. any correspondence that purports to sending McKesson documents to storage, Pakhoed, or back to McKesson) We really appreciate your help in this matter.

Very truly yours,

Joe Rossettie

**Joseph Rossettie, Esq.**
*Caufield & James, LLP*
2851 Camino Del Rio South, Suite 250
San Diego, CA 92108
Office 619-325-0441
Fax 619-325-0231

*This email communication may contain CONFIDENTIAL INFORMATION, WHICH ALSO MAY BE LEGALLY PRIVILEGED, and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy copies.*

September 18, 1986

HAND DELIVERED

CONFIDENTIAL

# CONFIDENTIAL

Nicholas C. Unkovic, Esq.
Graham & James
One Maritime Plaza
Third Floor
San Francisco, CA 94111

Re:  Non-Environmental Due Diligence Document Request No. 2
     Response No. 8

Dear Mr. Unkovic:

In response to your letter of August 21, 1986, we provide under Item III, a copy of a letter from the South Carolina Department of Health and Environmental Control to Darwin Simpson, dated September 11, 1986, attached to which is a copy of the executed Administrative Consent Order in Proceeding No. 86-48-SW.

Under the Miscellaneous category, we provide a document that Fred Gentry requested of Doug Eisner, namely, a printout of McKesson Chemical's current products, upon which Doug has characterized each product as non-hazard, acute hazard, or chronic hazard.  It should also be noted that the sixth page of the document is entitled "Other Small Volume Products With Known Hazards", and that Doug has made the same characterization with respect to those products.

We consider the enclosed documents to contain sensitive, confidential information that is subject to the confidentiality agreement signed by Pakhoed.  You are asked not to make or permit the making of any copies of these documents, and otherwise to handle them in complete accordance with the confidentiality agreement, dated February 27, 1986, between McKesson and Pakhoed by which you are bound as an agent or representative of Pakhoed. Please indicate your agreement to the foregoing, as well as your receipt of the enclosed material, by signing and returning the enclosed copy of this letter.

Very truly yours,

Dinah L. Darman

DLD/smc
Encl.

cc:  Eric Lindquist
     Ivan Meyerson

MCK0065049

July 24, 1986

HAND DELIVERED
CONFIDENTIAL

Nicholas C. Unkovic, Esq.
Graham & James
One Maritime Plaza
Third Floor
San Francisco, CA 94111

Re: Due Diligence Document Request — Response No. 6

Dear Mr. Unkovic:

In connection with your letter of July 8, 1986 (the "Unkovic Letter") or that of Mr. Thompson of the same date (the "Thompson Letter"), please find enclosed copies of the following documents which are responsive to one or both of your respective requests:

   A.   The Unkovic Letter.

      1.   **Item I.A.1(g).**  The only note payable of which we are aware is the IRB we referred to in our Response #5, under Items I.A.3(a) and (b).  We are providing pages 13 and 14 of the Indenture.

      2.   **Item I.A.1(i).**  Although not strictly within this Item, the Booz-Allen report, entitled "Strategy Development for McKesson Chemical Company", dated September 30, 1985, was previously provided to you.  We do not propose to produce anything else concerning prospects or projections.

      3.   **Item I.A.5.**  We are consulting with the Corporate Secretary about this Item, but in any case we believe three years should be sufficient for your purposes.

      4.   **Item I.C.3.**  On April 8, 1986, McKesson Chemical Company sold its California chlorine operations to All Pure Chemical Company / a Tracy, California-based chlorine distributor.  The transaction included approximately 2,000 one-ton cylinders in customers' hands.  All Pure agreed to pay $200 for each of these cylinders when returned to All Pure.  We are providing a copy of Exhibit 2 of the Agreement, which provides for a method of accounting for these cylinders and the (ongoing) resulting cash flows.

MCK0065050

Nicholas C. Unkovic, Esq.
July 24, 1986
Page Two

5.   **Item I.C.4.**  McKesson Chemical Company enters into confidentiality agreements in various aspects of its business, e.g., when it blends chemicals for others.  However, these agreements are, by and large, not available in San Francisco.

We in San Francisco are not aware of any non-compete agreements.

6.   **Item I.C.6.**  We don't know what you mean by "agreements or contracts not made in the ordinary course of business."  If you have something specific in mind, please let us know.

7.   **Item I.D.**  To complete our response, there are any number of licenses, permits and other government consents ("permits") necessary for McKesson Chemical Company to operate.  The vast majority of the permits are required by state or local authorities, and the records are not in San Francisco.  Some of this information may be in the environmental assessments that were previously provided to you.

8.   **Items II.A.4., 5., & 6.**  We are collecting the documents that are in San Francisco.

9.   **Items II.C.1.& 2.**  We are collecting the documents that are in San Francisco.

10.   **Items III.A.1. & 2.**  With respect to **Superfund matters**, we provide an update of the three-page chart, dated May 1986, that Ivan Meyerson sent to Paul Dezurick on June 4, 1986.

With respect to **litigation and claims**, we have updated one of the two summaries that were previously provided to you.  With respect to the other, entitled "CHEMICAL GROUP SUMMARY LOSS INFORMATION" (which Ivan Meyerson sent you on June 16, 1986), a more detailed summary is being generated to send to you.  It will (i) omit closed matters, (ii) specify matter names, and (iii) be based on the most current (5/31/86) data available.  Nonetheless, we provide another copy of the summary Ivan sent.  The other summary previously provided by Ivan, entitled "SUMMARY OF CLAIMS FROM LAW DEPT. FILES," is still current.  We are providing another copy for your convenience.

MCK0065051

Nicholas C. Unkovic, Esq.
July 24, 1986
Page Three

We are providing two additional summaries of litigation and claims. One is of pending cases and was originally prepared on June 25, 1986. The cases that have been stricken through were subsequently closed. Except for the cases check-marked, the pleadings have already been made available to Paul Dezurick. We will make the pleadings in the cases Mr. Dezurick wasn't shown available to you on reasonable notice. The other summary that was not previously provided is of pending discrimination charges.

With respect to governmental proceedings, we in San Francisco are aware of two pending matters. Both are U.S. EPA Administrative Complaint and Penalty Proceedings. The first involves U.S. EPA Region V, and copies of the complaint and answer are provided. The second involves U.S. EPA Region IV, and the complaint and answer aren't available in San Francisco. The alleged violations include the storage of waste just over ninety days and the failure to label waste solids as they accumulate in a drum. There may be a number of other pending governmental proceedings involving contested administrative violations probably not material in nature.

We are not aware of any pending arbitration proceedings.

11.    Item III.B.1.    The only judgments against McKesson Chemical of which we are aware are in the case of OEM Repro Products, Inc. v. McKesson, Superior Court of Arizona, County of Yuma, No. 48166, and are on appeal. The first judgment was entered on March 25, 1985, in favor of the plaintiff and in the amount of $3,128,082 plus costs. The second judgment was entered on May 31, 1985, in favor of defendant Van Waters & Rogers for any attorney's fees to which it might be found to be entitled.

12.    Item III.B.2.    We in San Francisco are aware of four consent orders. A fifth matter, not strictly within the scope of this Item, was the settlement for $250 of a Tennessee Department of Health proceeding, in August, 1985. Copies of the Order and Assessment of Civil Penalty, and two letters from Ivan Meyerson dated July 9 and August 5, 1985, are enclosed.

We provide copies of consent orders entered on or about the dates indicated:

(i)    U.S. EPA, Region IV, November 1984 (Chatanooga Service Center);

MCK0065052

Nicholas C. Unkovic, Esq.
July 24, 1986
Page Four

    (ii) U.S. EPA, Region IV, March 1986
(Jacksonville Service Center);

    (iii) California Department of Health
Services, October 1984 (Capri Superfund Site); and

    (iv) U.S. EPA Region V, and the State of
Indiana, September 1984 (Seymour Superfund Site).
Please note that McKesson Chemical's share of the
amount paid was approximately $36,000.

    B.   The Thompson Letter.

    1.   Item 1.  We understand that you are in the
process of completing the site visits of all remaining service
centers or stockpoints. With respect to the two customer sites
at which McKesson Chemical-owned underground tanks are located,
Fred Gentry has agreed that visits are not necessary at this
time.

    2.   Item 3.  Our earlier response did not pertain to
above-ground tanks owned by McKesson Chemical but located at
customer sites. We currently have no complete inventory of
Company-owned above-ground storage tanks located at facilities of
customers. These tanks should be reflected (though not by
location) on the fixed asset schedules previously provided to
you. We estimate (based upon a recent Eastern Region count of
approximately 180 of such tanks) that there are several hundred
tanks, in various sizes, at customers' facilities.

    3.   Item 4.g.ii.  In addition to the documents we
provided in our Response #4, we provide additional copies of
documents earlier sent to you. One is a letter from Ivan
Meyerson to Mark Hooper, dated March 26, 1986, enclosing a list
of facility upgrade projects compiled by Art Weiner. The second
is a log entitled, "CONTROL PROCEDURE LOG ENVIRONMENTAL UPGRADE",
and is for the month of January 1986.

    4.   Item 4.f.  We are consulting with our Corporate
Secretary about this item, but in any case we think three years
should be sufficient for your purposes.

    5.   Items 4.a., b., c., d., e., f., g., h., i., and
k. We are prepared to make these documents available for
inspection in our offices on reasonable notice. We are pulling
them together at this time.

MCK0065053

Nicholas C. Unkovic, Esq.
July 24, 1986
Page Five

6.  Item 6.  With the exception of insurance matters
which will be discussed below, we believe that all the matters
referred to in Appendix C are covered by the Environmental Risk
Questionnaires and other information or material provided (or to
be provided) in response to other items.  Primary insurance
policies that may cover claims arising out of environmental
contamination will be made available to you for inspection on
reasonable notice;  however, we do not propose to produce any
analyses of the potential for recovery of such claims, assuming
any exist.

Finally, we have not received an acknowledgment of your
receipt, and agreement to the conditions stated in, our Responses
numbered 4 and 5.  Moreover, we are still awaiting receipt of
executed letters indicating that A.T. Kearney and KMG
Main-Hurdman acknowledge and accept the obligations of the
February 27, 1986 Confidentiality Agreement.

We trust that our Responses to date will be sufficient to
indicate to you what our intentions are with respect to your
various Due Diligence requests.  If not, pleaes call me or Ivan
Meyerson.

Thank you very much for your cooperation.

Very truly yours,


Dinah L. Darman

DLD/smc

Encl.

cc:  Eric Lindquist (no enclosure)

Agreed to and Accepted:

GRAHAM & JAMES

By_____

MCK0065054

Law Department

RECEIVED JUL 2 5 1986

To
Jerry Hutton

Date
July 24, 1986

From
Dinah L. Darman

Location/Tel.
One Post - 34

**M<sup>c</sup>Kesson**

Intra Company
Correspondence

Subject
Project Venus

Copies To

### * * * CONFIDENTIAL * * *

Attached for your review is a Due Diligence document request
involving environmental matters.  Please refer to Item 4 and
Appendix "C".  Ivan Meyerson and I are wondering if you have
anything that we don't have, primarily in the areas of Item
4.a, 4.d, and 4.g.  Please call me to discuss this matter.

Dinah L. Darman

DLD/smc

Encl.

