# EXHIBIT
# MM

Law Department

*1/21 CC/Don Paxton*

| | |
|---|---|
| To | Date |
| Yvonne Quint | December 20, 1993 |

**M·Kesson**
Intra Company
**RECEIVED** Correspondence

DEC 23 1993

D. W. R.

| | |
|---|---|
| From | Location/Tel. |
| Dinah Szander | 34/7506 |
| Subject | Copies To |
| McKesson Chemical Company Files | Lydia Jeung |
| | Pam McCafferty |
| | Susan Paulus |
| | Cheryl Poinsette |

---

Thank you for your memo of December 14, 1993 regarding the inadvertent destruction of certain McKesson Chemical Company (MCC) personnel files, and HR's new policy requiring that any box in storage be inspected by an HR manager before authorization to destroy is given. In the case of the MCC files, please contact me before any portion of the file is destroyed. In addition to the employee medical records, exposure records, reports of injuries and reactions to workplace chemical exposure, which are permanently retained, other parts of the file may help me reconstruct the historical waste disposal practices of MCC in various Superfund matters. Thanks again for your help and for letting me know about the mistake.

Dinah L. Szander

DLS/jab

MKIL243445

One Post Street, San Francisco CA 94104-5296 Tel 415 983 7506

Dinah L. Szander Assistant General Counsel

**M Kesson**

November 22, 1995

Mr. Joel Summer
Univar Corporation
6100 Carillon Point
Kirkland, WA 98033

<u>Re: Retention of Books and Records</u>

Dear Joel:

We are disappointed that Univar will not extend the contractual retention period for files, books and records of McKesson Chemical Company relating to environmental matters ("environmental records"). Instead, Univar intends to destroy them in November 1996 unless McKesson wishes to take them. That is McKesson's intention and at the appropriate time, I will call you to make arrangements to pick up the environmental records.

Very truly yours,

Dinah L. Szander

DLS/dl

cc:   Susan Paulus
      Carole Ungvarsky
      Ivan Meyerson

File C-30
      C-30-A

\G\LAW\WPDATA\DLS\COR\SUMMER.SAM

MCK0057061

# Van Waters & Rogers Inc.
### subsidiary of Univar

P.O. BOX 34325
SEATTLE, WA 98124-1325

6100 CARILLON POINT
KIRKLAND, WASHINGTON 98033
PHONE: (206) 889-3400
FAX: (206) 889-4100

July 23, 1996

Ms. Dinah Szander
McKesson Corporation
One Post Street
Law Dept., 24th Floor
San Francisco, CA  94104

Re:    McKesson Records

Dear Ms. Szander:

This letter is a follow-up on our previous conversations regarding the McKesson records Van Waters & Rogers Inc. is retaining as part of the October 31, 1986 acquisition agreement. Pursuant to that agreement, VW&R agreed to retain McKesson records as of the date of the acquisition for ten years.  On November 1, 1996, this agreement will terminate.  On that date, all locations holding these records will be directed to destroy them.  If McKesson would like to obtain possession of the records, please let me know so that appropriate action can be taken.

If you have any questions, please let me know.

Sincerely,

*Paula Harris*

Paula Harris
Records & Information Manager

cc:    William Butler, Sr. Vice President
Joel Summer, Director of Litigation
Alan Bakalian, Corporate Counsel
Ted Leech, Controller

records\mckesson.doc

We are the first choice.
We anticipate and provide the best in customer-valued distribution services.

MCK0057059

# Van Waters & Rogers Inc.
## subsidiary of Univar

P.O. BOX 34325
SEATTLE, WA 98124-1325

6100 CARILLON POINT
KIRKLAND, WASHINGTON 98033
PHONE: (206) 889-3400
FAX: (206) 889-4100

September 9, 1996

**RECEIVED**

SEP 1 6 1996

Vice President
General Counsel

Ivan Meyerson, General Counsel
McKesson Corporation
Law Department
One Post Street, 34th Floor
San Francisco, CA 94104

Re:     **Destruction of McKesson Records**

Dear Mr. Meyerson:

As you are probably aware, the acquisition agreement between Univar/Van Waters & Rogers and McKesson indicated that we would retain McKesson records for ten years from the date of the acquisition or November 1, 1996.   Dinah Szander was our previous contact on this issue and enclosed is my latest correspondence with her.

We are going to direct our branches to destroy McKesson records on November 1 unless you indicate that you want to retake possession of the records. If you want the records, please contact me immediately so that appropriate measures can be taken.  My phone number is (206) 889-3446.

Sincerely,

*Paula R. Harris*

Paula R. Harris
Records & Information Manager

Enclosure

cc:    Bill Butler
       Joel Summer

users\pjshare\records\mckmey1.doc

*We are the first choice.*
*We anticipate and provide the best in customer-valued distribution services.*

MCK0057058

-27-96  14:53 FROM LANDELS RIPLEY & DIAMOND    ID:4155128750    PAGE  1/2



**LANDELS RIPLEY & DIAMOND**
ATTORNEYS LLP

Hills Plaza
350 The Embarcadero
San Francisco, CA
94105-1250
Tel 415 512 8700
Fax 415 512 8750

Time submitted:    3:00 p.m.

To:                Paula Harris
Fax number:        206-889-4136
Office number:

To:                Carole Ungvarsky
Fax number:        415-983-9369
Office number:

From:              Dinah L. Szander, Esq.

Client Number:     2815-0067        SEP 27 P 2:53

Date:              September 27, 1996

Number of pages to follow:    1

Re:

Please call 415 512 8700, X6166 if there is a problem with this transmission.  Thank you.

**CONFIDENTIALITY NOTICE**

The documents accompanying this facsimile transmission contain confidential information belonging to the sender which is legally privileged.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimile information is strictly prohibited.  If you have received this facsimile in error, please immediately notify us by telephone to arrange for the return of the original documents to us.

1 SIDED_____
2 SIDED_____
# OF PAGES_____
SENT BY_____
QC BY_____

MCK0057055

SEP 27-96 14:53 FROM LANDELS RIPLEY & DIAMOND     ID:4155128758                    PAGE   2/2

*(handwritten)* ® Mike Earls
(C μ μ)

## PRIVILEGED JOINT DEFENSE COMMUNICATION

To: Paula Harris (via facsimile 206-889-4136)
From: Dinah Szander
Re: Environmental records of MCC
Date: 9/27/96

      What your message to the field should be is:

          Do you have these types of records (see below)?

          If not, where have they gone?

          If yes, how many do you have?

          If yes, are they mixed in with other records?

          If yes, they are mixed in, how long would it take to separate them out?

      The types of records I am talking about relate to off-site waste disposal or treatment (whether by recycling, incineration, landfill, etc.) of hazardous wastes or substances generated by McKesson Chemical Company ("MCC") facilities, or the sending off-site of drums for reconditioning, including records of the transportation itself or the payment for the disposal, treatment or reconditioning. However, to relate to MCC it must have occurred before November 1, 1986. Examples are waste manifests, contracts for disposal, reports of waste transactions, waste survey forms, or drum reconditioning invoices.