# CONFIDENTIAL

MCK0065055

*Environmental*
*Thompson*

## GRAHAM & JAMES
ONE MARITIME PLAZA
THIRD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE (415) 954-0200

OTHER OFFICES
LOS ANGELES, CA
LONG BEACH, CA
NEWPORT BEACH, CA
PALO ALTO, CA
NEW YORK, NY
WASHINGTON, DC
RALEIGH, NC
SINGAPORE
HONG KONG
MILAN

AFFILIATED OFFICE
KUWAIT

TELEX
W.U. 340143 CHALGRAY SFO
H.C.I. 67589 GJ SFO

FACSIMILE
GI/E (415) 391-2905
GII/E (415) 391-2493

CABLE
CHALGRAY, SAN FRANCISCO, CA

WRITER'S DIRECT DIAL NUMBER

July 8, 1986

(415) 954-0246

Ivan D. Meyerson
Associate General Counsel
McKesson Corporation
Law Department
One Post Street
San Francisco, CA 94104

Dear Mr. Meyerson:

In preparation for our due diligence in connection with the proposed transaction, we would like to get started on the following matters relating to all of the sites to be acquired:

**#6 BEING DONE**

1. **Site Visits.** We would like to complete our site visits of all remaining service centers plus the stockpoint in Carlin, Nevada. We propose to visit Carlin during the week of July 7, and the others starting on July 14, to be completed by the week of July 21. In addition, we may want to visit some of the sites at which the Company-owned underground tanks are maintained at customer sites.

**# 4 NO X**

2. **Reports.** We have prepared a detailed Site Questionnaire in the form of Appendix A to this letter which we would like to have completed for each operating site to be acquired and made available for our review in your office by July 21.

**Portion - #1 -** ✓
**Comments**
**#6**
**Complete**

3. **Inventory of Customers Site Tanks.** We would like to have an inventory of both above ground and underground tanks which are owned by the Company but maintained at customer sites. (See Appendix B for contents of inventory.) A preliminary list of tanks and tank sites should be made available to me by July 15.

4. **Documents to be Reviewed.** We would like to review all environmental files in your office and your environmental coordinator's office (Dr. Hutton). In

MCK0065056

Ivan D. Meyarson
July 8, 1986

Page 2.

addition, if not contained in the above files, we
would like to see copies of:

a.   Consultants reports relating to environmental
     matters.

b.   Regulatory correspondence, inspection reports,
     etc., relating to environmental matters.

*DLD* c.   Indemnification agreements (both indemnifying
     Company and by which Company intends to
     indemnify others) for environmental liability.

d.   Internal reports relating to environmental
     conditions at sites.  *Done - When ?*

e.   Minutes of all environmental audit committee
     meetings.

f.   Minutes of board meetings and board committee
     meetings relating to environmental matters. *Eric snip, re.*

g. *Jon* Any projections of the costs to be incurred
     over the next 5 years (by site) for:

     i.   Remediation of existing contamination.

*#2 - Comments ✓* ii.  Upgrading of facilities to prevent future
     contamination.

h.   Reports filed with EPA and/or state authorities
     under RCRA indicating the destinations of
     wastes generated at Company-owned sites for the
     past five years.

i.   Company compliance manuals, training programs
     or other written guidance for preventing
     environmental contamination and complying with
     governmental requirements.  *Q+?  say town*

*DLD* j.   Written agreements with others in effect at any
     time during the past five years for the
     transportation, disposal, recycling or other
     means of handling hazardous waste.

MCK0085057

## APPENDIX B

### INFORMATION REQUESTED ON
### CUSTOMER SITE TANKS
### AND COMPANY SITE TANKS

1.   Tank size_____

2.   Date installed_____

3.   Date removed (if applicable)_____

4.   Type of tank (steel, fiberglass, etc.)_____

5.   Type of chemicals stored:

  Acids_____
  Chlorinated solvents_____
  Nonchlorinated solvents_____
  Other_____

6.   Date of last leak or pressure test_____

7.   Results of such tests:

  _____
  _____
  _____

8.   Has tank been reported to EPA or other governmental
  authorities? (Yes___No___)
  What authorities?_____

9.   If reported, by whom (Company or customer)?

  _____

10.  Is the tank subject to any permit? (Yes___No___)
  Is the permit listed on the Site Questionnaire?
  (Yes___No___)

11.  Are there any outstanding agreements relating to
  customer site tanks? (Yes___No___)

12.  Is there any evidence of leakage from the tank or
  from the tank piping and/or fittings? (Yes___No___)

1.

MCK0065067

20. PRIOR OWNERSHIP AND USE OF SITE FROM 1920 TO PRESENT:

Were any chemical-handling operations conducted by others at the site prior to the Company's operations?  (Yes___ No___)

If yes, provide information (going back as far as 1920) as to the dates of such activity, the identity of the site owner and site operator at the time such chemical-handling activities occurred and the nature of the activities involved. _____

_____
_____
_____
_____
_____
_____
_____

8.

MCK0065066

12. GOVERNMENTAL AWARENESS

Have there been any visits or inspections of this site by a governmental agency or agencies in the past twelve months relative to environmental matters? (Yes___ No___)

If yes, have there been any reports, notices or correspondence from any such agency? (Yes___ No___)

Is any governmental agency aware of any site contamination? (Yes___ No___)

If yes to any of the above, which agency or agencies? _____

Please make available for G&J review copies of all correspondence, etc. relating to this governmental involvement.

13. OFFSITE DISPOSAL SITES

List all off-site disposal sites used during the past five years.

| Site Name & Location | Period Disposal Occurred | Type & Quantity of Waste Disposed | Share of Waste if Superfund Site |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

14. WATER WELLS LOCATED WITHIN TWO MILES OF SITE

| Well No | Distance to Site | Private Well | Public Water System | Other Use of Well (Specify) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Give depth to drinking water at this site. _____

MCK0065082

· 4.

<u>1983</u>:

| Materials | Sent to:<br>Enviro-<br>Systems | Other<br>Recyclers | Other<br>Disposers | Maximum<br>Drums on Site<br>at One Time |
|---|---|---|---|---|
| Solvents_____ | _____ | _____ | _____ | _____ |
| Other<br>(specify:_____ | _____ | _____ | _____ | _____ |

<u>1984</u>:

| Materials | Sent to:<br>Enviro-<br>Systems | Other<br>Recyclers | Other<br>Disposers | Maximum<br>Drums on Site<br>at One Time |
|---|---|---|---|---|
| Solvents_____ | _____ | _____ | _____ | _____ |
| Other<br>(specify:_____ | _____ | _____ | _____ | _____ |

<u>1985</u>:

| Materials | Sent to:<br>Enviro-<br>Systems | Other<br>Recyclers | Other<br>Disposers | Maximum<br>Drums on Site<br>at One Time |
|---|---|---|---|---|
| Solvents_____ | _____ | _____ | _____ | _____ |
| Other<br>(specify:_____ | _____ | _____ | _____ | _____ |

<u>1986</u>:

| Materials | Sent to:<br>Enviro-<br>Systems | Other<br>Recyclers | Other<br>Disposers | Maximum<br>Drums on Site<br>at One Time |
|---|---|---|---|---|
| Solvents_____ | _____ | _____ | _____ | _____ |
| Other<br>(specify:_____ | _____ | _____ | _____ | _____ |

Who were the other recycling companies used during those years?

| Recycler | Year Used | No. Drums |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

7.

MCK0065065

Who were the principal sources of such chemicals:

Chlorinated solvents_____

Nonclorinated solvents_____

Other (specify type)_____

_____

## 19. WASTE MATERIALS HANDLED; USE OF RECYCLERS

Has this site ever stored waste chemicals received from others?
(Yes___ No___ )

If yes, please answer the following questions for each of the indicated years:

1980:

| Materials | Sent to: Enviro- Systems | Other Recyclers | Other Disposers | Maximum Drums on Site at One Time |
|-----------|--------------------------|-----------------|-----------------|-----------------------------------|
| Solvents_____ | _____ | _____ | _____ | _____ |
| Other (specify:_____ | _____ | _____ | _____ | _____ |

1981:

| Materials | Sent to: Enviro- Systems | Other Recyclers | Other Disposers | Maximum Drums on Site at One Time |
|-----------|--------------------------|-----------------|-----------------|-----------------------------------|
| Solvents_____ | _____ | _____ | _____ | _____ |
| Other (specify:_____ | _____ | _____ | _____ | _____ |

1982:

| Materials | Sent to: Enviro- Systems | Other Recyclers | Other Disposers | Maximum Drums on Site at One Time |
|-----------|--------------------------|-----------------|-----------------|-----------------------------------|
| Solvents_____ | _____ | _____ | _____ | _____ |
| Other (specify:_____ | _____ | _____ | _____ | _____ |

6.

MCK0065064

## 15. CONSTRUCTION AT OR NEAR SITE

Is the Company aware of any proposed or ongoing well development, residential development, construction involving excavation or other type of similar activity which could prompt governmental authorities to test the groundwater or soil at or near the site for chemical contamination? (Yes___ No___ )

If yes, please explain _____

_____
_____
_____

## 16. DISPOSAL ACTIVITY UNDERTAKEN ONSITE

Has any chemical disposal activity taken place on the site, including, without limitation, any burial of containerized waste, disposal of liquids onto land, injection, or incineration? (Yes___ No___ )

If yes, please describe: _____

_____
_____
_____

## 17. OSHA MATTERS

Has any inspector from OSHA or a state or local OSHA-type agency visited or inspected the facilities at this site in the past twelve months? (Yes___ No___ )

If yes, was any citation, notice or report delivered to the Company? (Yes___ No___ )

If yes, please make such documents available for Graham & James review.

## 18. RECYCLING ACTIVITIES CONDUCTED ONSITE

Has the Company conducted chemical recycling activities at the site in the past five years? (Yes___ No___ )

If yes, complete the following:

| Chemicals | Approximate Annual Volume | Dates |
|---|---|---|
| Chlorinated solvents_____ | _____ | _____ |
| Nonchlorinated solvents_____ | _____ | _____ |
| Other (specify)_____ | _____ | _____ |

5.

MCK0065063

9.  SITE CHARACTERIZATION WORK

Has any soil or groundwater testing been conducted at the site or adjacent to the site during the past five years?  (Yes___ No___ )

If yes, give date(s)_____

Name of person(s) conducting tests_____
_____

Did the testing indicate that the soil or groundwater was contaminated with chemicals?  (Yes___ No___ )

If yes, what was the nature of the contamination?  Provide copies of all laboratory analyses. _____
_____

[Use additional sheets, if necessary.]

10. ENGINEERING STUDIES

Have any engineering studies of contamination been conducted at the site?  (Yes___ No___ )

If yes, give dates and name of engineer(s):

_____
_____
_____
_____

Please make available for G&J review copies of all engineering reports.

11. REMEDIAL COSTS

Have any expenses been incurred at the site for remedial actions (other than removal of underground tanks), including removal of soil and groundwater decontamination?  (Yes___ No___ )

If yes, what was the nature of the remedial work?

_____
_____
_____

What has been the cost of such work to date?_____
_____

3.

MCK0065081

13.   What is the nature of the contamination (size of
      plume, etc.) if any?

      _____
      _____
      _____
      _____

14.   Has any such contamination been reported to any
      governmental authorities or are such authorities
      otherwise aware of the contamination?  (Yes___ No___ )
      Please make available copies of all correspondence or
      other documents relating to this regulatory
      relationship.

15.   Has any remedial action been requested or taken place
      in response to such contamination?  (Yes___ No___ )
      Please make available copies of all documents, etc.,
      relating to the cleanup.

2.

MCK0085068

APPENDIX C

SCOPE OF ENVIRONMENTAL
DUE DILIGENCE REVIEW

In connection with our due diligence regarding the environmental problems of the Company, we would like to review all documents in your Company's possession relating to the following:

1. **Site Data**. This includes information relating to activities at the site (past and present) which have or could contaminate the environment. It also includes information relating to risk factors, such as biological receptors and other natural resources (e.g. drinking water). Also included are any analyses of the potential for such risk factors to influence potential costs, including governmental interest in investigating any contamination and imposing cleanup requirements.