      It will be interesting to hear the answer so as to figure out how to take custody of these environmental records. Thanks very much, Paula.

cc: Carole Ungvarsky (via facsimile 983-9369)

MCK0057056

**Univar**
CORPORATION

RECEIVED

OCT 1 4 1996

P.O. BOX 34325
SEATTLE, WA 98124-1325

6100 CARILLON POINT
KIRKLAND, WASHINGTON 98033
PHONE: (206) 889-3400
FAX: (206) 889-4100

Dinah L. Szander
Landels Ripley & Diamond
350 The Embarcadero, 6th Floor
San Francisco, CA 94105-1250

October 9, 1996

Re: McKesson Chemical Records

Dear Ms. Szander:

Attached is listing of the information we have received back from our branches so far regarding the McKesson Chemical records. We wanted to provide you this information as soon as we had a good sampling so that you will be able to make your decision as to how you wish to proceed.

As mentioned in previous conversations, Van Waters & Rogers made no attempt to inventory these records so they are in essentially the same condition as received from McKesson Corporation ten years ago. As far as our personnel can tell the transactional records are commingled with other McKesson paper and the organization of the records may vary from location to location. Also, during the past 10 years, certain records may have been moved in bulk from one location to another depending on space considerations.

Van Waters & Rogers will be retaining certain McKesson Chemical records currently involved in litigation and you may review those records at any time. Those records currently are housed in Tampa, Phoenix and in Kent, Washington, just south of Seattle. In addition, arrangements can be made for you to visit Oakbrook, Illinois and Los Angeles (Jillson) to review McKesson records found there. The remaining records can be shipped to a location of your choosing, at your expense. We will require McKesson Corporation to sign a release regarding any records it re-acquires including a provision that McKesson Corporation will be entirely responsible for responding to any discovery requests or subpoeans directed toward the records you re-aquire.

Arrangements for either the review or transfer of these records should be made very soon as we plan to begin disposing of those records on November 1.

Value Growth

MCK0057052

Very truly yours,

*Paula R. Harris*

Paula R. Harris
Records & Information Manger

cc: Carole Ungvarsky

MCK0057053

## MCKESSON RECORD SURVEY
## FOR MCKESSON CHEMICAL

| Branch | Volume[1] | Comments |
|---|---|---|
| Altoona | 21 | |
| Anchorage | 3 file drawers | |
| Atlanta | 18 | May have multiple locations. |
| Augusta | 10 | |
| Buffalo | 49 | |
| Chicago Heights | 70-80 | |
| Denver | 30 | |
| Ft. Wayne | 2-4 pallets | |
| Harrisburg PA | 110 | 1 file folder containing information requested. |
| Houston | 50 | Boxes from multiple locations. |
| Jillson | 1500-2000 | Multiple locations. |
| Kent | approx. 258 | Most of these boxes part of litigation involving several states. |
| Layfayette | 12-15 | |
| Oak Brook, Illinois | 1000 | |
| Philadelphia, PA | 148 | |
| Phoenix | approx. 100 | Boxes are part of ongoing litigation. |
| Portland, OR | 12 | Three boxes may have information requested. |
| Spartanburg | 20-25 | |
| St. Louis | 60 | |
| Tampa | 21 | Records requested could be with the BOL/Invoices, may have been filed that way in the past. |

1. Volume in boxes unless otherwise stated.

MCK0057054

OCT-14-88 13:51 FROM:LANDELS RIPLEY & DIAMOND    ID:                              PAGE    1/2

```
┌──────────────┐
│ LANDELS      │          1 SIDED _____          OCT 14 PM 1:54
│ RIPLEY &     │          2 SIDED _____
│ DIAMOND      │          # OF PAGES _____
│ ATTORNEYS    │          SENT BY _____
│ LLP          │          QC BY _____
└──────────────┘
```

Hills Plaza
350 The Embarcadero
San Francisco, CA
94105-1250
Tel 415 512 8700
Fax 415 512 8750

400 Capital Mall
Suite 2140
Sacramento, CA
95814-4407
Tel 916 448 8300
Fax 916 448 4293

Time submitted:

To:                 Carol Ungvarsky, Esq.

Fax number:         (415) 983-9369

Office number:      (415) 983-8300

From:               Dinah L. Szander, Esq.

Client Number:      2815.0067

Date:               October 14, 1996

Number of pages to follow:     1


Re:     Post-Closing Sale of Chemical Company


Please call 415 512 8700, X6166 if there is a problem with this transmission.
Thank you.


CONFIDENTIALITY NOTICE

The documents accompanying this facsimile transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the user of the individual or entity name above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in the reliance on the contents of this facsimile information is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone to arrange for the return of the original documents to us.


MCK0057050

**LANDELS
RIPLEY &
DIAMOND**
ATTORNEYS
LLP

Hills Plaza
350 The Embarcadero
San Francisco, CA
94105-1250
Tel 415 512 8700
Fax 415 512 8750

October 14, 1996

VIA FACSIMILE

Paula R. Harris
Univar Corporation
P.O. Box 34325
Seattle, WA  98124-1325

    Re:  McKesson Chemical Records

Dear Ms. Harris:

    We are concerned about your letter of October 9, 1996.  My conversations and correspondence with Univar have been clear:  McKesson Chemical's environmental records are not to be disposed of before McKesson Corporation can take custody of them.  Step one was to find out where they are and in what quantities.  Step two is to agree on a process for taking custody.  First, though, let me know what you mean by McKesson being "entirely responsible for responding to any discovery requests or subpoenas directed toward the records you reacquire."

    Please give me a call.

                        Sincerely,

                        *Dinah L. Szander*/sjm

                        Dinah L. Szander

DLS:sjm
cc:  Carole Ungvarsky, Esq. (via facsimile)

Our File:  2815.0067

                                                    89308.1

MCK0057051

**RECEIVED**

OCT 2 2 1996

P.O. BOX 34325
SEATTLE, WA 98124-1325

**Univar**
CORPORATION

6100 CARILLON POINT
KIRKLAND, WASHINGTON 98033
PHONE: (206) 889-3400
FAX: (206) 889-4100

October 18, 1996

Carole Ungvarsky, Esq.
McKesson Corporation
Law Department
One Post Street
San Francisco, Ca 94104-5296

Dear Ms. Ungvarsky:

    Pursuant to our telephone conversation of October 17, 1996 I have attached a listing of the locations that have McKesson records that you want shipped to your Union City location. There may be some changes to this list if we hear back from more of our branches. If there are any modifications, I will contact you as soon as possible.

    Finally, I wanted to confirm that OakBrook is available for your inspection of records on either November 4, 5, or 6. Please let me know as soon as possible which of these days the inspection will take place so that we can make preparations.

    If you have any questions, please let me know. My direct phone number is (206) 889-3446.