2. **Site Contamination**. Documents (arranged by site) including, without limitation: internal studies (including environmental audits), consultant reports, correspondence, and other information, relating to:

a. **Actual contamination resulting from:**
   1. Spills;
   2. Leaks;
   3. Disposal activities on site:
      a. Drum washing;
      b. Sewering of residues;
      c. Stormwater runoff;
      d. Any other;
   4. Disposal activities offsite:
      a. Locations of sites;
      b. Chemicals involved, including quantities;
      c. Involvement at proposed and final NPL sites;
   5. Contamination by others (groundwater plume migration, etc.); and
   6. Other contamination from any source whatever for which the owner or operator of the site could be held responsible or liable under existing laws.

b. **Potential for Contamination** resulting from any of the above-named factors.

1.

MCK0065069

3.  <u>Regulatory Matters</u>:  all types of documents as stated above (arranged by site) relating to the following:

a.  <u>Status under RCRA</u>, including closure plans, sampling protocols developed by or for the Company and all supporting documentation;

b.  <u>Permits</u> for the treatment, storage or disposal of hazardous waste, from any applicable jurisdiction, including, without limitation:
1.  Outstanding permits;
2.  Applications;
3.  Permits denied, suspended, cancelled, or withdrawn for any reason whatever;

c.  <u>Permits</u> for the underground storage or handling of other hazardous materials, including, without limitation:
1.  Outstanding permits;
2.  Applications;
3.  Permits denied, suspended, cancelled, or withdrawn as the result of underground storage tanks having been taken out of operation, closed, or removed from the site;

d.  <u>Reports</u> to governmental authorities on any regulatory matter having to do with chemical storage, handling, treatment or disposal;

e.  <u>Enforcement</u> matters including, without limitation:
1.  Inspection records;
2.  Notices of violation or the equivalent;
3.  Administrative orders;
4.  Litigation:
    a.  Pleadings;
    b.  Other case files;
5.  Correspondence relating to enforcement;
6.  Internal memoranda relating to enforcement;
7.  Consultant reports, correspondence, etc. relating to enforcement; and
8.  Citizen complaints.

4.  <u>Environmental Audit/Compliance Programs</u>:  all types of documents as stated above (arranged by site) relating to any environmental audit and/or compliance programs.

5.  <u>Potential Liability Assessments</u>:  all types of documents as stated above (arranged by site) relating to:

2.

MCK0065070

September 4, 1986

<u>HAND DELIVERED</u>

# CONFIDENTIAL

<u>CONFIDENTIAL</u>

Nicholas C. Unkovic, Esq.
Graham & James
One Maritime Plaza
Third Floor
San Francisco, CA 94111

Re: <u>Non-Environmental Due Diligence Document Request No. 2</u>

Dear Mr. Unkovic:

This is in response to your letter of August 21, 1986.

General Comments. We believe that as a general rule it should be sufficient for your purposes that we make available all information at our San Francisco headquarters. However, if there are particular categories that you would like referred to personnel outside the San Francisco headquarters, please specify those categories and we will consider how to proceed. We have provided a complete response to the request categories contained in your letter of July 8, 1986. If we declined to provide a document, we either set forth our reasons in one of our twelve response letters, or withheld the document upon the basis of attorney-client privilege or work product. As to accounting and tax data that Robert Nilssen requested, it is my understanding that Eric Lindquist was responding.

Item I.A.2 (General). You may assume that Mr. Nilssen will have access to any Chemical operation accounting policies and procedures manuals, or similar documentation.

Item I.A.2(c). We are providing copies of auditors' inquiry letters and replies for the fiscal years ending April 30, 1983, 1984, 1985 and 1986, respectively. As for the 1982 fiscal year, there are no such documents.

MCK0065075

Nicholas C. Unkovic, Esq.
September 4, 1986
Page Two

Item I.A.2(e). All financial statements and related materials concerning inventory evaluation and turnover were provided in Response No. 2.

Item I.A.2.(g); I.A.3(a) and (b). The IRB and capitalized leases referred to in our Response Nos. 4, 5 and 6 are the only items in these categories. The documentation related to that IRB will be made available to you for inspection.

Item I.A.4(b). The only "audit or revenue agent's reports" concerning federal, state and local taxation of which we are aware is a 1986 Delaware Gross Receipts Tax Audit; a copy of the file in the matter is enclosed. With respect to the two years under audit, we will make Stanley Greenblatt, Vice President and Director of Taxes, available to you upon reasonable notice.

Item I.A.5. Our Response No. 9 did encompass all Committee and other Group minutes. We set forth which redacted portions had no bearing on McKesson Chemical's operation, and we stand on our response that all other redacted portions are either privileged or inappropriate as relating directly to this transaction.

Item I.B.1(a). If he hasn't already, Eric Lindquist will respond upon his return.

Item I.B.1(e). As discussed with Francis Toldi, the relevant files will be made available to you for inspection. Also, I provided a copy of the Buffalo real property lease to Francis today.

Item I.B.2(a). We are not aware of any material encumbrances or liens under your definition of "material", with the exception of the IRB and any material capitalized leases discussed above.

Item I.C.1. We are preparing Exhibit 5.9 and believe it should be sufficient for your purposes. We will make available Jon W. d'Alessio, Chemical Group Vice President, Finance and Planning, to discuss our relationships with Monsanto and Shell, and to discuss "contracts with customers with unusual business terms" if you will define that phrase for us.

MCK0065076

Nicholas C. Unkovic, Esq.
September 4, 1986
Page Three

Item I.C.2. The schedule that was provided in our Response No. 2 is being updated. These secured loans relate to transfers of employees, and copies of the recent promissory notes were provided with Ivan Meyerson's letter to Mark Hooper dated August 30, 1986 (paragraph 34). Let us know if you want to see the promissory notes that were executed earlier than those. In addition, we will be providing a schedule of supplementary retirement agreements, in addition to the one applying to Rudy Tomeo that was provided with Response No. 2. Last, we are not aware of any intracorporate contracts or "arrangements" other than the arrangement with McKesson Envirosystems which we have discussed with you at length.

Item I.C.4. The only "non-compete" agreement of which we are aware relates to the April 1986 sale of assets to All Pure described in our Response No. 6, under Item I.C.3. The covenant is not to engage in packaging and selling chlorine in the State of California for a period of five (5) years.

Item I.C.5. We are not aware of any guarantees.

Item I.C.7. Let us know when you would like to meet.

Item I.D. Ivan Meyerson has discussed the "permit book" with you.

Item II.A.2(a) and (b). Let us know when you would like to meet.

Item II.A.4, 5 and 6; Item II.C.1 and 2. The documents you received did encompass the entire Chemical Operations. We are preparing a response to your other questions.

Item III.A.1 and 2. Let us know when Paul Dozurick wishes to review additional pleadings. As for the "Region IV EPA Complaint and Answer", I erroneously characterized this adminis-trative proceeding. It is before the South Carolina Department of Health and Environmental Control. Enclosed is a copy of our file in this matter, consisting of (i) a letter dated January 27, 1986 from the Department, enclosing the Department's first draft of an Administrative Consent Order; and (ii) a letter dated August 1, 1986 from the Department enclosing an Administrative Consent Order which McKesson is prepared to execute. As for the Region V matter, see paragraph 46 of the Meyerson letter of August 30.

MCK0065077

Nicholas C. Unkovic, Esq.
September 4, 1986
Page Four


    Item III.B.1.  Although we believe the Sandelman claim fits
under category III.A.2., we refer you here to paragraph 42 of the
August 30 Meyerson letter.  We stand on our Response No. 6
concerning Item III.B.1.

    Item III.B.2.  We have provided all the Consent Orders known
to us in San Francisco, and we stand on our Response No. 6.

We consider the enclosed documents to contain sensitive,
confidential information that is subject to the confidentiality
agreement signed by Pakhoed.  You are asked not to make or permit
the making of any copies of these documents, and otherwise to
handle them in complete accordance with the confidentiality
agreement, dated February 27, 1986, between McKesson and Pakhoed
by which you are bound as an agent or representative of Pakhoed.
Please indicate your agreement to the foregoing, as well as your
receipt of the enclosed material, by signing and returning the
enclosed copy of this letter.

Thank you very much for your cooperation.

Very truly yours,


Dinah L. Parman

DLD/smc

Encl.

cc:  Eric Lindquist (no enclosure)

Agreed to and Accepted:

GRAHAM & JAMES

By_____

MCK0065078

**GRAHAM & JAMES**

ONE MARITIME PLAZA

THIRD FLOOR

SAN FRANCISCO, CALIFORNIA 94111

TELEPHONE (415) 954-0200

September 2, 1986

**RECEIVED**

SEP 2 - 1986

(415) 954-0246

<u>BY MESSENGER</u>

Ivan D. Mayerson
Associate General Counsel
McKesson Corporation
Law Department
One Post Street
San Francisco, CA 94104

Dear Ivan:

As we discussed earlier today, I am forwarding to you a list of questions which have come up in connection with our environmental due diligence. This list does not include any questions which may arise as we review the documents you sent to Mark Hooper on August 30, 1986.

I have also enclosed a signed return of an August 22, 1986 letter transmitting certain environmental due diligence documents, which was sent to me by Dinah Darman.

Please call me at your earliest opportunity so that we can arrange a meeting with you or Dinah Darman to discuss these matters.

Thank you for your cooperation.

Very sincerely yours,

Robert C. Thompson
of
GRAHAM & JAMES

RCT:pm
Enclosure

MCK0065079

QUESTIONS REGARDING RCRA STATUS:

The data we have received from San Francisco
consists of a list of sites involved with RCRA storage (upon
which is written "Don Black, 6/19/86"), the grey books, and
references to the RCRA status at the Altoona, Charlotte,
Cincinnati, Columbus, and Detroit sites in a letter from IDM
to RCT dated August 20, 1986. We have also gathered RCRA
storage status data on the site interviews. Certain questions
have arisen with regard to the RCRA status at individual sites
based on conflicts between the information provided by San
Francisco and the information obtained during site visits.
The sites having conflicting information are marked with
an "**".

We would like confirmation that the RCRA storage
status for the sites indicated below is complete and
correct. We would also like to know whether EPA or the state
(1) has issued the Part B permit; (2) is now processing a Part
B permit application; (3) has approved closure; or (4) is now
in the process of reviewing an ongoing closure.

A.  Sites with Part B Permits Issued

| | | Agency |
|---|---|---|
| 1. | Albuquerque, NM* | ? |
| 2. | Atlanta, GA | GA |
| 3. | Augusta, GA | GA |
| 4. | Cincinnati, OH | EPA |
| 5. | Cleveland, OH* | ? |
| 6. | Detroit, MI | EPA |
| 7. | Grand Rapids, MI | EPA |
| 8. | Los Angeles, CA | ? |
| 9. | Louisville, KY | ? |
| 10. | Minneapolis, MN | ? |
| 11. | Pittsburgh, PA | EPA |
| 12. | Springfield, MO | ? |
| 13. | Wichita (N. Mosley), KS | ? |
| 14. | Woodbridge, NJ | ? |

1.

MCK0065060

B.  Sites with Part B Permits Submitted and Pending

    1.  Charlotte, NC             ?
    2.  Houston, TX*            ?
    3.  Kansas City, MO*       ?
    4.  Kingsport, TN*         ?
    5.  Pittsburgh, PA         PA
    6.  Portland, OR*          ?
    7.  St. Louis, MO*        ?
    8.  Tampa, FL*           ?