Very truly yours

*Paula Harris*

Paula Harris
Records & Information Manager
Van Waters & Rogers Inc.

attachment

Value Growth

MCK0057044

ATTACHMENT

Albuquerque
3301 Edmunds SE
Albuquerque, NM 87105

Altoona
Old 6th Ave. RD & Burns Crossing
Duncansville, PA 16635

Anchorage
590 E. 100th
Anchorage, AK 99511

Atlanta
2145 Skyland Court
Norcross, GA 30071

Augusta
1455 Columbia Nitrogen Dr.
Augusta, GA 30901

Buffalo
803 Walden Ave
Buffalo, NY 14211

Chicago Heights
455 Joe Orr RD
Chicago Heights, ILL 60411

Cincinnati
3025 Exon Ave
Cincinnati, OH 45241

Denver
4300 Holly St.
Denver, CO 80216

Ft. Wayne
7603 Nelson Rd.
Fort Wayne, IN 46803

MCK0057045

Glendale
4909 W. Pasadena
Glendale, AZ 85301

Harrisburg
N. Railroad St.
Hummelstown, PA 17036

Houston
777 Brisbane St.
Houston, TX 77061

Jacksonville
2783 W 5th St.
Jacksonville, FL 32205

Kent
8201 S. 212th
Kent, WA 98032

Lafayette
220 Hector Connoly RD.
Carencro, LA 70502

Philadelphia
8335 Enterprise Ave.
Philadelphia, PA 19153

Portland
3950 NW Yeon Ave.
Portland, OR 97210

Spartanburg
2750 Southport Rd.
Spartanburg, SC 29302

St. Louis
8925 Seeger Industrial Dr.
Berkeley, MO 63134

Tampa
6049 Old Highway 41A Hwy.
Tampa, FL 33619

MCK0057046

# Van Waters & Rogers Inc.
## subsidiary of **Univar**

P.O. BOX 34325
SEATTLE, WA 98124-1325

6100 CARILLON POINT
KIRKLAND, WASHINGTON 98033
PHONE: (206) 889-3400
FAX: (206) 889-4100

October 29, 1996

**VIA FACSIMILE:** (415) 512-8750

Ms. Dinah L. Szander
Landels, Ripley & Diamond
Hills Plaza
350 The Embarcadero
San Francisco, CA 94105

Re:    Visit to Oakbrook / McKesson Records
        November 6, 1996

Dear Ms. Szander:

Enclosed are the directions to the Oakbrook location. The records are located both at Oakbrook and at an offsite storage area. Jay Gomez, the Regional Administrative Manager, will direct you to the records. Please let me know when you plan to arrive so that Jay can expect you.

If you have any questions please let me know.

Very truly yours,

*Paula Harris*

Paula R. Harris
Records & Information Manager

Encl.

MCK0057043

NOV-05-96 16:13 FROM:LANDELS RIPLEY & DIAMOND    ID:4155128760    PAGE   1/3



LANDELS
RIPLEY &
DIAMOND
ATTORNEYS
LLP

NOV 5 PM 3:19

Hills Plaza
350 The Embarcadero
San Francisco, CA
94105-1250
Tel 415 512 8700
Fax 415 512 8750

400 Capital Mall
Suite 2140
Sacramento, CA
95814-4407
Tel 916 448 8300
Fax 916 448 4293

Time submitted:

To:                  Carol Ungvarsky, Esq.

Fax number:          (415) 983-9369

Office number:       (415) 983-8300

From:                Dinah L. Szander, Esq.

Client Number:       2815.0067

Date:                November 5, 1996

Number of pages to follow:       2

Re:    Post-Closing Sale of Chemical Company

Please call 415 512 8700, X6166 if there is a problem with this transmission. Thank you.

**CONFIDENTIALITY NOTICE**

The documents accompanying this facsimile transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the user of the individual or entity name above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in the reliance on the contents of this facsimile information is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone to arrange for the return of the original documents to us.

MCK0057040



**LANDELS
RIPLEY &
DIAMOND**
ATTORNEYS
LLP

Hills Plaza
350 The Embarcadero
San Francisco, CA
94105-1250
Tel 415 512 8700
Fax 415 512 8750

Dinah L. Szander
415 512 4741
dls@landels.com

November 5, 1996

<u>VIA FACSIMILE; ORIGINAL BY MAIL</u>

Paula R. Harris
Joel R. Summer, Esq.
Univar Corporation
P.O. Box 34325
Seattle, WA 98124-1325

Re: <u>McKesson Chemical Company ("MCC") Records</u>

Dear Paula and Joel:

Since receiving Paula's letter of October 9, 1996, Carole Ungvarsky and I have
conferred with you to work out a plan for transferring to McKesson Corporation the records
of MCC relating to environmental matters. By way of background, Univar Corporation was
required by contract to retain such records until November 1, 1996. McKesson requested
that Univar extend this contractual time period. Univar declined and said the environmental
records were commingled with the totality of MCC records. Carole and I conferred with
Paula, and decided that step one was to determine the location and quantity of the
"environmental" (as defined by me) records which Univar had retained. Paula surveyed the
field locations, then prepared the summary which was attached to her letter of October 9,
1996.

Step two was to develop a plan of records transfer based on the survey. I believe the
plan which is reflected in this letter is mutually acceptable. Let me know if you have
comments or suggestions.

With the exception of the records currently at Jillson, Univar Corporation will retain
the MCC records until the following is accomplished:

a.    McKesson representatives visit the Oakbrook branch and
      mark the environmental records to be transferred to
      McKesson:

91479.1

MCK0057041



Paula R. Harris
Joel R. Summer, Esq.
November 5, 1996
Page 2

b.    The MCC records in the following branches are shipped to McKesson:

Altoona,  Anchorage, Atlanta, Augusta, Buffalo, Chicago Heights, Denver, Ft. Wayne, Harrisburg, Houston, Lafayette, Philadelphia, Portland, Spartanburg, St. Louis.

c.    In the case of the Kent, Phoenix and Tampa branches, Univar's regular document retention policies are in abeyance due to litigation, and before any destruction occurs, McKesson will be given reasonable notice and opportunity to review and take custody of the environmental records in these locations.

It is the mutual intention of the parties to accomplish this transfer of records in an orderly and reasonably expeditious fashion without unnecessary disruption.  Once it is accomplished, McKesson will respond as it deems fit to discovery requests or subpoenas directed to the records.

Very truly yours,

*Dinah L. Szander/sjm*

DINAH L. SZANDER

DLS:sjm
cc:  Carole Ungvarsky, Esq. (via facsimile)

Our File:  2815.0057

91479.1

MCK0057042

RECEIVED

DEC 2 7 1996

P.O. BOX 34325
SEATTLE, WA 98124-1325

# Van Waters & Rogers Inc.

### subsidiary of Univar

6100 CARILLON POINT
KIRKLAND, WASHINGTON 98033
PHONE: (206) 889-3400
FAX: (206) 889-4100

December 17, 1996

Carole Ungvarsky, Esq.
McKesson Chemical Corporation
Law Department
One Post Street, 34th Floor
San Francisco, CA 94104

**Re:    Van Waters & Rogers Inc./ McKesson Records**

Dear Ms. Ungvarsky:

Enclosed is an updated list of Van Waters & Rogers locations and contacts for retrieval of the McKesson records.

Please let me know if you have any questions.