C.  Sites with Approved Closure[1]

    1.  Altoona, PA           PA
    2.  Columbus, OH          OH
    3.  North Haven, CT       ?

D.  Sites Undergoing Closure/Closure Not Yet Approved

    1.  Appleton, WI          ?
    2.  Columbus, OH          EPA
    3.  Harrisburg, PA*       PA
    4.  Memphis, TN*
    5.  Mobile, AL*          ?

E.  Interim Status Sites: Part A Submitted and Not
    Withdrawn; Part B Not Yet Submitted

    1.  Beaumont, TX*
    2.  Buffalo, NY*
    3.  Chattanooga, TN
    4.  Chicago Heights, IL
    5.  Dallas/Ft. Worth, TX*[2]
    6.  Greensboro, NC
    7.  Jacksonville, FL*
    8.  Little Rock, AR
    9.  Milwaukee, WI
   10.  Nashville, TN*

----

[1]  Please provide us with a copy of the letter approving
closure for the sites in this category.

[X]  Please describe the nature of the dispute between McKesson
and the landlord regarding the Part B permit application.

2.

MCK0065081

11. Omaha, NE
12. Philadelphia, PA
13. Phoenix, AZ*
14. San Antonio, TX*
15. Schaumberg, IL
16. Spartanburg, SC
17. Fayetteville, AR

## I. SITE AGE AND PRIOR OWNERSHIP

We need to know how long each site has been used (by McKesson or a prior owner/lessor) as a chemical distribution site or as a chemical-related business. In particular, we would like to know the total age of the following sites, as well as the nature of prior uses and the date on which McKesson began to use the site as a chemical distribution facility:

1. Grand Junction, CO
2. Los Angeles, CA
3. Minneapolis, MN
4. Richmond, VA
5. Spartanburg, SC
6. Springfield, MO
7. Tampa, FL
8. Wichita (N. Mosley), KS

## III. REPACKING ACTIVITIES

We would like to know whether repack has ever occurred at the Knoxville stockpoint, the Grand Rapids, Los Angeles, Schaumberg, or Tucson service centers, or the Spartanburg Drum or Spartanburg Fleet sites.

## IV. UNDERGROUND STORAGE TANKS

A. We have information that three underground tanks, currently filled with water, which were used by the prior site occupant and which have never been used by McKesson, remain in the ground in Boston. We would like clarification as to whether these tanks exist and, if so, whether they have been registered with any state or federal agency.

3.

MCK0065082

B.  We would also like to know whether any
underground storage tanks were removed after May 8, 1986.
Were these tanks registered with the appropriate state/federal
agency prior to being removed?

C.  We would like a copy of the underground chemical
and fuel tank rating system which describes the factors
considered and the statistical methods used to rate McKesson's
underground tanks.

D.  We would like to know whether there are ratings
available for the fuel tanks in Buffalo, Charlotte, Dallas/Ft.
Worth, and Harlingen and, if not, why the tanks at these
facilities were excluded from the rating system.

E.  We have information that the tanks at the
following sites may have been leaking when they were removed:

1.  Corpus Christi, TX
2.  Grand Junction, CO
3.  Houston, TX (soil samples taken and being
    analyzed)
4.  Jacksonville, FL
5.  Mobile, AL
6.  Omaha, NE (groundwater contamination
    in tank hole)
7.  St. Louis, MO
8.  Harlingen, TX

Please confirm whether any contamination was discovered and
whether any analysis of the potential contamination was
made.  We would like to examine copies of any such analysis.
Were any reports made to government agencies as the result of
this contamination?

 V.  GENERATOR STATUS

Please confirm that Carlin is a registered generator
and Boston is not.

 CONTAMINATION ISSUES

A.  Please confirm whether any soil tests have been
conducted at the Spartanburg drum site and, if so, what the
results of those tests were.

4.

MCK0065083

Please describe the wet quicklime pit recently discovered at the Pittsburgh site. We would like to see copies of all consultants' reports, lab analyses, and regulatory correspondence which relate to this pit.

VI. ABOVE-GROUND CUSTOMER SITE TANKS

Please provide us with a list and description of all above-ground customer-site tanks.

VII. SITES PRESENTLY BEING OPERATED

Please confirm that the Vernal, Utah site is no longer an active site.

5.

MCK0065084

GRAHAM & JAMES

ONE MARITIME PLAZA

THIRD FLOOR

SAN FRANCISCO, CALIFORNIA 94111

TELEPHONE (415) 954-0200

OTHER OFFICES
LOS ANGELES, CA
LONG BEACH, CA
NEWPORT BEACH, CA
PALO ALTO, CA
NEW YORK, NY
WASHINGTON, DC
RALEIGH, NC
SINGAPORE
HONG KONG
MILAN

AFFILIATED OFFICE
KUWAIT

TELEX
W.U. 340140 GRALGRAY SFO
H. C. L 67958 GJ SFO

FACSIMILE
GI/III (415) 391-0300
GII/III (415) 391-0400

CABLE
CHALGRAY, SAN FRANCISCO, CA

WRITER'S DIRECT DIAL NUMBER

August 21, 1986

Ivan D. Meyerson, Esq.
Associate General Counsel
McKesson Corporation
Law Department
One Post Street
San Francisco, California 94109

        Re:  Non-Environmental Due Diligence Document
             Request No. 2

Dear Ivan:

        Thank you for your twelve Due Diligence Document
Request Response Letters including the enclosure documents.
Although we are pleased that the due diligence investigation
is going forward there are numerous responses which are
incomplete in some respect. However, based on what has been
provided, we are able to narrow our request and do so by this
letter. This letter will describe which additional documents
or statements concerning documents continue to be necessary
for each of the request categories contained in our first Due
Diligence Document Request Letter.

        General Comments. Several of your responses are
limited to what personnel in San Francisco have, know of, or
are aware of. Our requests were not limited to San Francisco
personnel. Please provide all information available at the
San Francisco headquarters, as well as information known to
personnel listed in our draft as Senior Seller Personnel. We
will need in all cases to know that you have provided a
complete response to our request (within the above limits), or
that there are specific, identified documents that you decline
to provide, with your reasons for not providing them. As to
accounting and tax data, that can be provided via Robert
Nilssen, and we enclose a copy of his request list, as
provided to you last week.

MCK0065086

Ivan D. Meyerson, Esq.
August 21, 1986

Page 2


I.A.2. (General). I believe Bob Nilssen has now
arranged to review the work papers of Deloitte, Haskins &
Sells for the years ended March 31, 1984, and 1985, and for
the period subsequent to March 31, 1986. We presume Mr.
Nilssen will also have access to the chemical operation
accounting policies and procedures manual, or similar documen-
tation, as requested.

I.A.2(c). We have not received requested auditor's
inquiry letters and replies for five years. These documents
should include auditor's inquiry letters to attorneys and
other third parties as well as those parties' replies, but not
receivable and payable confirmations.

I.A.2(e). Please provide all financial statements
and related materials concerning inventory valuation and
turnover.

I.A.2(g). With respect to notes payable, your
response states that you are only "aware" of one Industrial
Revenue Bond ("IRB"). Please provide copies of all documenta-
tion regarding notes payable, or a statement that there are no
other notes payable. Additionally, please provide a full set
of documentation related to each IRB.

I.A.3(a). To date we have received nothing in
response to our request for information on long-term indebted-
ness under this heading. Please provide all copies of the
requested documents, or a statement that there are no such
documents.

I.A.3(b). As requested in I.A.2(g) above, please
provide a full set of documentation for the IRB. Also, if the
IRB and capitalized leases are the only documents in this
category, please provide us with a statement to effect.

I.A.4(b). With respect to your response that "to     TØK ù
the best of our knowledge" there were no audit or revenue     All wt
agent's reports concerning federal, state, and local taxation,      Chn
please directly state that there are no such reports. With     Jay.
respect to the two years under audit, please provide a summary
of the audit proceedings, including the current status
thereof.          There Are no revenue Agent's
                  reports. The audit is underway.


MCK0065086

Ivan D. Meyerson, Esq.
August 21, 1986

Page 3


I.A.5.  In addition to directors' and Public Policy
Committee minutes, the request encompasses all committee and
other group minutes as well.  Although we recognize that some
material in the minutes may not be relevant and was therefore
edited out of the minutes provided, please provide a statement
that the omitted portions have no bearing on McKesson's
Chemical Operations, or provide the full text.

I.B.1(a).  By letter dated July 23, 1986, David
Colker has requested backup information for Mr. Lindquist's
summary regarding valuation support for allocation of the
purchase price.  We received some appraisals with your
Response No. 12, and look forward to receipt of the other
information.  Please confirm that those are the only
appraisals in McKesson's possession.

I.B.1(e).  We look forward to receiving the track
agreements and other agreements and documents necessary to
complete this item.

I.B.2(a).  Please provide a statement that there are
no material encumbrances or liens, if that is the case.
"Material" for this purpose includes encumbrances or liens of
greater than $100,000.

I.C.1.  Please provide copies of all chemical
division contracts or commitments having a remaining term of
more than six months and involving total remaining obligations
of the chemical division of more than $500,000 or goods or
services valued at that amount, including specific identifica-
tion of contracts with or commitments to customers of the
chemical division which have a gross margin of less than or
equal to zero, and all of the chemical division's contracts or
commitments which are not cancellable without penalty on less
than six months notice.

Please describe in detail the relationships with
Monsanto and Shell.  Please also provide copies of any
contracts with customers with unusual business terms.  Please
do not limit the response to contracts located in San
Francisco.

MCK0065067

Ivan D. Meyerson, Esq.
August 21, 1986

Page 4


I.C.2. We received a single document concerning accounts receivable as may of May 16, 1986 with certain company employees. Please confirm that copies of all contracts with insiders and other related party and intra-corporate arrangements (including McKesson Envirosystems and McKesson Environmental Services) have been provided or state that there are no other such contracts or arrangements.

I.C.4. Please state directly that there are no non-compete agreements, if that is the case.

I.C.5. Please provide a statement that there are no guarantees if that is the case.

I.C.7. We will arrange a meeting to go over the programs in the near future.

I.D. We await Ivan's "permit book" which we understand will include known permits (in addition to RCRA permits) which must be transferred before the Buyer can operate the business or any sites. We would also like confirmation that this information is complete.

II.A.2(a) and (b). Chuck Teixeira has on a preliminary basis reviewed these plan documents, and may wish to schedule a further meeting in that regard.

II.A.4, 5, and 6. Please confirm that the documents we received comprise all such documents, including the entire chemical operations, not only those located in San Francisco. Our review of the document provided also shows that many of the collective bargaining agreements have expired or soon will expire. Please provide a precise statement concerning renewal negotiations, new agreements, and, when applicable, whether the automatic year-to-year renewals have taken place, or new agreements are in place.

II.C.1 and 2. Please refer to our comments under II.A.4, 5 & 6, above.

III.A.1 and 2. We will arrange for Paul Dezurick to review the additional pleadings in the pending cases in the near future. Please obtain and provide to us copies of the

MCK0065086

Ivan D. Meyerson, Esq.
August 21, 1986

Page 5

Region IV EPA complaint and answer, and update status of the
Region V matters. When we complete the claims review process,
we will want a statement from you that you have disclosed all
claims within this litigation and arbitration proceedings
category.

      III.B.1. We will need full details of the Jeffrey &
Jan Sandelman claim that McKesson has defaulted under the
Chicago Heights lease especially in light of the six other
leases with the same trustees and essentially identical
terms. Also, please directly state that you have provided all
requested information, if that is the case, or a statement
that there is no other such information.

      III.B.2. Please directly state that you have
provided all consent orders, if that is the case. Your
response should not be limited to those known to the San
Francisco personnel.