Very truly yours,

Paula R. Harris
Records & Information Manager

Encl.

cc:    Joel Summer
       Dinah Szander

*We are the first choice.*
*We anticipate and provide the best in customer-valued distribution services.*

MCK0057036

## Van Waters & Rogers Inc.
## Office Locations

| STATE | VW&R LOCATION | OFFICE ADDRESS | CONTACT & PHONE |
|---|---|---|---|
| AK | Anchorage | 590 E. 100th<br>Anchorage, AK 99515 | Jerry Delcamp/Jim Ryan<br>(907) 344-7444 |
| AR | Little Rock | 1925 Redmond Road<br>Jacksonville, AR 7276-0826 | ~~Faye Turner~~ WAYDE PECK<br>(501) 982-4402 |
| AR | Memphis | 1925 Redmond Road<br>Jacksonville, AR 7276-0826 | ~~Faye Turner~~ WAYDE PECK<br>(501) 982-4402 |
| FL | Jacksonville | 2783 W. 5th Street<br>Jacksonville, FL 32205 | Robin Hazel<br>(904) 781-1634 |
| FL | Tampa | 6049 Old 41A Highway<br>Tampa, FL 33619 | Denise Fetterhoff<br>(813) 677-8414 |
| GA | Atlanta | 2145 Skyland Court<br>Norcross, GA 30071 | Steve Neill<br>(770) 246-7700 |
| GA | Augusta | 1455 Columbia Nitrogen Drive<br>Augusta, GA 30901 | Roger Wexler<br>(706) 722-3751 |
| GA | Chattanooga | 2145 Skyland Court<br>Norcross, GA 30071 | Steve Neill<br>(770) 246-7700 |
| IL | Chicago Heights | 455 Joe Orr Road<br>Chicago Heights, IL 60411 | Marc Linos<br>(708) 757-7450 |
| IL | Oakbrook | 600 Hunter Drive, Suite 300<br>Oakbrook, IL 60521 | Jay Gomez<br>(708) 573-4356 |
| IN | Fort Wayne | 7603 Nelson Road<br>Fort Wayne, IN 46803 | John Davis<br>(219) 493-1546 |
| IN | Columbus | 7603 Nelson Road<br>Fort Wayne, IN 46803 | John Davis<br>(219) 493-1546 |
| IN | Louisville | 7603 Nelson Road<br>Fort Wayne, IN 46803 | John Davis<br>(219) 493-1546 |
| LA | Lafayette | 220 Hector Connoly Road<br>Carencro, LA 70520 | Alan Morgan<br>(318) 896-1004 |
| MO | St. Louis | 8925 Seeger Industrial Drive<br>Berkeley, MO 63134 | Paul Winkelmann<br>(314) 522-6400 |
| NC | Greensboro | 3600 W. Wendover Avenue<br>Greensboro, NC 27407 | Lisa Moore<br>(910) 292-0624 |
| NY | Buffalo | 803 Walden Avenue<br>Buffalo, NY 14211 | Cliff Moll/Bob Douglass<br>(contact at Pittsburgh)<br>(412) 923-1100 |
| PA | Altoona | Old 6th Avenue Road & Burns Crossing<br>Duncansville, PA 16635 | Anne Jaronieski<br>(814) 695-7534 |
| PA | Harrisburg | N. Railroad Street<br>Hummelstown, PA 17036 | Judy Struzzi<br>(717) 566-7381 |
| PA | Philadelphia | 8335 Enterprise Avenue<br>Philadelphia, PA 19153 | Dave Larkin<br>(215) 365-7205 |
| PA | Pittsburgh | 6000 Casteel Drive<br>Coraopolis, PA 15108 | Cliff Moll/Bob Douglass<br>(412) 923-1100 |
| WA | Kent | 8201 S. 212th<br>Kent, WA 98032 | Rich Newman<br>(206) 872-5000 |

users\pjshare\mckesson\loclst2.doc

MCK0057037

## Van Waters & Rogers Inc.
### Office Locations

| STATE | VW&R LOCATION | OFFICE ADDRESS | CONTACT & PHONE |
|---|---|---|---|
| AK | Anchorage | 590 E. 100th Anchorage, AK 99515 | Jerry Delcamp/Jim Ryan (907) 344-7444 |
| AR | Little Rock | 1925 Redmond Road Jacksonville, AR 7276-0826 | ~~Faye Turner~~ WAYDE PECK (501) 982-4402 |
| AR | Memphis | 1925 Redmond Road Jacksonville, AR 7276-0826 | ~~Faye Turner~~ WAYDE PECK (501) 982-4402 |
| FL | Jacksonville | 2783 W. 5th Street Jacksonville, FL 32205 | Robin Hazel (904) 781-1634 |
| FL | Tampa | 6049 Old 41A Highway Tampa, FL 33619 | Denise Fetterhoff (813) 677-8414 |
| GA | Atlanta | 2145 Skyland Court Norcross, GA 30071 | Steve Neill (770) 246-7700 |
| GA | Augusta | 1455 Columbia Nitrogen Drive Augusta, GA 30901 | Roger Wexler (706) 722-3751 |
| GA | Chattanooga | 2145 Skyland Court Norcross, GA 30071 | Steve Neill (770) 246-7700 |
| IL | Chicago Heights | 455 Joe Orr Road Chicago Heights, IL 60411 | Marc Linos (708) 757-7450 |
| IL | Oakbrook | 600 Hunter Drive, Suite 300 Oakbrook, IL 60521 | Jay Gomez (708) 573-4356 |
| IN | Fort Wayne | 7603 Nelson Road Fort Wayne, IN 46803 | John Davis (219) 493-1546 |
| IN | Columbus | 7603 Nelson Road Fort Wayne, IN 46803 | John Davis (219) 493-1546 |
| IN | Louisville | 7603 Nelson Road Fort Wayne, IN 46803 | John Davis (219) 493-1546 |
| LA | Lafayette | 220 Hector Connoly Road Carencro, LA 70520 | Alan Morgan (318) 896-1004 |
| MO | St. Louis | 8925 Seeger Industrial Drive Berkeley, MO 63134 | Paul Winkelmann (314) 522-6400 |
| NC | Greensboro | 3600 W. Wendover Avenue Greensboro, NC 27407 | Lisa Moore (910) 292-0624 |
| NY | Buffalo | 803 Walden Avenue Buffalo, NY 14211 | Cliff Moll/Bob Douglass (contact at Pittsburgh) (412) 923-1100 |
| PA | Altoona | Old 6th Avenue Road & Burns Crossing Duncansville, PA 16635 | Anne Jaronieski (814) 695-7534 |
| PA | Harrisburg | N. Railroad Street Hummelstown, PA 17036 | Judy Struzzi (717) 566-7381 |
| PA | Philadelphia | 8335 Enterprise Avenue Philadelphia, PA 19153 | Dave Larkin (215) 365-7205 |
| PA | Pittsburgh | 6000 Casteel Drive Coraopolis, PA 15108 | Cliff Moll/Bob Douglass (412) 923-1100 |
| WA | Kent | 8201 S. 212th Kent, WA 98032 | Rich Newman (206) 872-5000 |