      Thank you for your continuing cooperation.

               Very truly yours,

               Nicholas C. Unkovic
                  of
              GRAHAM & JAMES

NCU:py

Our File: PAKN 5.2

cc: Mr. Mark W. Hooper
    Mr. Erik Lindquist

MCK0065080

In addition to the information requested in our letter of July 26, 1976, please provide us with the following:

(1)  aged trial balance of trade accounts receivable, by branch, as of June 30, 1986, reconciled to the general ledger control balance;

(2)  an analysis of the allowance for doubtful accounts, by branch, and bad debt expense for the three month period ended June 30, 1986, including a detail of accounts written off;

(3)  the same data as number two above for the year ended March 31, 1986;

(4)  an aged analysis of other receivables, by branch, as of June 30, 1986;

(5)  a detail of notes receivable (balance, due dates, interest rates, terms, security agreements, etc.) as of June 30, 1986;

(6)  an aged detail of employee receivables as of June 30, 1986 (including due dates terms, security agreements);

(7)  a summary of inventory by major product line and/or major products as of June 30, 1986, by branch (including a detail of obsolete, slow moving or damaged inventory) and the LIFO calculations as of June 30, 1986;

(8)  a recap of the latest physical inventory by major product line and/or products which shows a comparison of physical inventory results with general ledger amounts and perpetual records, by branch;

(9)  an aged analysis of accounts payable as of June 30, 1986, by branch;

(10) an analysis of the following accounts as of June 30, 1986;

    (a)  prepaid expenses;

    (b)  deferred charges;

    (c)  noncurrent receivables (due dates, terms, security agreements);

MCK0065090

(d)   accrued expenses (payroll, vacation, other taxes, other);

(e)   deferred credits;

(f)   intangible assets;

(11)  a detail of property and equipment as of June 30, 1986, including cost and accumulated depreciation, by branch (including capitalized leases);

(12)  statements of operations by branch and corporate, reconciled to consolidated group statement of operations for the three month period ended June 30, 1986;

(13)  a description of the accounting principles employed by the Chemical Group and the methods of applying these principles;

(14)  if there have been any changes in the application of accounting principles or methods since April 1, 1985, please explain these and the financial impact of such changes on the financial statements for the year ended March 31, 1986, and for the three months ended June 30, 1986.

We request access to Chemical Group operations and accounting personnel who could answer any questions we may have relative to the above analyses. In addition, we will be performing a review of the internal accounting and administrative controls, which will require us to have access to such personnel.

Prior to signing the Assets Purchase and Sale Agreement, our auditors will observe an inventory of selected branch locations. In addition, they will be confirming selected accounts receivable and accounts payable after signing.

MCK0065091

COPIES TO: DARMAN
SMALL
LINDQUIST
WEINER
8-13

**GRAHAM & JAMES**
ONE MARITIME PLAZA
THIRD FLOOR
SAN FRANCISCO, CALIFORNIA 94111

TELEPHONE (415) 954-0200

OTHER OFFICES
LOS ANGELES, CA
LONG BEACH, CA
NEWPORT BEACH, CA
PALO ALTO, CA
NEW YORK, NY
WASHINGTON, DC
RALEIGH, NC
SINGAPORE
HONG KONG
MILAN

AFFILIATED OFFICE
KUWAIT

August 11, 1986

TELEX
W.U. 340148 CHALGRAV SFO
M.C.I. 67368 GJ SFO

FACSIMILE
GJ/E(415) 391-2808
GJ/E(415) 391-3493

CABLE
CHALGRAV, SAN FRANCISCO, CA

WRITER'S DIRECT DIAL NUMBER

(415) 954-0246

**BY MESSENGER**

Ivan D. Meyerson
Associate General Counsel
McKesson Corporation
Law Department
One Post Street
San Francisco, CA 94104

RECEIVED
AUG 12 1986
McKESSON
LAW DEPARTMENT

Dear Ivan:

        This letter is to respond to certain concerns which arose during our meeting on August 6 regarding my letter to you of August 1.  I also have a few additional information requests, as described below.

        <u>Underground Tanks.</u>

        a.  <u>Tank Removal Information.</u>  I understand that you are in the process of trying to locate any reports which may exist relative to the removal of underground tanks.  We would particularly like to have information regarding the condition at time of removal of those tanks which were located at sites in the vicinity of drinking water wells.  The report by McKesson Environmental Services (G. Slattery/M.D. Sands) dated August 30, 1985 indicates that wells were located within one mile of the facilities at three sites, namely Columbus, Lafayette and Minneapolis.  Of course, if McKesson is aware that a drinking water well is located within a mile of any other site at which an underground tank was removed, then that site should be added to this list.

        b.  <u>Columbus, OH Tank.</u>  On the August 30, 1985 memorandum mentioned above, Columbus, OH was listed as having one underground storage tank which was installed in 1974.  When we conducted our site visit, we were unable to obtain any information from the site personnel

MCK0065092

Ivan D. Meyerson
August 12, 1986

Page 2.

as to the existence of such a tank. Could you please
confirm the information in the August 30, 1985
memorandum? I addition, we would like to know what
product(s) it contained and when it was last in use.

RCRA Part B Permit Withdrawals. Following our
meeting last week, I understand that you are in the process of
obtaining copies of all RCRA permits and permit
applications. There is one additional item which deserves
immediate attention: We understand that RCRA Part B permit
applications for the following sites have either been
withdrawn or are in the process of being withdrawn:

    Altoona, PA
    Charlotte, NC
    Cincinatti, OH
    Columbus, OH
    Detroit, MI

Could you please furnish information as to whether
the withdrawal of these permit applications is, in each case,
in process and whether closure is being required as a
result? Are there any situations where the withdrawal will
merely result in the reinstatement or continuation of Interim
Status?

Governmental Awareness/Regulatory Contacts. At the
meeting, Marshall Small asked for clarification of what types
of regulatory contacts we were seeking information about. I
offered to prepare a definition of "material" regulatory
contacts. What I have in mind is regulatory contacts having
the following characteristics:

    1. RCRA and Major Permits.

        a. Part A/B Information. Any letter to or
from a regulatory agency (and any other informal contact)
which:

            1. Has a material bearing on whether any
McKesson site which is the subject of the proposed
transaction (a "McKesson Site") has valid Part A or
Part B status under RCRA;

            2. Establishes a requirement to provide a
Part B application; or

MCK0065093

Ivan D. Meyerson
August 12, 1986

Page 3.


    3.  Relates to the approval or disapproval
(including material comments) a proposed or final
closure plan.

    b.  <u>Compliance/Enforcement</u>.  Any such contact
which raises a material issue of whether a site is in
compliance with RCRA or any state hazardous waste law,
such as inspection reports, notices of violation,
administrative orders (proposed or final), court actions
or threats of any of the foregoing.

    c.  <u>Site Characterization</u>.  Any such contact
which:

    1.  Establishes a requirement on the part
of McKesson to submit information concerning the
presence or absence of hazardous materials in the
soil or groundwater at or under a site; or

    2.  Indicates that a regulatory authority
has information that soil or groundwater may be
contaminated.

<u>Stockpoints</u>.  A listing of facilities which we
received from you dated April, 1986, contains a number of
sites which are designated "stockpoints." We would like to
have written confirmation from you on each of the following
points:

    a.  <u>In-service Status</u>.  Which of the
stockpoints does McKesson intend to transfer to us, i.e.
are actively in service? Our information indicates that
the following sites are in service at the present time:

    Carlin, NV
    Vernal, UT
    Bakersfield, CA
    Harlingen, TX
    Odessa, TX
    North Haven, CT
    Knoxville, TN
    Fayetteville, AR
    West Monroe, LA
    Greenville, NC
    Medley, FL

MCK0065094

Ivan D. Meyerson
August 12, 1986
Page 4.

   b. <u>Repackaging Activities</u>.  Has any of the
stockpoints ever conducted repackaging operations on
site?  The purpose of this question is to ascertain
whether we should be concerned about possible chronic
spills, drips, etc. which are frequently associated with
repacking operations.

  <u>Public Warehouses</u>.  Would you please confirm whether
McKesson continues to use the public warehouses listed on the
April, 1986 facilities listing and whether we would be
expected to assume any outstanding obligations under exising
agreements with the warehousemen?  Have copies of any
outstanding contracts been furnished to us?  The April, 1986
listing shows the following public warehouses:

    Salt Lake City, UT
    Yakima, WA
    Nampa, ID
    Anchorage, AK
    El Paso, TX
    Des Moines, IA
    Quincy, IL
    Sioux City, IA

  <u>Terminals</u>.  Two sites, Lemont, IL and Berwyn, IL are
designated "terminals" on the April, 1986 listing.  Would you
please describe what is meant by a "terminal" and confirm that
these two sites are in service and will (or will not) be
acquired by us?  They are listed under the Dolton, IL site,
and, since we will not be acquiring the Dolton facility, we
assume that these two sites may remain with you.

  <u>Contract Packager</u>.  The April, 1986 listing
describes the Berwyn, IL and New Eagle, PA sites as "contract
packagers."  Would you please confirm whether these two sites
are in service and will (or will not) be acquired by us and,
if so, describe the functions of a "contract packager?"  Have
copies of the outstanding contracts been delivered to us?

   As you can probably tell from the above, we are in
the process of making a final and complete listing of
facilities to be acquired by us.  We will want to confirm the
accuracy of our listing once we have completed it.  We would
therefore appreciate it if you would review it at that time.

MCK0066095

Ivan D. Meyerson
August 12, 1986

Page 5.


      I understand that Jennifer has been able to review a large number of documents in recent days. From our perspective, the due diligence process is proceeding well, and we are very grateful for your cooperation.

      Please call me if you have any questions.

            Very sincerely yours,

            Robert C. Thompson
                of
           GRAHAM & JAMES

RCT:pm
cc:  Mark Hooper
     Nicholas C. Unkovic
     Jennifer L. Hernandez
     Michael Meyers
     Francis G. Toldi

MCK0065096

**GRAHAM & JAMES**

ONE MARITIME PLAZA

THIRD FLOOR

SAN FRANCISCO, CALIFORNIA 94111

TELEPHONE (415) 954-0200

RECEIVED

AUG 1 - 1986

CORPORATE
LAW DEPARTMENT

OTHER OFFICES
LOS ANGELES, CA
LONG BEACH, CA
NEWPORT BEACH, CA
PALO ALTO, CA
NEW YORK, NY
WASHINGTON, DC
RALEIGH, NC
SINGAPORE
HONG KONG
MILAN

AFFILIATED OFFICE
KUWAIT

TELEX
W.U. 340462 CHALGRAY S FO
M.C.I. 67366 GJ SFO

FACSIMILE
GR/II(415) 391-5906
GII/III(415) 391-2401

CABLE
CHALGRAY, SAN FRANCISCO, CA

WRITER'S DIRECT DIAL NUMBER

August 1, 1986

(415) 954-0246

Ivan D. Meyerson
Associate General Counsel
McKesson Corporation
Law Department
One Post Street
San Francisco, California  94104

Dear Mr. Meyerson:

This letter will refine our position relating to our environmental due diligence needs following our review of the letters from your office on this subject and the documents sent in response to my letter of July 8.

1. **General Comments**.  It was our original expectation that we would obtain much of the necessary environmental information from McKesson's responses to the Site Questionnaires which I sent to you on July 8.  You have since indicated that you do not intend to complete the Site Questionnaires and have suggested that we derive answers to many of our requests ourselves from a review of documents which you will make available.