users\pjshare\mckesson\locist2.doc

MCK0057038

## Van Waters & Rogers Inc.
## Office Locations

| STATE | VW&R LOCATION | OFFICE ADDRESS | CONTACT & PHONE |
|---|---|---|---|
| AK | Anchorage | 590 E. 100th<br>Anchorage, AK 99515 | Jerry Delcamp/Jim Ryan<br>(907) 344-7444 |
| AR | Little Rock | 1925 Redmond Road<br>Jacksonville, AR 7276-0826 | Faye Turner WAYDE PECK<br>(501) 982-4402 |
| AR | Memphis | 1925 Redmond Road<br>Jacksonville, AR 7276-0826 | Faye Turner WAYDE PECK<br>(501) 982-4402 |
| FL | Jacksonville | 2783 W. 5th Street<br>Jacksonville, FL 32205 | Robin Hazel<br>(904) 781-1634 |
| FL | Tampa | 6049 Old 41A Highway<br>Tampa, FL 33619 | Denise Fetterhoff<br>(813) 677-8414 |
| GA | Atlanta | 2145 Skyland Court<br>Norcross, GA 30071 | Steve Neill<br>(770) 246-7700 |
| GA | Augusta | 1455 Columbia Nitrogen Drive<br>Augusta, GA 30901 | Roger Wexler<br>(706) 722-3751 |
| GA | Chattanooga | 2145 Skyland Court<br>Norcross, GA 30071 | Steve Neill<br>(770) 246-7700 |
| IL | Chicago Heights | 455 Joe Orr Road<br>Chicago Heights, IL 60411 | Marc Linos<br>(708) 757-7450 |
| IL | Oakbrook | 600 Hunter Drive, Suite 300<br>Oakbrook, IL 60521 | Jay Gomez<br>(708) 573-4356 |
| IN | Fort Wayne | 7603 Nelson Road<br>Fort Wayne, IN 46803 | John Davis<br>(219) 493-1546 |
| IN | Columbus | 7603 Nelson Road<br>Fort Wayne, IN 46803 | John Davis<br>(219) 493-1546 |
| IN | Louisville | 7603 Nelson Road<br>Fort Wayne, IN 46803 | John Davis<br>(219) 493-1546 |
| LA | Lafayette | 220 Hector Connoly Road<br>Carencro, LA 70520 | Alan Morgan<br>(318) 896-1004 |
| MO | St. Louis | 8925 Seeger Industrial Drive<br>Berkeley, MO 63134 | Paul Winkelmann<br>(314) 522-6400 |
| NC | Greensboro | 3600 W. Wendover Avenue<br>Greensboro, NC 27407 | Lisa Moore<br>(910) 292-0624 |
| NY | Buffalo | 803 Walden Avenue<br>Buffalo, NY 14211 | Cliff Moll/Bob Douglass<br>(contact at Pittsburgh)<br>(412) 923-1100 |
| PA | Altoona | Old 6th Avenue Road & Burns Crossing<br>Duncansville, PA 16635 | Anne Jaronieski<br>(814) 695-7534 |
| PA | Harrisburg | N. Railroad Street<br>Hummelstown, PA 17036 | Judy Struzzi<br>(717) 566-7381 |
| PA | Philadelphia | 8335 Enterprise Avenue<br>Philadelphia, PA 19153 | Dave Larkin<br>(215) 365-7205 |
| PA | Pittsburgh | 6000 Casteel Drive<br>Coraopolis, PA 15108 | Cliff Moll/Bob Douglass<br>(412) 923-1100 |
| WA | Kent | 8201 S. 212th<br>Kent, WA 98032 | Rich Newman<br>(206) 872-5000 |

users\pjshare\mckesson\loclist2.doc

MCK0057039



# Van Waters & Rogers Inc.

A ROYAL PAKHOED COMPANY

P.O. Box 34325
Seattle, WA 98124-1325
(425) 889-3446
(425) 889-4136 (fax)

Records & Information Management Department

## FAX COVER SHEET

**DATE:** August 22, 1997

**TO:** Dinah Szander

**COMPANY:** McKesson

**FAX#:** (415) 512-7750

**FROM:**    Paula R. Harris, Records & Information Manager

**PHONE:**    (425) 889-3446

**NUMBER OF PAGES, INCLUDING LEAD SHEET:** 2

515. 0067

MCK0057033

** TOTAL PAGE.02 **

# Van Waters & Rogers Inc.

A ROYAL PAKHOED COMPANY

P.O. Box 34325
Seattle, WA 98124-1325
(425) 889-3446
(425) 889-4136 (FAX)

**Records & Information Department**

August 22, 1997

VIA FACSIMILE: (415) 512-8750

Ms. Dinah L. Szander
Landels, Ripley & Diamond
Hills Plaza
350 The Embarcadero
San Francisco, CA 94105

Re:    McKesson Records at Kansas City and Nashville

Dear Ms. Szander:

We have recently located two additional locations with McKesson records:

Nashville
912 Dashiel St.
Murfreesboro, TN 37129
(615) 893-1449
Contact: Sandra Tener

Kansas City
2200 Guinotte Ave.
Kansas City, MO 64120-1537
Contact: Judy Jensen

The Nashville location has approximately 33 boxes and I am not sure about the actual number in Kansas City.   Please feel free to contact the individuals listed above to make arrangements for the transfer of records to McKesson.

Thank you for your cooperation.

Sincerely,

Paula R. Harris, CRM
Records & Information Manager

MCK0057034

RECEIVED

MAR 0 6 1997

 **Van Waters & Rogers Inc.**

A ROYAL PAKHOED COMPANY

P.O. Box 34325
Seattle, WA 98124-1325
(206) 889-3446
(206)889-4136

March 3, 1997

Carol Ungvarsky
McKesson Corporation
Law Department
One Post Street, 34th Floor
San Francisco, CA 94104-5296

Re: McKesson Records at Van Waters & Rogers

Dear Ms.Ungvarsky:

    I have tried unsuccessfully to reach you by telephone over the past several weeks regarding the retrieval of McKesson records from Van Waters & Rogers Inc. facilities. Some of the branches have inquired as to when their records will be picked up. Please let me know the status of this effort and if you require any more assistance from me.

    Thank you for your cooperation.

Sincerely,

Paula R. Harris, CRM
Records & Information Manager
Van Waters & Rogers Inc.

cc: Joel Summer

MCK0057035

# EXHIBIT
# NN



Univar USA Inc.
300 108th Avenue NE
Suite 2200
Bellevue, WA 98004

Direct Dial: (425) 638-4918
Direct Fax (425) 638-4953
Email: regina.larocca@univarusa.com

Regina K. LaRocca
Manager, Litigation & Claims

July 30, 2003

Mr. Jeffrey L. Caufield
Trutanich Michel
407 N. Harbor Blvd.
San Pedro, CA 90731

RE:    Angeles Chemical Co. vs McKesson Corp.

Dear Mr. Caufield:

We are in receipt of the three subpoenas served upon Univar USA Inc., Univar North America, and Univar Products Corp. in the above captioned matter. Responses for all three entities ("Univar") are identical, and are noted below.

Univar does not have any documents requested in items #1 through #5 of Exhibit A to the subpoenas. All documents related to the 9005 Sorenson Avenue site were returned to the McKesson Corp. law department in San Francisco in the several months following the acquisition of McKesson Chemical division by Van Waters & Rogers Inc. (now known as Univar USA Inc.). The Sorenson Avenue site was not part of the sale of assets to Van Waters, and was retained by McKesson Corp.

We object to Request #6 on the grounds that it is overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. We further object on the grounds that it is not limited in time frame, nor is it limited in scope.

In response to item #7, we attach the Asset Purchase and Sale Agreement between McKesson Corp. and DSW, Inc. dated 11/1/86, which sold certain assets of McKesson Chemical Company to DSW, Inc. The name of the corporation called DSW, Inc. was changed on 11/1/86 to Van Waters & Rogers Inc., and that corporation is now known as Univar USA Inc.