We would prefer to proceed as we originally proposed in order to satisfy ourselves that we will have been given all information relative to the environmental affairs of McKesson.  However, we are willing to proceed as you have requested if the more limited data described below is provided and we can be assured that the set of documents which you will be making available is complete.  We propose to do that in three ways.  First, we will expect McKesson to confirm to us in writing that the documents which you will make available constitute all documents which are responsive to our request and are in the possession of McKesson at its corporate headquarters, the headquarters of the chemical division and/or the offices of McKesson Environmental Services.  Second, we will

MCK0065097

Ivan D. Meyerson
August 1, 1986

Page 2

need written confirmation that the documents made available
will disclose in writing all matters covered by our requests
(as modified by this letter) which are known to McKesson
corporate headquarters, chemical company divisional head-
quarters, and Environmental Services personnel, as well as
other chemical company personnel with a rank of regional vice
president (or equivalent) or higher ("McKesson Personnel").
Documents at other locations and matters known to other
personnel will be necessary only to the extent specifically
requested. Third, we propose that hard copy of all materials
made available by McKesson during the due diligence process be
delivered to us five days prior to the anticipated signing of
the definitive agreement, so that both parties may have a
record of what was disclosed.

Based on the foregoing and the following, we will
begin our review of the 1985 Questionnaires and other docu-
ments at McKesson Headquarters at 9:00 a.m. Monday, August 4,
1986.

We are prepared to drop our request that the Site
Questionnaires be completed by McKesson, if McKesson is
willing to provide the following:

2. Underground Tanks. In lieu of the information
requested under Item 3 of my July 8 letter and a complete
response to Item 5 of the Site Questionnaire (as it deals with
underground tanks), we would need to have written confirmation
from McKesson to the effect that no underground tanks con-
taining chemicals remain in the ground at any site to be
acquired and that the only underground tank containing fuel is
at the Amarillo site. In addition, we would need to have
access to all documents containing reports on whether
chemicals or fuel was found to have leaked or to then be
leaking from any underground tank at the time it was removed
from the ground, together with access to and clearance to
obtain oral information from any McKesson Personnel who have
knowledge of whether such leaking was detected at time of tank
removal. Finally, we would need to have assurances that no
underground customer site tanks will be transferred to us at
closing.

3. On-Site Disposal Practices and Facilities. In
lieu of responses from McKesson to Item 7 of the Site Ques-
tionnaire (dealing with sumps and neutralization facilities)
and Item 16 (dealing with on-site disposal), we would need to

MCK0065098

Ivan D. Meyerson
August 1, 1986

Page 3


have a specific written confirmation from McKesson that there
has been no disposal of hazardous chemicals at any of the
sites and that no earthen pits, ponds and lagoons have ever
been operated on the sites (with any exceptions specifically
stated).

    4.  <u>RCRA Permits</u>.  In lieu of a response to Item 6
of the Site Questionnaire (dealing with RCRA status of sites),
we would need to have a listing of all RCRA permits for which
McKesson has applied or which it now holds for sites to be
acquired, stating the name of the issuing agency, together
with copies of all applications for permits and copies of
issued permits.  The untitled document which you supplied
earlier does not contain the identity of the issuing author-
ity, nor does it specify whether the permit has been applied
for (Part A or Part B) or whether it has been issued.

    5.  <u>Permits Integral to Lawful Operations</u>.  In lieu
of a complete response to Item 8 (dealing with other state and
local permits), we would need to have a list of all permits
(in addition to RCRA permits) which would have to be transfer-
red to us in order for us to conduct operations in a lawful
manner on the sites to be acquired, and which, if not trans-
ferred, could subject the Buyer to a risk of the issuance of
an administrative or other order which could force a suspen-
sion of operations at any site.

    6.  <u>Site Characterization and Engineering</u>.  In lieu
of complete responses to Items 9 and 10 (dealing with site
characterization work and engineering studies, respectively),
we would need to have a specific written confirmation that all
information on these subjects known to McKesson Personnel has
been disclosed to us in writing or is contained in the docu-
ments made available for review.

    7.  <u>Governmental Awareness</u>.  In lieu of a complete
response to Item 12 (dealing with governmental awareness of
site contamination), we would need to have a specific written
confirmation that all documents dealing with governmental
contacts, inspections, etc. have been made available to us and
that all regulatory contacts known to McKesson Personnel which
have occurred in the past year have been disclosed to us in a
writing which sets forth the date of the contact, the names of
the agency and McKesson personnel involved and the nature and
outcome of this contact.

MCK0065099

Ivan D. Meyerson
August 1, 1986

Page 4

8. _Offsite Disposal Sites_.  In lieu of a complete
response to Item 13 (dealing with offsite disposal sites), we
would need to have access to all reports filed under RCRA
setting forth the names and locations of offsite disposal
sites used and related information.  Alternatively, you may
provide a summary report listing disposal sites used, periods
of disposal, and general types and quantities of materials
disposed, with written confirmation that the summary contains
all information contained in the RCRA reports.  The offsite
disposal information provided with your response number 8 did
not include such information.  The Buyer cannot compromise its
position that McKesson assume all liability for offsite dis-
posal occurring prior to the closing without that information.

9. _Well Information_.  We understand that McKesson
is willing to make a representation that, to the knowledge of
McKesson Personnel, it has not contaminated any drinking water
wells or aquifers which serve such wells.  If you can confirm
this to us in writing, we will drop our request for a response
to Item 14 (dealing with drinking water well locations).

10. _OSHA Matters_.  In lieu of a complete response
to Item 17 (dealing with OSHA inspections, etc.), we would
assume that the written confirmation which McKesson will give
us will be sufficient to assure us that all information per-
taining to OSHA compliance and involvement by OSHA-type
agencies is contained in documents made available for our
review.

11. _Recycling Activities_.  In lieu of complete
responses to Items 18 and 19 (dealing with recycling activi-
ties conducted on-site and waste materials handled, respec-
tively), we would need to have a list of all sites to be
acquired at which commercial-scale recycling activities have
ever taken place.  We would also assume that the written con-
firmation which McKesson is to give us will be sufficient to
assure us that we have reviewed all documents containing
information relative to outstanding contracts whereby McKesson
is required to either pick up waste materials from others or
deliver waste materials to others for recycling.  We also need
to know which sites currently handle waste materials for
Envirosystems and/or third parties.

12. _Regulatory Contacts_.  Because you do not pro-
pose to answer the Site Questionnaire and are limited in your
ability to make documents available, we will need to visit

MCK0065100

Ivan D. Meyerson
August 1, 1986

Page 5


environmental regulatory personnel in a number of states.  We
propose to do so by having our client's environmental consul-
tants visit the agencies for the stated purpose of a general
survey of the regulatory status of all chemical distribution
companies in that state.  If that is not agreeable to
McKesson, we can explore other means of providing us the
necessary information, presumably from sources within the
company.

       13.  Specific Site Issues.  Finally, please provide
us with all information available on the spill at Albuquerque
and on the Grand Junction mill tailings problem.

       We are hopeful that this revised request will be
acceptable to you, inasmuch as we are quite anxious to con-
tinue our due diligence review, as required by our client's
Supervisory Board.

                          Very sincerely yours,

                          Robert C. Thompson
                               of
                          GRAHAM & JAMES




RCT:sw

cc:  Mark Hooper
     Nicholas C. Unkovic
     Erik Lindquist
     Marshall Small




MCK0065101

GRAHAM & JAMES

ONE MARITIME PLAZA

THIRD FLOOR

SAN FRANCISCO, CALIFORNIA 94111

TELEPHONE (415) 954-0200

July 8, 1986

(415) 954-0246

Ivan D. Meyerson
Associate General Counsel
McKesson Corporation
Law Department
One Post Street
San Francisco, CA 94104

Dear Mr. Meyerson:

    In preparation for our due diligence in connection
with the proposed transaction, we would like to get started on
the following matters relating to all of the sites to be
acquired:

    Site Visits.  We would like to complete our site
    visits of all remaining service centers plus the
    stockpoint in Carlin, Nevada.  We propose to visit
    Carlin during the week of July 7, and the others
    starting on July 14, to be completed by the week of
    July 21.  In addition, we may want to visit some of
    the sites at which the Company-owned underground
    tanks are maintained at customer sites.

    Reports.  We have prepared a detailed Site
    Questionnaire in the form of Appendix A to this
    letter which we would like to have completed for
    each operating site to be acquired and made
    available for our review in your office by July 21.

3.  Inventory of Customers Site Tanks.  We would like to
    have an inventory of both above ground and under-
    ground tanks which are owned by the Company but
    maintained at customer sites.  (See Appendix B for
    contents of inventory.)  A preliminary list of tanks
    and tank sites should be made available to me by
    July 15.

4.  Documents to be Reviewed.  We would like to review
    all environmental files in your office and your
    environmental coordinator's office (Dr. Hutton).  In

REDACTED
ATTORNEY
NOTES
THROUGH-
OUT

REDACTED

MCK0065102

REDACTED

Ivan D. Meyerson
July 8, 1986

Page 2.

addition, if not contained in the above files, we
would like to see copies of:

a.  Consultants reports relating to environmental   *Redacted*
    matters.

b.  Regulatory correspondence, inspection reports,
    etc., relating to environmental matters.

*Redacted*

c.  Indemnification agreements (both indemnifying   *Redacted*
    Company and by which Company intends to
    indemnify others) for environmental liability.

d.  Internal reports relating to environmental
    conditions at sites.

    Minutes of all environmental audit committee
    meetings.

    Minutes of board meetings and board committee   *Redacted*
    meetings relating to environmental matters.

g.  Any projections of the costs to be incurred
    over the next 5 years (by site) for:

    i.   Remediation of existing contamination.

    ii.  Upgrading of facilities to prevent future   *Redacted*
         contamination.

h.  Reports filed with EPA and/or state authorities
    under RCRA indicating the destinations of
    wastes generated at Company-owned sites for the
    past five years.

*Redacted*

i.  Company compliance manuals, training programs
    or other written guidance for preventing
    environmental contamination and complying with   *Redacted*
    governmental requirements.

j.  Written agreements with others in effect at any
    time during the past five years for the
    transportation, disposal, recycling or other
    means of handling hazardous waste.

*Redacted*

MCK0065103

Ivan D. Meyerson
July 8, 1986
Page 3.

    k.   Any other agreements with others which directly
or indirectly affect environmental issues.

    Site Manager Data Request.  We note that it has been
some time since your site managers were asked to provide
current environmental information.  We would like you to
request an update from each site manager on the regulatory
matters described in 4(b) above.  In addition, you should
probably ask your site managers to conduct the necessary
inquiries with local drinking water authorities in order to
obtain the information we have requested on drinking water
wells.

*Redacted*

    Scope of Due Diligence Review.  Attached as
Appendix C is a list of subjects which our due diligence
review is intended to cover.  We would like to see all
documents of the nature described in that Appendix where not
specifically addressed above.

    I am looking forward to meeting you and working with
you on this project.  If you have any questions on these
matters, please do not hesitate to call.

Very sincerely yours,

Robert C. Thompson
of
GRAHAM & JAMES

RCT:pm

APPENDIX A

Site No. _____
(G&J Use)

### SITE QUESTIONNAIRE

1.  SITE LOCATION _____

2.  YEAR OCCUPIED BY COMPANY _____

3.  SITE SIZE IN ACRES _____

4.  COMPANY ACTIVITY EVER CONDUCTED AT SITE:  (Check)

    Warehouse ____
    Repackaging of bulk chemicals ____
        Acids ____
        Solvents ____
    Recycling ____
    Storage of hazardous waste generated by others ____
    Other (explain) _____
    _____
    _____

5.  TANK INFORMATION:

    Total number of above ground tanks now at site ____

    Total number of underground tanks now at site ____

    Number of underground tanks removed from site ____
        (Provide a copy of Appendix B—Information Requested on
        Customer Site Tanks and Company Site Tanks—for each
        underground tank at the site)

6.  SUMPS, NEUTRALIZATION FACILITIES:

    Does the site now use or has it ever used an earthen-bottomed pit
    for the collection of wash waters, spills, etc.  (Yes ___ No ___ )

    If yes, describe _____

    If no longer in use, when was it closed? _____

7.  RCRA STATUS

    Was a Part A RCRA permit application ever filed for this site?
    (Yes ___ No ___ )  If yes, give date _____

1.