Sincerely,
Univar USA Inc.

Regina K. LaRocca
Manager, Litigation & Claims

Enclosure

## ASSET PURCHASE AND SALE AGREEMENT

THIS ASSET PURCHASE AND SALE AGREEMENT (the "Agreement") is dated as of September 19, 1986, between PAKHOED HOLDING NV, a Netherlands corporation ("Guarantor"), PAKHOED INVESTERINGEN BV, a Netherlands corporation ("Parent") (which is a direct wholly-owned subsidiary of Guarantor), DSW, Inc., a Washington corporation ("Buyer") (which is a direct wholly-owned subsidiary of Parent and an indirect wholly-owned subsidiary of Guarantor), and McKESSON CORPORATION, a Maryland corporation ("Seller").

### R E C I T A L S :

A.   McKesson Chemical Company ("MCC"), an unincorporated operating division of Seller, is engaged in the business of distributing industrial chemicals in the United States.

B.   The parties desire that Buyer purchase from Seller, and Seller sell to Buyer, on the terms and subject to the conditions of this Agreement, all of the assets of or related to MCC (except Excluded Assets as hereinafter defined), and that Buyer assume and indemnify Seller against specified obligations of or related to MCC.

C.   Until the consummation of this Agreement, Guarantor, Parent and Buyer will be jointly and severally responsible for Buyer's obligations hereunder, and thereafter Guarantor's and Parent's responsibilities will be set forth in and limited by the terms of the Indemnity and



(g)  All other previously undelivered items required to be delivered by Buyer to Seller at or prior to Closing pursuant to this Agreement.


ARTICLE 12

POST-CLOSING OBLIGATIONS

12.1 Cooperation in Litigation and Other Proceedings. From and after the Closing, Buyer and Seller shall cooperate with each other and their respective counsel, experts, accountants, insurers, suppliers and other representatives in connection with Buyer's or Seller's defense or prosecution of claims, litigation, arbitrations or other proceedings pertaining to MCC by, among other things, (a) promptly allowing such access to employees, files, books and records of MCC which after the Closing are in the custody or control of Buyer or Seller, as the case may be, as the other party reasonably requires in order to comply with its obligations under the law and to defend litigation and claims pertaining to MCC which have been assumed by Buyer or retained by Seller pursuant to the terms hereof; and (b) promptly making such employees personally available, and files, books and records available to Buyer or Seller, as the case may be, without the necessity of a subpoena, at and in preparation for trial, hearing, arbitrations and the like; provided, that such employees, files, books and records shall be made available during normal business hours and for such periods of time as do not unreasonably interfere with the conduct of the business of Seller or



Buyer.  Buyer's and Seller's obligations to cooperate as aforesaid shall be effected without any charge to the other party hereto, except as provided in subsection 3(g) of the Indemnity Agreement.  The parties each acknowledge that breach of its obligations hereunder may cause irreparable loss to the other party and that damages may be impossible to ascertain and hereby consents to the granting of equitable relief by way of temporary, preliminary and permanent injunctive relief, by a court of competent jurisdiction, to prohibit such breach and compel performance of such obligation.

   12.2 <u>Retention of Books and Records</u>.  Buyer shall retain, and make available to Seller within fifteen (15) days of Seller's request, in readily identifiable and obtainable form, the files, books and records of MCC relating to financial, tax, accounting, litigation, claims and environmental matters for a period of ten (10) years after the Closing (and for such longer period as any Claim or document request with respect thereto shall be pending or threatened and not resolved), and shall retain and make available to Seller within fifteen (15) days of Seller's request for reasonable business purposes all other books and records of MCC for a period of five (5) years after the Closing, and shall notify Seller in writing at least ninety (90) days prior to the destruction of any such books and records at the end of such ten and five year periods, respectively.

65

12.3  <u>Transition Arrangement with McKesson Envirosystems Company</u>.  Seller and Buyer agree after the execution of this Agreement and prior to Closing to assess the relationship between MCC and McKesson Envirosystems Company ("MEC") to determine whether, and the extent to which, such relationship should be continued by mutual agreement.  Buyer shall have no obligation to Seller or MEC to continue such relationship.  Until such determination can be made, and subject to the final sentence of this Section 12.3, Buyer will act, and Seller will cause MEC to act, so as to avoid any breach of any third party contractual arrangements to which MCC and MEC are parties (it being recognized that the contractual arrangements to which MCC is a party identified in EXHIBIT 12.3 of the Disclosure Schedule are among the Assumed Liabilities for which Buyer has assumed responsibility under this Agreement).  Seller will not permit MCC to enter into any new contractual arrangements or extensions of existing contractual arrangements subsequent to the execution of this Agreement that are not cancellable on thirty (30) days notice without penalty.  Nothing contained in this Section 12.3 shall obligate either Seller, Buyer or MEC to take any action that would breach any contract or violate any statute, regulation or permit.

12.4  <u>Removal of Buyer's Property and Excluded Assets from Retained Sites</u>.  Buyer will use its best efforts within thirty (30) days after the Closing to, and in any event within ninety (90) days after the Closing will, remove from the Retained Sites inventory, portable tanks and other

66

containers.  Buyer will also within thirty (30) days after the Closing specifically identify to Seller, and thereafter within ninety (90) days after the Closing remove from the Retained Sites other tangible personal property included within the Purchased Assets having a book value of not to exceed $500,000, including, without limitation, tractors, trailers, light and heavy trucks, and forklifts, and any Purchased Assets not so removed shall thereupon become Excluded Assets.  Buyer will not be liable for any Claims related solely to its storage of inventory on (as opposed to its removal from) the Retained Sites.  Buyer assumes the risk of loss of any such inventory.

## ARTICLE 13

### RISK OF LOSS

13.1 <u>Risk of Loss</u>.  The parties to this Agreement recognize that until the Closing, the business of MCC will be operated by Seller for its own account and risk, and any diminution in the amount of MCC's net book equity between the date of this Agreement and the Closing Date as a result of losses from operations in the ordinary course of business or from other causes (other than from Buyer's or Guarantor's breach of this Agreement or the Confidentiality Agreements) will result in a downward adjustment in the purchase price as contemplated in Section 2.1(a), except as provided in Section 13.2.

13.2 <u>Effect of Loss on Obligation to Close</u>.  No loss incurred by MCC, whether as a result of operations in the

67



# EXHIBIT OO

McKesson Corporation
c/o Mr. Eric Lindquist
One Post Street
San Francisco, CA 94104

<u>CONFIDENTIALITY AGREEMENT</u>

Dear Mr. Lindquist:

In connection with our possible interest in a transaction
involving McKesson Corporation ("McKesson"), you are furnishing
us with certain information relating to various operations,
properties, personnel, and other matters which is either
non-public, confidential or proprietary in nature.  This informa-
tion furnished to us, together with analyses, compilations,
studies or other documents prepared by us, our agents, represen-
tatives (including attorneys, accountants and financial advisors)
or employees which contain or otherwise reflect such information
or our review of, or interest in this transaction, is hereinafter
referred to as the "Information."  In consideration of McKesson
furnishing us with the Information, we agree that:

        1.    The Information will be kept confidential and shall
not, without the prior written consent of McKesson, be disclosed
by us, or by our agents, representatives or employees, in any
manner whatsoever, in whole or in part, and shall not be used by
us, our agents, representatives or employees, other than in
connection with the transaction described above.  Moreover, we
agree to reveal the Information only to our agents, representa-
tives and employees who need to know the Information for the
purpose of evaluating the transaction described above, who are
informed by us of the confidential nature of the Information and
who shall agree to be bound by the terms and conditions of this
Agreement.  We shall be fully responsible for any breach of this
Agreement by our agents, representatives or employees.