MCK0065105

Was a Part B RCRA permit application ever filed for this site? (Yes___ No___) If yes, give date_____

Has a Part B permit been granted for this site? (Yes___ No___) If yes, give date_____and name of issuing authority_____

_____

What is the nature of the activity covered by Part A or Part B application or permit:

        Treatment___
        Storage___
        Disposal___

Does the Company intend to close any portion of this site subject to RCRA? (Yes___ No___)

Has a closure plan been prepared for any portion of this site? (Yes___ No___)

Has it been submitted to EPA or a RCRA-authorized state? (Yes___ No___) What date_____)

What is the current status of the closure plan?_____

_____
_____
_____

8.  OTHER STATE AND LOCAL PERMITS

List all State and local permits needed to operate the site, including those relating to land use, chemical handling, use of equipment and vehicles for handling chemicals, sewer discharge permits, etc.

| Issuance Date | Expiration Date | Issuing Agency | Scope of Permit and Legal Authority |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

2.

MCK0065106

9.  SITE CHARACTERIZATION WORK

    Has any soil or groundwater testing been conducted at the site or adjacent to the site during the past five years?  (Yes___ No___)

    If yes, give date(s)_____

    Name of person(s) conducting tests_____

    _____

    Did the testing indicate that the soil or groundwater was contaminated with chemicals?  (Yes___ No___)

    If yes, what was the nature of the contamination?  Provide copies of all laboratory analyses. _____

[Use additional sheets, if necessary.]

10.  ENGINEERING STUDIES

    Have any engineering studies of contamination been conducted at the site?  (Yes___ No___)

    If yes, give dates and name of engineer(s):

    _____
    _____
    _____

Please make available for G&J review copies of all engineering reports.

11.  REMEDIAL COSTS

    Have any expenses been incurred at the site for remedial actions (other than removal of underground tanks), including removal of soil and groundwater decontamination?  (Yes___ No___)

    If yes, what was the nature of the remedial work?

    _____
    _____
    _____

    What has been the cost of such work to date?_____

3.

MCK0065107

12. GOVERNMENTAL AWARENESS

Have there been any visits or inspections of this site by a governmental agency or agencies in the past twelve months relative to environmental matters? (Yes___ No___ )

If yes, have there been any reports, notices or correspondence from any such agency? (Yes___ No___ )

Is any governmental agency aware of any site contamination? (Yes___ No___ )

If yes to any of the above, which agency or agencies? _____

Please make available for G&J review copies of all correspondence, etc. relating to this governmental involvement.

13. OFFSITE DISPOSAL SITES

List all off-site disposal sites used during the past five years.

| Site Name & Location | Period Disposal Occurred | Type & Quantity of Waste Disposed | Share of Waste if Superfund Site |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

14. WATER WELLS LOCATED WITHIN TWO MILES OF SITE

| Well No | Distance to Site | Private Well | Public Water System | Other Use of Well (Specify) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Give depth to drinking water at this site. _____ .

4.

MCK0065108

## 15. CONSTRUCTION AT OR NEAR SITE

Is the Company aware of any proposed or ongoing well development, residential development, construction involving excavation or other type of similar activity which could prompt governmental authorities to test the groundwater or soil at or near the site for chemical contamination? (Yes___ No___)

If yes, please explain_____

_____

_____

## 16. DISPOSAL ACTIVITY UNDERTAKEN ONSITE

Has any chemical disposal activity taken place on the site, including, without limitation, any burial of containerized waste, disposal of liquids onto land, injection, or incineration? (Yes____ No___)

If yes, please describe:_____

_____

_____

## 17. OSHA MATTERS

Has any inspector from OSHA or a state or local OSHA-type agency visited or inspected the facilities at this site in the past twelve months? (Yes___ No___)

If yes, was any citation, notice or report delivered to the Company? (Yes___ No___)

If yes, please make such documents available for Graham & James review.

## 18. RECYCLING ACTIVITIES CONDUCTED ONSITE

Has the Company conducted chemical recycling activities at the site in the past five years? (Yes___ No___)

If yes, complete the following:

| Chemicals | Approximate Annual Volume | Dates |
|---|---|---|
| Chlorinated solvents_____ | _____ | _____ |
| Nonchlorinated solvents_____ | _____ | _____ |
| Other (specify)_____ | _____ | _____ |

5.

MCK0065109

Who were the principal sources of such chemicals:

Chlorinated solvents_____

Nonclorinated solvents_____

Other (specify type)_____

_____

## 19. WASTE MATERIALS HANDLED; USE OF RECYCLERS

Has this site ever stored waste chemicals received from others? (Yes___ No___ )

If yes, please answer the following questions for each of the indicated years:

### 1980:

| Materials | Sent to:<br>Enviro-<br>Systems | Other<br>Recyclers | Other<br>Disposers | Maximum<br>Drums on Site<br>at One Time |
|---|---|---|---|---|
| Solvents____ | ____ | | ____ | ____ |
| Other<br>(specify:____ | ____ | ____ | ____ | ____ |

### 1981:

| Materials | Sent to:<br>Enviro-<br>Systems | Other<br>Recyclers | Other<br>Disposers | Maximum<br>Drums on Site<br>at One Time |
|---|---|---|---|---|
| Solvents____ | ____ | ____ | ____ | ____ |
| Other<br>(specify:____ | ____ | ____ | ____ | ____ |

### 1982:

| Materials | Sent to:<br>Enviro-<br>Systems | Other<br>Recyclers | Other<br>Disposers | Maximum<br>Drums on Site<br>at One Time |
|---|---|---|---|---|
| Solvents____ | ____ | ____ | ____ | ____ |
| Other<br>(specify:____ | ____ | ____ | ____ | ____ |

6.

MCK0065110

1983:

| Materials | Sent to: Enviro-Systems | Other Recyclers | Other Disposers | Maximum Drums on Site at One Time |
|---|---|---|---|---|
| Solvents | | | | |
| Other (specify: | | | | |

1984:

| Materials | Sent to: Enviro-Systems | Other Recyclers | Other Disposers | Maximum Drums on Site at One Time |
|---|---|---|---|---|
| Solvents | | | | |
| Other (specify: | | | | |

1985:

| Materials | Sent to: Enviro-Systems | Other Recyclers | Other Disposers | Maximum Drums on Site at One Time |
|---|---|---|---|---|
| Solvents | | | | |
| Other (specify: | | | | |

1986:

| Materials | Sent to: Enviro-Systems | Other Recyclers | Other Disposers | Maximum Drums on Site at One Time |
|---|---|---|---|---|
| Solvents | | | | |
| Other (specify: | | | | |

Who were the other recycling companies used during those years?

| Recycler | Year Used | No. Drums |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

7.

MCK0065111

20. PRIOR OWNERSHIP AND USE OF SITE FROM 1920 TO PRESENT:

Were any chemical-handling operations conducted by others at the
site prior to the Company's operations?  (Yes___ No___ )

If yes, provide information (going back as far as 1920) as to the
dates of such activity, the identity of the site owner and site
operator at the time such chemical-handling activities occurred and
the nature of the activities involved. _____

_____
_____
_____
_____
_____
_____
_____

8.

MCK0065112

APPENDIX B

INFORMATION REQUESTED ON
CUSTOMER SITE TANKS
AND COMPANY SITE TANKS

1.  Tank size_____

2.  Date installed_____

3.  Date removed (if applicable)_____

4.  Type of tank (steel, fiberglass, etc.)_____

5.  Type of chemicals stored:

    Acids_____
    Chlorinated solvents_____
    Nonchlorinated solvents_____
    Other_____

6.  Date of last leak or pressure test_____

7.  Results of such tests:

    _____
    _____
    _____

8.  Has tank been reported to EPA or other governmental
    authorities?  (Yes___No___)
    What authorities?_____

9.  If reported, by whom (Company or customer)?

    _____

10. Is the tank subject to any permit?  (Yes___No___)
    Is the permit listed on the Site Questionnaire?
    (Yes___No___)

11. Are there any outstanding agreements relating to
    customer site tanks?  (Yes___No___)

12. Is there any evidence of leakage from the tank or
    from the tank piping and/or fittings?  (Yes___No___)

1.

MCK0065113

13.  What is the nature of the contamination (size of plume, etc.) if any?

_____

_____

_____

14.  Has any such contamination been reported to any governmental authorities or are such authorities otherwise aware of the contamination?  (Yes___ No___) Please make available copies of all correspondence or other documents relating to this regulatory relationship.

15.  Has any remedial action been requested or taken place in response to such contamination?  (Yes___ No___) Please make available copies of all documents, etc., relating to the cleanup.

2.

MCK0065114

APPENDIX C

## SCOPE OF ENVIRONMENTAL
## DUE DILIGENCE REVIEW

In connection with our due diligence regarding the environmental problems of the Company, we would like to review all documents in your Company's possession relating to the following:

1. __Site Data__. This includes information relating to activities at the site (past and present) which have or could contaminate the environment. It also includes information relating to risk factors, such as biological receptors and other natural resources (e.g. drinking water). Also included are any analyses of the potential for such risk factors to influence potential costs, including governmental interest in investigating any contamination and imposing cleanup requirements.

2. __Site Contamination__. Documents (arranged by site) including, without limitation: internal studies (including environmental audits), consultant reports, correspondence, and other information, relating to:

a. __Actual contamination resulting from:__
   1. Spills;
   2. Leaks;
   3. Disposal activities on site:
      a. Drum washing;
      b. Sewering of residues;
      c. Stormwater runoff;
      d. Any other;
   4. Disposal activities offsite:
      a. Locations of sites;
      b. Chemicals involved, including quantities;
      c. Involvement at proposed and final NPL sites;
   5. Contamination by others (groundwater plume migration, etc.); and
   6. Other contamination from any source whatever for which the owner or operator of the site could be held responsible or liable under existing laws.

b. __Potential for Contamination__ resulting from any of the above-named factors.

1.

MCK0065115

3. <u>Regulatory Matters</u>: all types of documents as stated above (arranged by site) relating to the following:

    a. <u>Status under RCRA</u>, including closure plans, sampling protocols developed by or for the Company and all supporting documentation;

    b. <u>Permits</u> for the treatment, storage or disposal of hazardous waste, from any applicable jurisdiction, including, without limitation:
    1. Outstanding permits;
    2. Applications;
    3. Permits denied, suspended, cancelled, or withdrawn for any reason whatever;

    c. <u>Permits</u> for the underground storage or handling of other hazardous materials, including, without limitation:
    1. Outstanding permits;
    2. Applications;
    3. Permits denied, suspended, cancelled, or withdrawn as the result of underground storage tanks having been taken out of operation, closed, or removed from the site;

    d. <u>Reports</u> to governmental authorities on any regulatory matter having to do with chemical storage, handling, treatment or disposal;

    e. <u>Enforcement</u> matters including, without limitation:
    1. Inspection records;
    2. Notices of violation or the equivalent;
    3. Administrative orders;
    4. Litigation:
       a. Pleadings;
       b. Other case files;
    5. Correspondence relating to enforcement;
    6. Internal memoranda relating to enforcement;
    7. Consultant reports, correspondence, etc. relating to enforcement; and
    8. Citizen complaints.