        2.    Without McKesson's prior written consent, we and our
agents, representatives and employees will not disclose to any
person the fact that the Information has been made available,
that discussions or negotiations are taking place concerning a
possible transaction involving us and McKesson or any of the
terms, conditions or other facts with respect to any such
possible transaction, including the status thereof.

        3.    We shall keep a record of the Information furnished to
us and of the location of such Information.  The Information,
except for that portion of the Information which consists of
analyses, compilations, studies or other documents prepared by

MCK0059246

us, or our agents, representatives or employees will be returned to McKesson immediately upon McKesson's request. That portion of the Information which consists of analyses, compilations, studies or other documents prepared by us or our agents, representatives or employees will either be returned to McKesson, or destroyed.

4.    This Agreement shall be inoperative as to such portions of the Information which (i) are or become generally available to the public other than as a result of disclosure by us or our agents, representatives or employees; or (ii) become available to us on a nonconfidential basis from a source (other than McKesson), which is entitled to disclose it.

5.    No inspections of premises or discussions with operations management or personnel shall be conducted without the prior written consent of McKesson.

6.    In the event that we or anyone to whom we transmit the Information pursuant to this Agreement becomes legally compelled to disclose any of the Information, we will provide McKesson with prompt notice so that McKesson may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. In the event that such protective order or other remedy is not obtained, or that McKesson waives compliance with the provisions of this Agreement, we will furnish only that portion of the Information which we are advised by written opinion of counsel is legally required and will exercise our best efforts to obtain ~~a protective order or other reliable~~ *that* assurance that confidential treatment will be accorded the Information.

7. THE OBLIGATIONS UNDER THIS AGREEMENT SHALL SURVIVE FOR A PERIOD OF FIVE (5) YEARS FROM THE DATE OF EXECUTION.

Very truly yours,

PARK HOED DEVELOPMENT INC.
Name of Company

By _____

PRESIDENT
Title

February 27, 1986

MCK0059247

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement is entered into this 3/<sup>st</sup> day of ____October____, 1986, between and among McKesson Corporation, a Maryland corporation ("McKesson"), party of the first part, Pakhoed Holding NV, a Netherlands corporation ("Pakhoed"), Pakhoed Investeringen BV, a Netherlands corporation ("Pakhoed BV"), Paktank International BV, a Netherlands corporation ("Paktank"), Pakhoed USA, Inc., a Delaware corporation ("Pakhoed USA"), Pakhoed Corporation, a Delaware corporation ("Pakhoed Corporation"), DSW, Inc., a Washington corporation ("DSW"), and Univar Corporation, a Delaware corporation ("Univar") (collectively, "parties of the second part"). Pakhoed, Pakhoed BV, Paktank, Pakhoed USA and Pakhoed Corporation are sometimes collectively referred to herein as "Pakhoed Affiliated Corporations".

### R E C I T A L S:

A.    McKesson, Pakhoed, Pakhoed BV, and DSW have entered into, and on the date hereof, are consummating an Asset Purchase and Sale Agreement (the "Sale Agreement"), pursuant to which McKesson is selling and transferring to DSW substantially all of the assets of the McKesson Chemical Company ("MCC").

B.    Univar has on the date hereof acquired all of the issued and outstanding capital stock of DSW and, pursuant to the Sale Agreement, has assumed jointly and severally with DSW all of DSW's obligations to McKesson thereunder.

MCK0059525

EXHIBIT 8.1(C)
CONFIDENTIALITY AGREEMENT
Page Two

C.    Prior to the date hereof (i) Pakhoed and McKesson
entered into a confidentiality agreement dated February 27, 1986;
and (ii) McKesson and Univar and certain Authorized Univar Repre-
sentatives entered into a confidentiality agreement dated August
22, 1986; and (iii) Univar and McKesson and certain Authorized
McKesson Representatives entered into a confidentiality agreement
dated September 16, 1986 (all of the foregoing agreements
referred to herein as the "Old Confidentiality Agreements").

D.    Pursuant to the Old Confidentiality Agreements, certain
non-public, proprietary and/or confidential information belonging
to McKesson (the "McKesson Information") or belonging to Univar
(the "Univar Information") was made available to other parties.
The Univar Information shall be deemed to include information
relating to the Assumed Liabilities and other confidential and
proprietary information relating to the business of MCC being
acquired by DSW pursuant to the Sale Agreement.

E.    On the date hereof the Old Confidentiality Agreements
will terminate and the party of the first part and the parties of
the second part desire to enter into a new confidentiality
agreement to protect the confidentiality of the McKesson
Information and the Univar Information.

NOW, THEREFORE, in consideration of the foregoing, the
parties hereto agree as follows:

MCK0059526

EXHIBIT 8.1(C)
CONFIDENTIALITY AGREEMENT
Page Three

1.    The McKesson Information and the Univar Information is confidential.

2.    The party of the first part will use its best efforts to protect and preserve the confidentiality of the Univar Information and the parties of the second part will use their best efforts to protect and preserve the confidentiality of the McKesson Information.  Each party will instruct any officer, director, employee or agent who has or receives such information to treat it as confidential.

3.    The party of the first part will not disclose, divulge, communicate or reveal the Univar Information, and the parties of the second part will not disclose, divulge, communicate or reveal the McKesson Information, to any third party unless (i) it is required by legal process to do so; (ii) it is engaged in a proceeding contemplated by the terms of the Indemnity and Guaranty Agreement, of even date herewith, and it is necessary to disclose such McKesson Information or Univar Information in order to resolve the dispute; or (iii) it is pursuant to the prior written consent of either McKesson or Univar, as the case may be.

4.    The obligations agreed to herein shall also bind any subsidiary, assignee, transferee, successor or Affiliate (as defined in the Sale Agreement) of each party hereto.

MCK0059527

EXHIBIT 8.1(C)
CONFIDENTIALITY AGREEMENT
Page Four

5.    Each party will remain bound by the provisions of this Confidentiality Agreement for a period of ten (10) years from the date of its execution.

6.    In the event of a breach or threatened breach of this Agreement, or any provision hereof, the non-breaching party will suffer irreparable injury to its business, and damages would be impossible to fully ascertain.  The parties therefor agree that upon any threatened, attempted ot actual breach of this Agreement, the non-breaching party shall be entitled to injunctive relief, together with such other legal remedies as may be available (including reasonable attorneys' fees and costs of suit).

7.    This Agreement shall be inoperative as to such portions of the McKesson Information or Univar Information which (i) are or become generally available to the public other than as a result of an unauthorized disclosure by a party to this Agreement or its agents, representatives, or employees; or (ii) becomes

///
///
///
///
///

MCK0059528

EXHIBIT 8.1(C)
CONFIDENTIALITY AGREEMENT
Page Five


available to a party to this Agreement from a source (other than

a party to this Agreement or any of its affiliates, officers,

directors, employees or agents) which is entitled to disclose it.