4. <u>Environmental Audit/Compliance Programs</u>: all types of documents as stated above (arranged by site) relating to any environmental audit and/or compliance programs.

5. <u>Potential Liability Assessments</u>: all types of documents as stated above (arranged by site) relating to:

2.

MCK0065116

a.  <u>Potential and actual liability for known contamination</u>, including clean-up costs, fines, damage to natural resources or other property, personal injury, etc.;

b.  <u>Projected liability for potential contamination</u> for any of the above; and

c.  <u>Insurance policies</u> covering claims arising out of environmental contamination, together with analyses of the potential for recovery of such claims by the company.

3.

MCK0065117

Redacted
Attorney Notes
Throughout

**GRAHAM & JAMES**
ONE MARITIME PLAZA
THIRD FLOOR
SAN FRANCISCO, CALIFORNIA 94111

TELEPHONE (415) 954-0200

Redacted

OTHER OFFICES
LOS ANGELES, CA
LONG BEACH, CA
NEWPORT BEACH, CA
PALO ALTO, CA
NEW YORK, NY
WASHINGTON, DC
RALEIGH, NC
SINGAPORE
HONG KONG
MILAN

AFFILIATED OFFICE
KUWAIT

TELEX
W.U. 340143 CHALGRAV SFO
M. C. I. 67082 OJ SFO

FACSIMILE
GI/III (415) 391-2900
GX/III (415) 391-3493

CABLE
CHALGRAV, SAN FRANCISCO, CA

WRITER'S DIRECT DIAL NUMBER

July 8, 1986

RECEIVED
JUL 9 1986

Underlined Hand Delivery

Ivan D. Meyerson
Associate General Counsel
McKesson Corporation
Law Department
One Post Street
San Francisco, CA  94109

Re:    Underlined Due Diligence Document Request

Dear Ivan:

        This letter describes the documents which we will
need to review in the first stage or our non-environmental due
diligence investigation in the pending transaction.  On the
environmental side, our client will be making arrangements for
completing its site visits, and my partner Bob Thompson will
be sending a separate letter on environmental due diligence.
Other document inquiries will follow, particularly with
respect to insurance matters.

        Please provide us with the following:

I.    Underlined General Corporate.

      A.    Underlined Corporate Data and Financial Matters.

        ⊗    Copies of all documents filed with the Securities
and Exchange Commission during the last five years,
including exhibits, but excluding the 10-K for the year
ended March 31, 1986 and the proxy statement for the
meeting to be held July 23, 1986.                        Redacted

        ✗    Financial statements and related materials,
excerpted if necessary, relating to McKesson's chemical
operations, prepared as of the most recent date
practicable, unless otherwise noted:

                                                        Redacted

MCK0065118

Ivan D. Meyerson
July 8, 1986

Page 2

(X) Most recent months unaudited statements, with comparable statements for prior year;

(X) Auditors' letters to management for five years;

(X) Auditors' inquiry letters and replies for five years;

(X) Summary of accounts receivable relating to McKesson's chemical operations;

(X) Inventory valuation, turnover, and obsolescence review;

(X) Pricing policies and compliance;

*Redacted*

(X) Itemization and description of notes payable;

(X) March 31, 1986 year end profit and loss statements for each branch; and

(ii) Internal memoranda, reports, or other similar documents containing discussions of the prospects of the chemical operations or projections of sales revenues, cost of goods sold, operating expenses or operating profits for the chemical operations.

Please also provide access for Robert Nilssen of KMG Main-Hurdman to the chemical operations work papers of Deloitte, Haskins & Sells for the years ended March 31, 1984, 1985 and 1986, and any work papers related to audited or unaudited financial statements of the chemical operation subsequent to March 31, 1986, as well as to the chemical operation accounting policies and procedures manual, or similar documentation.

*Redacted*

3.  Documents concerning indebtedness related to McKesson's chemical operations, prepared as of the most recent date practicable:

(X) Summary of outstanding, long-term indebtedness including balance owed, interest rates, repayment

*Redacted*

MCK0065119

Ivan D. Meyerson
July 8, 1986

Page 3

terms, restrictive covenants, if any, and other
material information; and

(X) Copies of all revenue bonds, capitalized
leases, indentures, notes, mortgages, sinking fund
agreements, and other related documents.

X. Tax documents relating to McKesson's chemical
operations:

(a) Copies of returns or excerpts relating to
McKesson's chemical operations for latest closed and
all open years:

(1) federal;
(2) state;
(3) local;

(b) Audit and revenue agents' reports:

(1) federal;
(2) state;
(3) local;

(c) Settlement documents and correspondence for
last three years; and

(d) Real and personal property tax statements and
related documents.

5. Extracts of all board of directors minutes and
committee minutes (whether of the board or otherwise)
containing all information relating to McKesson's chemical
operations for the last five years.

B. Property.

Real Property:

(X) The summary requested of Eric Lindquist at our
meeting of June 23, 1986 re valuation support for the
allocation of the purchase price;

*Redacted*

MCK0065120

Ivan D. Meyerson
July 8, 1986

Page 4

Redacted

    (X) copies of all leases and title documents;

    (X) copies of most recent available preliminary title reports;

    (X) copies of all title insurance policies;

    (X) copies of all agreements and documents relating to or affecting real property (e.g., sale and lease back, conditions, covenants and restrictions, etc.); and

    (X) leasehold improvements summary, to the extent not contained in (a) above.

2. **Other Property:**

    (X) Summary of material encumbrances or liens;

    (X) Copies of all UCC filings evidencing security interests in McKesson chemical property; and

    (X) Summary identification of banking relationships important to McKesson's chemical operations.

Redacted

3. **Intellectual Property:**

    (X) Trademark list including data as to use, date of first use, and registration, to the extent available;

    (X) Patent list, including patent number, date of issue, date acquired, cost, reserve for amortization, present book value, and nature of patent;

Redacted

    (X) Copyright list;

    (X) Summary of claimed common law or statutory protections relating to trade secrets or other claimed rights; and

Redacted

MCK0065121

Ivan D. Meyerson
July 8, 1986

Page 5

(9) Royalty, nondisclosure, or other agreements
relating to use of trademarks, tradenames, patents,
copyrights, or trade secrets.

C. Contracts and commitments not listed above related to
McKesson's chemical operations.

Copies of all supplier and customer contracts
including warranties, etc.

Copies of all contracts with insiders and other
related party and intra-corporate arrangements.

2. Copies of all installment purchase or sale
agreements involving more than $500,000.00.

4. Copies of all secrecy and non-compete agreements.

5. Copies of all guaranties.

6. Copies of all agreements or contracts not made in
the ordinary course of business.

Current supplier or customer letter agreements
relating to quantity discounts, percentage rebates, and
other similar terms.

McKesson Chemical Operations' Licenses and Permits.

Copies of all material licenses, permits and other
government consents used in the chemical operations.

General Intangibles.

A summary of all general intangibles arising from the
business or operations of the McKesson chemical operations
and not covered elsewhere in this letter.

II. Labor/ERISA Documents.

Employee Plans, Funds, Programs and Arrangements.

Redacted

Redacted

Redacted

MCK0065122

Ivan D. Meyerson
July 8, 1986

Page 6

Redacted

X  **Employee Pension Benefit Plans.** Copies of the
following relating to all employee pension benefit plans
as that term is defined in ERISA § 3(2) and Department of
Labor ("DOL") Reg. § 2510.3-2, including those jointly
sponsored by another organization, including the
following:

(X) qualified or non-qualified pension plan;

(X) profit sharing plan;

(X) thrift plan;

(X) stock bonus plan;

(X) employee stock ownership plan;

(X) cash or deferred or simplified employee
pension plan;

(X) sponsored or facilitated IRA program (even if
technically not a "pension plan"); and

(X) employee pension benefit plans not identified
above with respect to which McKesson or any of its
affiliates may have any liability under ERISA.

X  **Employee Welfare Benefit Plans:**

(a) Copies of all employee welfare benefit plans,
as that term is defined in ERISA § 3(1) and DOL Reg.
§ 2510.3-1, and any program creating benefit
expectations among employees, including provision of
insurance or otherwise; and

(b) To the extent not described in any company
employee or personnel manual, a description of
programs or policies for payment of compensation
during absences not already identified above.

X  **Arrangements With Individuals or Small Groups of
Employees.** Provide a summary of the following:

MCK0065123

Ivan D. Meyerson
July 8, 1986

Page 7

*Redacted*

(X) written or oral employment agreements;

(X) deferred compensation stock-related or welfare benefit arrangement which benefit individual employees or small groups of employees; and

(X) any consulting or other contracts with independent contractors, primarily for the provision of personnel services.

(4) Copies of all Collective Bargaining Agreements.

(5) Copies of all Affirmative Action Plans.

(6) Copies of all company employee and/or personnel manuals or handbooks.

X. Plan Documents and Reports. For each of the pension and welfare plans identified in Section II.A.1 and .2 above, please provide the following documents:

X. copies of plan and trust documents and amendments thereto in effect since the first plan year for which ERISA was effective.

X. Copies of adopting resolutions.

X. Current Summary Plan Description, material modifications thereto, and past Summary Plan Descriptions and an indication of the date the Summary Plan Description was filed with the DOL, if applicable.

C. Union Contracts.

1. Single or Multiple Employer Plans. Copies of all union contracts pursuant to which McKesson or any of its affiliates has established or maintains single or multiple employer pension or welfare plans (include both formal and informal arrangements).

MCK0065124

Ivan D. Meyerson
July 8, 1986

Page 8

2. **Multiemployer Plans:**

(a) Copies of all union contracts which relate to multiemployer plans including information respecting any anticipated rate increases, any claims for unpaid current contributions, and liability the company or any affiliate of the company may or will have under Title IV of ERISA as a result of plan withdrawal or otherwise;

(b) McKesson's opinion as to whether a partial or complete withdrawal would occur as a result of the sale of assets (including supporting data) and the amount of withdrawal liability (including supporting actuarial data);

(c) Contribution history of the company, or of any affiliate of the company, under ERISA § 4204(b) for each plan;

(d) Amount of the contribution made by the company or by any of its affiliates to each plan with respect to the plan year in which the sale of assets will close and of the amount of contribution for the rest of the plan year;

(e) Name, address, and telephone number of the administrators of each plan; and

(f) Plans in reorganization within the meaning of ERISA § 4241.

*Redacted*

III.    **Litigation Documents.**

A.    **Claims.**

1.    **Copies of claims by employees,** excluding files which Paul Dezurick has reviewed and workers compensation claims, but including any arbitration proceedings.

2.    Copies of non-employee-related claims or litigation excluding files which Paul has reviewed, but including arbitration proceedings.

*Redacted I*

MCK0065125

Ivan D. Meyerson
July 8, 1986

Page 9


B.  Judgments & Decrees.

     X     List of all outstanding judgments or awards not
yet paid or in any other manner not yet satisfied.                    — Redacted

     2.  Copies of of all consent decrees with governmental
agency.

          Please also provide access for Robert Gunn of A. T.
Kearney to appropriate data processing management personnel,
so that we can proceed to develop a data processing contract
proposal.

          We appreciate that this is a great deal of material
to collect in a short time.  If you need any clarification or
further explanation of the requested documents, please notify
us.

          Thank you for your cooperation.


                              Very truly yours,



                              Nicholas C. Unkovic
                                     of
                              Graham & James

Our File PAKN 5.2

cc:  Mr. Mark W. Hooper
     Mr. Eric Lindquist


Redacted

MCK0065126