McKESSON CORPORATION

By _____

PAKHOED HOLDING NV

By _____

PAKHOED INVESTERINGEN BV

By _____

PAKTANK INTERNATIONAL BV

By _____

PAKHOED USA, INC.

By _____

PAKHOED CORPORATION

By _____

DSW, INC.

By _____

UNIVAR CORPORATION

By _____
          Pres.

MCK0059529

# EXHIBIT PP

McKesson Corp. Law Department
One Post Street, San Francisco CA 94104 Tel 415 983 8319

Ivan D. Meyerson Associate General Counsel

**McKesson**

September 9, 1986

<u>HAND DELIVERED</u>

# CONFIDENTIAL

<u>CONFIDENTIAL</u>

Nicholas C. Unkovic, Esq.
Graham & James
One Maritime Plaza
Third Floor
San Francisco, CA 9411

Re:  <u>Further Due Diligence Response</u>

Dear Mr. Unkovic:

In connection with certain inquiries contained in Mr. Thompson's
letter of September 2, 1986, and various miscellaneous requests
of Mr. Hooper, we enclose (or have today forwarded under separate
cover) the following documents:

    1.  <u>Permits</u>.  We have had delivered to your offices this
morning three (3) boxes containing permits for the MCC
locations.  The boxes are divided by location as follows:  (i)
Albuquerque to Louisville; (ii) Los Angeles to Riverside; and
(iii) San Antonio to Woodbridge.  I hope the contents of the
boxes are sufficient to answer the questions contained in Item I
(pages 1-3) of Mr. Thompson's September 2. letter.  In addition,
I believe we have previously sent to you information concerning
the Dallas landlord matter to which Mr. Thompson referred.  Let
me know if you have any further questions on that matter.

    2.  <u>Underground Storage Tanks</u>.

        (a)  My records indicate that material sent to you
earlier reflected risk ratings for tanks at Dallas/Fort Worth and
Harlingen at 55 and 69, respectively.  I will inquire as to
ratings, if any, for any tanks which may have been located at
either Buffalo or Charlotte.

MCK0065260

Nicholas C. Unkovic, Esq.
September 9, 1986
Page Two

    (b)  Our August 30, 1986 response provided information with respect to alleged leaks at the Corpus Christi, Grand Junction, Houston, Jacksonville, and Mobile locations.  I assume those, and the other locations specified in Mr. Thompson's letter, were the subject of questions during Mr. Hooper's interviews of the regional personnel.  I have no knowledge of any contamination, analyses or reports to government agencies.

    3.    <u>Contamination Issues.</u>

    (a)  Spartanburg - (see below).

    (b)  Pittsburg - except as appears below or is specified in the following sentence, information has already been provided with respect to this matter to the extent it is available.  One privileged, brief memorandum was not produced; however, the facts contained in the memorandum were summarized and produced in abstract form.  I assume this matter was also discussed in Mr. Hooper's interviews.  We are not aware of any regulatory correspondence relating to this matter.

    4.    <u>Above-Ground Customer Site Tanks.</u>  See below.

    5.    <u>Site Age and Prior Ownership.</u>  We refer you to the 1985 environmental questionnaires for details as to when McKesson first occupied the eight sites listed in Mr. Thompson's letter. Details as to prior use may also be contained in those questionnaires.  In addition, I have asked our Corporate Real Estate Department to see what other information, if any, may be readily available.  We will attempt to provide some further response on this issue.

    6.    We enclose a copy of an October 8, 1985 letter from the Connecticut Department of Environmental Protection to Don Black relating to the closure of the storage facility at the North Haven location.

    7.    I am advised that the Vernal, Utah site is <u>not</u> an active site.

    8.    <u>Miscellaneous Requests.</u>

    (a)  Copies of pertinent correspondence (including a September 5, 1986 memo from Hickman to Meyerson) and contracts relating to the Ray-O-Vac matter.  In that regard, we learned yesterday that Ray-O-Vac now plans to remove all of the McKesson underground tanks next week.

MCK0065261

Nicholas C. Unkovic, Esq.
September 9, 1986
Page Three

     (b)  Copies of government inspection reports for the
Jacksonville, Wichita and St. Louis Service Centers.

     (c)  Copies of letters to McKesson dated August 27 and
29, from Kin Properties, Inc. (the Sandelman entity).

     (d)  Eastern Region:  (i) copy of December 18, 1985
3-page report from Air Quality Services, Inc. to Robert Douglas
at McKesson relating to analysis of a sample taken from the
Pittsburg facility; (ii) copies of the following relating to the
Spartanburg matter:  (x) January and August, 1986 draft
administrative consent orders; (y) May 29, 1986 letter, together
with June/July analyses from Enwright Associates/Laboratories,
and June 24 letter from Geraghty & Miller, Inc.; (iii) August 20,
1986 letter from Black to Rhodes; and (iv) February 1986
inventory listing of McKesson owned above-ground tanks located at
customer facilities.

     (e)  Central Region:  39-page package prepared by
regional personnel for use during last week's interview with Mr.
Hooper.  This material addresses the following items contained in
Mr. Hooper's list of questions:  2, 3, 4, 5, 6, 7, 8, 9 and 11.
It also contains a list of above-ground tanks at customer
facilities (Item 4A, dated August 27, 1986), and facility layouts
for each location.

     (f)  Western Region:  42-page package prepared by
regional personnel for use during last week's interview with Mr.
Hooper.  This material addresses the following items contained in
Mr. Hooper's list of questions:  disposal activities - pits;
major spills - leaks; off-site disposal; RCRA status; repack
activities; tank farms; other major permits; underground storage
tanks; evidence of contamination; previous uses of the site;
water wells; visible pollution impacts; planned environmental
upgrades; and future improvements to be evaluated.  It also
contains information (previously supplied, I believe) relating to
the May, 1986 spill at Albuquerque, and a list of above ground
tanks at customer facilities.

     (g)  Copy of the 1981 contract between Rand
Informationi Systems, Inc. and Foremost-McKesson Chemical Group.
We direct your attention to pages 15 (paragraph L) and 16
(paragraph N).

MCK0065262

Nicholas C. Unkovic, Esq.
September 9, 1986
Page Four


We consider the enclosed (or previously forwarded) documents to
contain sensitive, confidential information that is subject to
the confidentiality agreement signed by Pakhoed. You are asked
not to make or permit the making of any copies of these
documents, and otherwise to handle them in complete accordance
with the confidentiality agreement dated February 27, 1986,
between McKesson and Pakhoed by which you are bound as an agent
or representative of Pakhoed. Please indicate your agreement to
the foregoing, as well as your receipt of the enclosed and
forwarded material, by signing and returning the enclosed copy of
this letter.

Finally, we still have yet to receive an executed copy of our
lengthy August 30, 1986 letter to Mr. Hooper. I would appreciate
it if you would again ask him to sign and immediately return that
copy to us.

Thank you very much for your cooperation. Do not hesitate to
contact me if you have any further questions concerning any of
the enclosed matters.


Very truly yours,



Ivan D. Meyerson

IDM/smc

Encl.

cc: Eric Lindquist (no enclosure)


Agreed to and Accepted:


GRAHAM & JAMES


By

MCK0065263