# Exhibit 1

FILED
CLERK, U.S. DISTRICT COURT

DEC 15 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                                  DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GREVE FINANCIAL SERVICES, INC., )
ANGELES CHEMICAL COMPANY, INC., )
and JOHN LOCKE,                  )
                                 )    Civil No. CV 01-10532-TJH (Mcx)
              Plaintiffs,         )
                                 )    ORDER RE: PLAINTIFF'S MOTION
         v.                      )    TO COMPEL PRODUCTION OF
                                 )    DOCUMENTS
McKESSON CORPORATION, et al.,     )
                                 )
              Defendant.          )
                                 )
_____)

On the court's own motion, the court dispenses with oral argument
with respect to the motion of plaintiffs Greve Financial Services,
Inc., Angeles Chemical Company, Inc., Janyce Locke, and John Locke
(collectively "Angeles") to compel production of relevant documents
from the underlying litigation, previously noticed for hearing on
December 20, 2005 and later continued to January 4, 2006. Local Rule
7.15. The court takes the motion under submission and decides it
forthwith.

Plaintiff Angeles Chemical Company, Inc. is or was a chemical
company which operated a chemical distribution facility on certain

1  real property in Santa Fe Springs from 1976 to 2000.  Defendant

2  McKesson Corporation operated a chemical repackaging facility at an

3  immediately adjacent piece of real property ("the SFS real property")

4  from 1976 through 1986.  Angeles alleges in this action that

5  McKesson's activities caused the contamination of Angeles' real

6  property.  Among other things, Angeles alleges that McKesson

7  discharged hazardous chemicals and waste into a ditch adjacent to

8  McKesson's property which resulted in the contamination of the Angeles

9  property.  McKesson contends in a counterclaim that Angeles

10  contaminated McKesson's site by pouring, spilling or releasing

11  solvents resulting in the contamination of the McKesson site,

12  groundwater beneath the McKesson site and the regional aquifer.

13      In 1989 and again in 1993, McKesson sued certain of its insurance

14  carriers to recover costs incurred to investigate and remediate

15  environmental contamination caused by McKesson and its employees in

16  various sites, including the McKesson SFS site.  Eventually, McKesson

17  settled those lawsuits with its insurers.

18      The motion of plaintiff Angeles to compel production of documents

19  is granted.

20      McKesson has a history of poor cooperation and candor in the

21  discovery process in this action.  McKesson was under an obligation to

22  produce to Angeles documents relevant to the claims of Angeles in this

23  law suit.  McKesson initially produced thirteen boxes of documents, a

24  very small document production when considering that the requested

25  documents pertained to the operations of a chemical company at a large

26  facility which had been in operation for many years.  For at least a

27  year, McKesson and its counsel adamantly asserted that no documents

28  other than those in the thirteen boxes were available.  In May of

2

1  2004, McKesson and its counsel suddenly "found" an additional 179

2  boxes of documents pertaining to McKesson's earlier litigation with

3  its insurers concerning the SFS site.  McKesson has now produced the

4  contents of 105 of these 179 boxes of documents.

5      Jeffery Caufield, counsel for Angeles, has filed a declaration in

6  support of this motion stating that (apparently after McKesson "found"

7  the 179 boxes of documents from the earlier litigation):

8          "McKesson had initially produced approximately 34 of

9      the 101 deposition transcripts from the Underlying

10     Litigation.  Of the 34 deposition transcripts produced,

11     McKesson heavily redacted the majority of the deposition

12     transcripts based upon alleged "relevancy."  Fortunately,

13     Angeles was able to locate a single court reporter that

14     still had one of the redacted deposition transcripts in

15     electronic format and discover that McKesson had redacted

16     direct questioning regarding the McKesson Santa Fe Springs

17     Site under their theory of "relevancy."  In other words,

18     McKesson got caught red handed redacting highly relevant

19     information regarding SFS on a number of occasions."

20  Joint Stipulation, filed December 5, 2005, Declaration of Jeffery L.

21  Caufield Re Joint Stipulation, etc., p. 3, lines 1-9.

22     Defendant McKesson has not filed any evidence controverting Mr.

23  Caufield's allegations with respect to McKesson's actions redacting

24  the contents of the transcripts.  Accordingly, the court accepts these

25  allegations as true for the purposes of this motion.

26     In opposing the present motion, McKesson claims through its

27  counsel that it has already produced all documents relevant to the

28  present action.  McKesson claims that the remaining documents in the

3

1   179 boxes are privileged or pertain to issues like insurance coverage

2   which are not relevant to a claim or defense of any party and not

3   relevant to the subject matter of this action.

4       The credibility of McKesson and its counsel in this action is

5   frayed and spent.  McKesson and its counsel claimed that it had

6   produced all available documents for at least a year before it

7   suddenly "found" 179 boxes of documents.  McKesson and its counsel

8   redacted portions of deposition transcripts pertaining to the McKesson

9   SFS site claiming that this testimony was not relevant.  Given this

10  history, the court cannot accept the unilateral representations of

11  McKesson and its counsel that documents from the 179 boxes withheld

12  from production are not relevant.  The court cannot and will not allow

13  the discovery process to become a shell game in which a party and its

14  counsel repetitively hide available evidence.

15      Defendant McKesson Corporation is ordered on or before January 6,

16  2006 to produce the entire contents of the 179 boxes at issue in this

17  motion, withholding only documents as to which McKesson asserts a

18  claim of privilege supported by a privilege log.  McKesson's

19  production shall include all documents previously produced unless

20  plaintiff Angeles, in its sole discretion, makes a determination that

21  McKesson need not produce certain documents which have already been

22  produced.

23      The motion of plaintiff Angeles for discovery sanctions is

24  denied.  Although the conduct of defendant McKesson and its counsel

25  may well deserve sanctions, the declaration of plaintiff Angeles

26  concerning the time expended preparing and presenting this motion is

27  \\\

28  \\\

4

1   so vague and general that it is impossible for the court to determine

2   how much attorney time was expended which is directly attributable to

3   this motion.

4        IT IS SO ORDERED.

5

6   Dated:   December 15, 2005

7

8   _____
    JAMES W. McMAHON
    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Chambers of Magistrate Judge McMahon
Telephone  (213) 894-3598
Fax:  (213) 894-4402

**TO:**   Kenneth E. James/ Lead Attorney      **Date:**    December 15, 2005
Canfield and James
FAX No: (619) 325-0231

John D. Edgcomb/ Lead Attorney
John D. Edgcomb Law Offices
FAX No: (415) 399-1885

**Pages:**    6 pages including this cover sheet.

**Subject:**   Greve Financial v. McKesson
CV 01-10532-TJH (Mcx)

**COMMENTS:** ORDER RE: PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

**PLEASE NOTE:** DOCUMENTS ARE <u>NOT</u> TO BE FAXED TO CHAMBERS WITHOUT PRIOR AUTHORIZATION. UNAUTHORIZED DOCUMENTS WILL BE REJECTED. FOR ALL QUESTIONS, PLEASE CONTACT ARACELI FLORES AT (213) 894-6500. <u>DO NOT</u> CALL CHAMBERS DIRECTLY.

# Exhibit 2

**Univar USA Inc.**
500 108th Avenue NE
Suite 2200
Bellevue, WA  98004

Direct Dial:  (425) 638-4918
Direct Fax  (425) 638-4953
Email:  regina.larocca@univarusa.com

UNIVAR

Regina K. LaRocca
Manager, Litigation & Claims

July 30, 2003

Mr. Jeffrey L. Caufield
Trutanich Michel
407 N. Harbor Blvd.
San Pedro, CA  90731

RE:    Angeles Chemical Co. vs McKesson Corp.

Dear Mr. Caufield:

We are in receipt of the three subpoenas served upon Univar USA Inc., Univar North America, and Univar Products Corp. in the above captioned matter.  Responses for all three entities ("Univar") are identical, and are noted below.

Univar does not have any documents requested in items #1 through #5 of Exhibit A to the subpoenas.  All documents related to the 9005 Sorenson Avenue site were returned to the McKesson Corp. law department in San Francisco in the several months following the acquisition of McKesson Chemical division by Van Waters & Rogers Inc. (now known as Univar USA Inc.).  The Sorenson Avenue site was not part of the sale of assets to Van Waters, and was retained by McKesson Corp.

We object to Request #6 on the grounds that it is overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  We further object on the grounds that it is not limited in time frame, nor is it limited in scope.

In response to item #7, we attach the Asset Purchase and Sale Agreement between McKesson Corp. and DSW, Inc. dated 11/1/86, which sold certain assets of McKesson Chemical Company to DSW, Inc.  The name of the corporation called DSW, Inc. was changed on 11/1/86 to Van Waters & Rogers Inc., and that corporation is now known as Univar USA Inc.

Sincerely,
Univar USA Inc.

Regina K. LaRocca
Manager, Litigation & Claims

Enclosure



TABLE OF
CONTENTS

## INDEX TO PRIMARY CLOSING DOCUMENTS

SALE OF THE ASSETS OF
MCKESSON CHEMICAL COMPANY ("MCC")

BY MCKESSON CORPORATION ("SELLER")

TO DSW, INC. ("BUYER"),
A SUBSIDIARY OF PAKHOED INVESTERINGEN, BV
("PARENT"),
A SUBSIDIARY OF PAKHOED HOLDING NV ("GUARANTOR")

NOVEMBER 1, 1986.

|  |  | Tab Number |
|---|---|---|
| I. | FULL INDEX TO ALL CLOSING DOCUMENTS | 1 |
| II. | ACTIONS TAKEN PRIOR TO EXECUTION OF ASSET PURCHASE AND SALE AGREEMENT. |  |
| A. | Confidentiality Agreement, dated February 27, 1986, between Seller and Pakhoed Development, Inc. | 2 |
| B. | Confidentiality Agreement, dated August 22, 1986, between and among Seller, Univar Corporation ("Univar"), Shidler McBroom Gates & Lucas, and Arthur Andersen & Co. | 3 |
| C. | Resolution of Seller's Board of Directors dated September 3, 1986, authorizing the execution and delivery of the Asset Purchase and Sale Agreement (the "Agreement") and the completion of the transactions contemplated thereby. | 4 |
| D. | Confidentiality Agreement, dated September 13, 1986, between Seller, Univar Corporation and Marsh McLennan, Inc. | 5 |
| E. | Confidentiality Agreement dated September 16, 1986, between Guarantor, Seller, Morrison & Foerster and Deloitte Haskins & Sells. | 6 |
| F. | Resolutions of Parent's Board of Directors dated September 12, 1986. | 7 |
| G. | Resolutions of Guarantor's Board of Directors dated September 12, 1986. | 8 |
| H. | Resolutions of Buyer's Board of Directors dated September 18, 1986. | 9 |

|  |  |  | Tab Number |
|---|---|---|---|
| I. | Resolutions of Univar's Board of Directors dated September 19, 1986, authorizing the assumption of the Agreement, execution and delivery of the Ancillary Agreements and other documents required thereby, and completion of all transactions contemplated thereby. | | 10 |

III. <u>DOCUMENTS EXECUTED ON SEPTEMBER 19, 1986</u>.

    A.    The Agreement.

                                                11

    B.    Exhibits to the Agreement.

| <u>Exhibit</u> | <u>Description</u> |  |
|---|---|---|
| 2.1 | June 30, 1986 Balance Sheet |  |
| 2.3 | Allocation of Purchase Price | 12 |
| 3.2 | Form of Instrument of Assumption | 13 |
| 8.1(a) | Prior Confidentiality Agreement | 28 |
| 8.1(b) | Prior Confidentiality Agreement | 2 |
| 8.1(c) | Form of New Confidentiality Agreement | 3 |
| 9.2 | Hart-Scott-Rodino Threshold | 33 |
| 11.1 | Form of Escrow Agreement | 14 |
| 11.3(d) | Form of Data Processing and Services Agreement | 17 |
| 11.3(e) | Form of Multiemployer Plan Agreement | 29 |
| 11.3(f) | Form of Indemnity and Guaranty Agreement | 30 |
|  |  | 31 |

    C.    Disclosure Schedule Exhibits                  See Tab 1

    D.    Exhibit 8.7-B (Agreement re: Local Union No. 70)    15

    E.    Memorandum regarding Operation of Article 3.    16

    F.    Escrow Agreement.    17

        1. Addendum to Escrow Agreement    18
        2. Acknowledgment from Bank of America re: Deposit of $20 million to Escrow Account.    19
        3. Accounting as of October 31, 1986 re: Escrow Account.    20

IV. <u>ACTIONS TAKEN PRIOR TO CLOSING</u>.

    A.    Letters dated October 20, 1986 from Federal Trade Commission re: Hart-Scott-Rodino clearance.    21

    B.    First Amendment to Agreement dated October 21, 1986; Univar consent dated as of October 24, 1986.    22

| | | Tab Number |
|---|---|---|

C.   MCC Balance sheet dated September 30, 1986.                                     23

D.   Seller's transition instructions to MCC operations
dated October 31, 1986; letters dated September 22                             24
and October 30, 1986 to MCC employees.

E.   Resolutions and Special Powers of Attorney by Parent,
Guarantor and Pakhoed Affiliated Corporations.                                25

F.   Employment Offer to MCC Employees dated
October 22, 1986.                                                             26


V.   DOCUMENTS EXECUTED AT CLOSING.

A.   Memorandum of Closing.
                                                                              27
B.   Ancillary Documents Executed by the Parties.

1. Instrument of Assumption.
                                                                           28
2. Data Processing and Services Agreement.
                                                                           29
3. Multiemployer Plan Agreements (2).
                                                                           30
4. Indemnity and Guaranty Agreement
                                                                           31
5. Specimen Transmittal Letter by Buyer and Seller
to all MCC waste recycling customers listed in
Exhibit 12.3 (as updated) of termination                                   32
notices pursuant to Section 3.3(f).

6. Exhibit 8.1(c) (the New Confidentiality
Agreement).                                                                 33

7. Letter to Univar re: procedures relating to
incentive payments earned through Closing by                               34
MCC personnel.

8. Letter Agreement regarding McKesson
Envirosystems Company's interim dealings with                              35
Buyer pending expiration of Chemical Waste
Handling Agreements.

9. Agreement of Buyer and Univar regarding
Section 8.3 assignments and subleases.                                     36

10. Acknowledgment letter re: Administrative
Consent Order in connection with MCC's Avenel,                             37
New Jersey facility.

Tab Number

11. Agreement re: continued use by Seller until
January 16, 1987 of MCC's Springfield, Missouri
facility for storage of alcoholic beverage                       38
inventory.

C.   Documents Executed and Delivered on Behalf of Seller

1. Opinion of Seller's Counsel pursuant to Section
9.1                                                              39

2. Trademark Assignment for Sentinel™.
40

3. Trademark Assignment for Arrow™.
41

4. Release of confidentiality agreements dated
February 27, 1986, August 22, 1986 and                          42
September 13, 1986.

5. Letter of Indemnity by McKesson concerning
certain title exceptions.                                        43

6. Recording instructions to Lawyer's Title
Insurance Corporation.                                           44

7. Memorandum of employee promissory notes to
be assigned pursuant to Section 1.2(e).                          45

D.   The following items and documents were executed
and delivered by, or on behalf of, Buyer, Univar,
and the Pakhoed Affiliated Corporations.

1. Letter from Graham & James dated October 29,
1986 re: Transfer of Funds                                       46

    (a)  $39,000,444.39 advice of credit to First
         Interstate Bank.                                        46

    (b)  $37,220,555.61 advice of credit to Bank of
         America.                                                46

2. Addendum to the Agreement executed by Univar.
47

3. Certificate of Univar and Buyer as to Univar's
Stockholder's equity together with Univar's                     48
consolidated balance sheet (unaudited) dated
September 30, 1986.

4. The Irrevocable Letter of Credit duly issued
by Algemene Bank Nederland, N.V.                                49

5. Authorization for Pakhoed Affiliated
Corporations.                                                    25

| | Tab Number |
|---|---|
| 6. The Addendum to Escrow Agreement, executed by Univar, Parent, Pakhoed USA, Inc. and Pakhoed Corporation. | 18 |
| 7. Indemnity Agreement of Univar regarding Seller's surety and/or performance bonds outstanding after the Closing. | 50 |
| 8. Opinion of Buyer's counsel pursuant to Section 10.1 of the Agreement (together with a copy of the opinion of Ms. W.L. Hetterschy, the counsel to Guarantor). | 51 |
| 9. Opinion of Univar's counsel pursuant to Section 10.2 of the Agreement. | 52 |
| 10. Evidence of the authority granted to Mark Hooper. | 53 |

VI.  ACTIONS TAKEN AFTER CLOSING.

| | |
|---|---|
| A.  Closing Balance Sheet as of October 31, 1986. | 54 |
| B.  Pakhoed U.S.A. revised Special Power of Attorney. | 55 |
| C.  Univar's instructions to begin operations. | 56 |
| D.  Letter dated November 17, 1986 to New Jersey Department of Environmental Protection with Administrative Consent Order. | 57 |

VII.  PRESS RELEASES.

58

# Exhibit 3



**BROBECK PHLEGER & HARRISON**
ATTORNEYS AT LAW

TELEPHONE: (415) 442-0900
FACSIMILE: (415) 442-1010
WRITER'S DIRECT DIAL:
(415) 979-2945

SPEAR STREET TOWER
ONE MARKET
SAN FRANCISCO
CALIFORNIA 94105

February 23, 1994

Andrea Dixon
Van Waters & Rogers, Inc.
5353 Jillson Street
Los Angeles  CA  90040

Re:   McKesson v. Continental

Dear Andrea:

As we discussed in our telephone conversation of February 18, 1994, I am making arrangements to return 28 boxes of documents to you.

These are documents that came into the possession of Van Waters & Rogers with the acquisition of certain McKesson operations. I visited the Jillson Street facility in April, 1993 and with the help of Stan Barnhill, selected 28 boxes which contained documents potentially responsive to document requests in McKesson's insurance coverage litigation. In May, 1993 a paralegal from Brobeck, Phleger & Harrison's Los Angeles office arranged for packaging and transmittal of these boxes to our San Francisco offices.

The boxes will be returned to you by U.P.S., hopefully by the end of this week. I would appreciate a call from you to let me know that the boxes have been returned. Thank you very much for your cooperation.

Very truly yours,

John Blais
Legal Assistant

BPHSF1\JB5\0074350.WP

SAN FRANCISCO  LOS ANGELES  SAN DIEGO  PALO ALTO  ORANGE COUNTY  NEW YORK*  LONDON
*Brobeck Hale and Dorr International Offices

MCK0046329

# Exhibit 4

# Law Office of
# John D. Edgcomb

*115 Sansome Street*
*Suite 805*
*San Francisco, CA 94104*
*415.399.1555 tel*
*415.399.1885 fax*
*jedgcomb@edgcomb-law.com*

## Facsimile Cover Sheet

**To:** Jeffery Caufield, Esq.
Caufield & James, LLP
(619) 325-0231

**From:** John Edgcomb, Esq.

**Date:** 1/16/06

**Pages Including this cover page:** ~~25~~ 22

**Re: Angeles Chemical Co., et al. v. McKesson, et al.**

**Please see attached letter and Univar index.**

cc: D. Lyon, Esq.
N. Wilms, Esq.

*The information contained in this fax message is intended for the personal and confidential use of the designated recipient(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. Please notify us immediately by telephone so that we may arrange for it to be returned.*

LAW OFFICE OF

J O H N   D .   E D G C O M B

115 Sansome Street

Suite 805

San Francisco, CA 94104

415.399.1555 tel

415.399.1885 fax

jedgcomb@edgcomb-law.com

January 16, 2006

**BY E-MAIL AND FACSIMILE**
Jeffery L. Caufield, Esq.
Caufield & James, LLP
2851 Camino Del Rio South, Suite 250
San Diego, California 92108

Re: Univar Documents

Dear Mr. Caufield:

This is in response to your letter dated today regarding the Univar document production.

First, we transmit herewith a box level index of the McKesson Chemical Company ("MCC") documents that we understand to be in the custody of Univar and from which our recent production of Univar documents occurred. That document production included the production of all documents we believed to be responsive to your discovery requests.

Second, your demand that all MCC documents be produced, whether you have requested them or not, simply has no basis in law. You cite no authority for such a demand. Please provide citation to authority that you contend authorizes you to demand production of documents in a meet and confer letter that you have not previously requested in discovery. In fact, I am sure that had we simply produced all of the MCC documents in Univar's possession without having gone to the extraordinary length that we did to extract the Santa Fe Springs facility documents as we did, you would be complaining that we did not extract and separately produce the Santa Fe Springs documents, making the production simply a "document dump." Indeed, as you know, but fail to mention, we did previously transmit to you a detailed index (74 pages) of the Univar documents responsive to your discovery requests that we produced.

Third, we previously explained to you the reason for the delay in the production of the Univar documents in our December 26, 2005 letter. "We did not request to conduct this search of Univar documents earlier because, as noted in my March 21, 2005 e-mail to you, '[w]e produced all operating records pertaining to the SFS site that were recovered from the Brobeck files in the Continental insurance litigation, which we understand included copies of all of the SFS operating records that McKesson obtained from VW&R.' We further noted that you 'had already subpoenaed [Univar] and they told you they had no SFS documents. To

Jeffery Caufield, Esq.
January 16, 2006
Page 2

the extent any SFS site files were returned by VW&R to McKesson, they were
produced.'  When you again recently indicated you wanted us to inquire with
Univar, we did so.  This document production is the result."

Fourth, we categorically your sweeping allegation, without specifics, that any
evidence has been willfully suppressed.  Judge McMahon seized on one page of
the McMahon deposition transcript that had been redacted, which you claimed
contained critical evidence, when in fact it contained nothing of the sort.  It is
unfortunate that we did not address that allegation in the last Joint Stipulation in
detail so the Magistrate could understand that that testimony had no importance in
this case whatsoever.  You claimed that McKesson had improperly redacted
testimony from just one page of the forty-five pages redacted, because the Santa
Fe Springs Site was referenced.  However, review of the redacted testimony
indicated that it was likely redacted because it referred to both Union City and
Santa Fe Springs.  In any case, it was hardly "vitally relevant testimony."
Alexander McMahon referred to an acid spill which is irrelevant because acids are
not the contaminants at issue in this case.  Otherwise, the testimony was of a
generic nature and generally positive for McKesson ("our operations managers
were on a full court press to make sure we were up to snuff to do everything
properly.")  Moreover, Alexander McMahon indicated he had no understanding of
what the sources of soil or groundwater contamination are with respect to either
the Santa Fe Springs or the Union City facilities.  Thus, the arguably questionable
redaction of one page of deposition testimony out of forty-five pages redacted,
when that page contained no information bearing on McKesson's potential
liability in this case, is hardly startling evidence of an effort by McKesson to
evade discovery responsibilities.

Moreover, in a prior letter you alleged that McKesson improperly failed to
produce other documents such as the "George Butter slides," "safety and
operation procedures documents," the Continental depositions, the "as-built
diagrams," the Pakhoed documents, and that McKesson's objections to various
subpoenas was improper.  We addressed the propriety of McKesson's actions
with respect to each of these issues in our December 26, 2005 letter to you.  We
have received no further response from you as to any of these issues, indicating to
us you have nothing further to substantiate your claims regarding these matters.

With respect to the timing of our production of the Univar index sent herewith,
we did originally state we would produce it on Friday instead of today, Monday,
which is a Federal and State holiday, but we are doing our best to insure its
accuracy and we doubt that your not having it over the weekend was substantially
prejudicial to you.  In any case, you should not be talking about a Friday to
Monday delay, given your extensive delays in your recent (non-)productions of
the Bramstedt, BEII and now Blakely documents.  In each case, you have failed to
timely produce the documents, in some cases by weeks, not days, thereby

Jeffery Caufield, Esq.
January 16, 2006
Page 3

delaying our completion of discovery. For example, you claimed you would be producing the Blakely documents today, yet we still have not received them.

We believe that we have produced all of the requested documents from Univar's MCC collection. You can look at the index and decide if you want to re-review any of the boxes listed there. We are cognizant of Magistrate McMahon's Order and so we have indicated our willingness to work with you and Univar to permit a further review after you look at the index and we discuss what boxes you might want to review, even though we believe there is no strict legal duty for us to do so. However, as we also noted in our January 3, 2006 conference call, there are Univar documents in some of these boxes that will have to be extracted before they are produced to you. Thus, we do have to coordinate with Univar regarding any further production to insure only MCC documents are produced.

Also, with respect to your comment that you "cannot afford to delay any longer regarding our right to inspect records," we first note that since producing all of the Continental non-privileged documents on January 5, 2006 at your insistence, including all of those that had been produced before, you still have not sent anyone to Bingham's office to review them. Nearly two weeks have passed. It appears that you are actually either unable or uninterested in reviewing additional documents at this time, perhaps because you are too busy drafting additional Joint Stipulations without first properly meeting and conferring. Also, we reiterate that the remaining Univar records were neither requested by you in prior discovery requests nor are of any relevance to this matter. Thus, while we are certainly willing to work with you to make these documents available for your review after you inspect the index, we do not believe you will be reviewing any additional requested or relevant documents.

Finally, with respect to your announcement that you "will be moving forward for evidentiary and monetary sanctions…" and that you will address this issue "in the same Joint Stipulation as our motion to compel Univar documents," it appears that you have decided that Judge McMahon's last Order relieves you of any further duty to meet and confer under Rule 37 in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. To the contrary, it appears that you are trying to maintain as many disputes as possible and bring as many as you can to the Magistrate.

This was clear from our January 3, 2005 conference call in which you failed to respond in any meaningful way to any of our compromise proposals, and in effect told us you were moving ahead with further Joint Stipulations unless we produced all of our privileged documents, despite the existence of the March 31, 2005 Stipulation and your having been caught "red-handed" making blatant misrepresentations to the Court in your first Joint Stipulation on Privileged Documents, which forced you to withdraw that motion when, to your apparent

Jeffery Caufield, Esq.
January 16, 2006
Page 4

surprise, we were able to prove the falsehood of your claims. To this day, you
refuse to admit your misrepresentations and have failed to meet and confer in
good faith on that issue, instead continue to obfuscate on the issue. As indicated
previously, we will be addressing that issue with Magistrate McMahon.

If necessary, we will also address with him your apparent intention to serve a
Joint Stipulation regarding the Univar documents without first meeting and
conferring with us. In our January 3, 2006 conference call, I specifically asked
you what other concerns you had about the Univar production given our: 1)
production of the responsive Univar documents; 2) our production of an index of
those documents; and 3) our proposed (and now completed) production of an
index of the Univar MCC documents. You and Mr. Griffin did not identify a
single other issue at that time. If you have additional issues, such as re-taking of
depositions or other issues, you must meet and confer with us regarding those
issues to try and resolve them before serving a Joint Stipulation. We disagree
regarding your position on the Univar documents privilege log. We just produced
the Univar documents and the privilege log. But we can discuss those documents
in the larger context of a meet and confer on the Univar document production.

We look forward to further meet and confer discussions regarding the Univar
document production.

Very Truly Yours,

John D. Edgcomb

Enclosure

cc:  Devon Lyon, Esq.
     Nancy Wilms, Esq.

**MCKESSON CHEMICAL COMPANY DOCUMENTS RETAINED BY UNIVAR.**

| Box No. | Description | Date Range |
|---|---|---|
| 1 | McKesson Supplier Invoices, Western Region: MT. HOOD CHEMICAL CORP. "M" MISC.; MYERS DRUM COMPANY; NARCO CORP.; NATIONAL ASSOC. OF CREDIT MGMT.; NATIONAL LABORATORIES; NATIONAL PAPER AND ENVELOPE CORP.; "NATIONAL" MISC.-NATIONAL LEAD INDUSTRIES INC.; NATIONAL CASH REGISTER CO.; HAUMANN LIFT TRUCKS INC.; NEVADA STATE & COUNTY; NEVILLE CHEMICAL; NEW JERSEY ZINC CO.; NEW MARK RESERVES; NIAGARA CHEMICAL DIV.; NICSON AUTOMOTIVE MAINT.; NORAC COMPANY; NORDA INC.; N. CALIFORNIA DENTAL TRUST; NW NATURAL GAS CO.; NKURY CHEMICAL CORP.; NW JANITORIAL SERVICE; NYANZA INC.; DENNIS NYMEYER; OLIN CORP.; OFFICE AIDE INC.; OGLEBAY NORTON CO.; OIL & SOLVENT PROCESS; OLIVETTI CORP.; CITY & COUNTY OF ORANGE; "O" MISC.; OREGON LINEN RENTAL; OREGON PUBLIC UTIL. COMMISSION; OREGON TEAMSTERS; THE OREGONIAN; STATE OF OREGON; PACIFIC VEGETABLE OIL; PACIFIC GAS & ELECTRIC - FREMONT; PACIFIC GAS & ELECTRIC - FRESNO; PACIFIC GAS & ELECTRIC - SF/OAKLAND; PACIFIC PERSONNEL SERV.; PACIFIC POWER & LIGHT; PACIFIC SMELTING CO.; "PACIFIC" MISC.; BOB PAGE TRAVEL; PALLETS & ACCESSORIES; PALM STATIONERS; PARAGON WAX REPAIRING; PAVEMENT CHEMICAL CORP.; PARGAS; PARKHOUSE TIRE SERVICE; PARTIME; PAUL LIME PLANT; "P" MISC.; ARTHUR PEDERSON; PENNWALT | |
| 2 | McKesson Supplier Invoices, Western Region: PENNWALT; PENRECO INC.; PETERSON TRACTOR CO.; PETROLANE BUTANE CO.; PETROLITE; PFIZER; P.H.H. AUTOMOTIVE; PHELPS DODGE REFINING; PHILADELPHIA QUARTZ CO.; PHILIPS PETROLEUM CO.; PHOENIX LINEN & TOWEL; "P" MISC.; PITNEY BOWES; PILOT CHEMICAL COMPANY | |
| 3 | McKesson Vendor Files 1976-1977 | |
| 4 | McKesson Supplier Invoices, Western Region: TEXACO; TEXAS GULF INC.; "T" MISC.; FRED THORP; TILTON CONSTRUCTION CO. INC.; TOLL BRIDGE ADMIN.; HC TORREY & ASSOC.; TRAILER EQUIPMENT SALES; TRANS HARBOR DRUM CO.; TRANSPORT POOL INC.; TUCSON GAS & ELECTRIC; CITY OF TUCSON; TUCSON TREASURER; TUSTIN WATER WORKS; UNION CAMP CORP.; UNION CARBIDE; UNION CITY LUMBER; UNION OIL; UNION TANK CAR CO.; US BORAX | |
| 5 | McKesson Supplier Invoices, Western Region: AMERICAN CYANAMID; ALLIED CHEMICAL; MOBIL CHEMICAL; MOBIL OIL INVOICES; MOBIL OIL CREDIT CARDS; MERCK CHEM DIV; MERCK & CO. INC.; MONSANTO; MARCO CORP; NKURY CHEMICAL CORP; OCCIDENTAL CHEMICAL CO.; OCCIDENTAL COATING; OGLEBAY NORTON CO; OIL & SOLVENT PROCESS; OLIN CORP; OLIVETTI CORP | |
| 6 | McKesson Supplier Invoices ref Purchase Orders Western Region: WASHINGTON, STATE OF, ALL DEPARTMENTS; WATER AND SEWER DEPT - TUCSON - UTILITY BILLS; W/A-WOZ - MISCELLANEOUS; WEBFOOT FERTILIZER CO INC.; WEBCO-WESTERN CHEMICAL; WEST ARGO CHEMICAL INC.; WEST PARK TRUCK EQUIPMENT; WEST SIDE ELECTRICAL; WEST WACO CHEMICAL; WESTCO CHEMICALS; WESTERN CONFERENCE TEAMSTERS PENSION FUND; WESTERN SALT CO; WESTERN SLOPE JANITORIAL; WESTERN MATERIAL; WESTERN WEST TIRE; WESTERN TRAFFIC AND AUDITING; WESTERN UNION - LA; WESTWOOD CERAMIC SUPPLY; WESTERN-MISCELLANEOUS; WESTERNER-MISCELLANEOUS; WE - WHZ - MISCELLANEOUS; WHITE KING INC; WHITE MOTOR CORP; WICKMAN INDUSTRIAL GLOVE; WILCOX OIL CO; WICKMAN INDUSTRIAL GLOVE; WILCOX OIL CO; WILHELM NATIONAL LEASE; LES WILLIAMS ELECTRIC; WI - WKZ - MISCELLANEOUS; WILSHIRE CHEMICAL; WITCO CHEMICAL; WITCO CHEMICAL; WOODS PLOWERS; WYANDOTTE CHEMICAL BASF; WYANDOTTE CHEMICAL BASF; WYOMING MISC TAXES; WYOMING WORKERS COMP; WO - WZZ - MISCELLANEOUS; BASF JULY - SEPTEMBER; WYANDOTTE CHEMICAL BASF - WYOMING MISC TAXES; WYOMING WORKERS COMP; WO - WZZ - MISCELLANEOUS; XEROX CORP OCT-DEC; XEROX CORP JULY - SEPT; XEROX CORP APR - JUNE; ZEE MEDICAL - FIRST AID AND SUPPLIES; ZELLERBACH PAPER CO; ZEP MFG; X, Y, Z - MISCELLANEOUS | 1975 |

PRODUCED 1/16/06

1

| Box No. | Description | Date Range |
|---|---|---|
| 7 | McKesson Supplier Invoices Western Region: VALLEY GAS – GRAND JUNCTION; VALLEY INDUSTRIAL LAUNDRY; VALLEY KENWORTH CORP.; VALLEY NEWS; VALLEY NITROGEN PRODUCER; VALLEY NEWS; VALLEY TIRE CO.; VALIANT CO.; VANIER GRAPHICS CO. VANTON PUMP & EQUIP.; VAN WATERS & ROGERS; VEL/COL; VERONIQUE FRENCH REST.; VICTOR TEMPORARY; VIKING OFFICE PRODUCTS; VILLA WHOLESALE DISTRIBUTORS; VIRGINIA CHEMICALS; VIXION CHEMICAL CO.; VOLT TEMP. SERVICE; VULCAN MATERIALS; "V" MISC.; WAGNER LIFT TRUCKS; WALL STREET JOURNAL; WALLACE BUSINESS FORMS; LARRY O. WALSH; TOM WALSH & ASSOC.; STATE OF WASHINGTON | |
| 8 | McKesson Supplier Invoices Western Region: C BU-GEBY AGRIC. CHEMICALS; CITIES SERVICE CO.; BOB CITRON – TAX COLLECTOR; CITY TAX COLLECTOR; CLARES AUTO SERVICE; CLARK COUNTY; CLARK EQUIPMENT CO.; "C" MISC.; COCA-COLA & 7-UP; COLGATE PALMOLIVE; COLLER CARBON & CHEMICAL CO.; COLORADO WEST TRAVEL; "COLORADO" MISC.; COLORADO KENWORTH GMC; STATE OF COLORADO | |
| 9 | McKesson Supplier Invoices Western Region: "C" MISC.; COMMERCE CITY, COLORADO; COMMERCE INDUSTRIAL MEDICAL CLINIC; COMMERCIAL SHEET METAL WORKS; CONSOLIDATED DISPOSAL; CONTAINER CORP. OF AMERICA; CONTINENTAL OIL CO.; "CON" MISC.; COPPER STATE CHEMICAL; CPC CORN PRODUCTS; LYLE R. CORNISH; COSDEN OIL; THE COSMIN CORP.; COURIER CITIZEN CORP.; COZINCO; "C" MISC.; CRAIN AUTO ELECTRIC; CREAMLAND DAIRIES INC.; CREATIVE PRODUCTS; CREDIT MANAGERS ASSOC. OF SO. CALIF.; H. S. CROCKER CO.; CROCKER BANK; CRYSTAL BOTTLED WATERS; TOM CRUMP; CUMMINS POWER, INC.; CUMMINGS & CUMMINGS, INC.; CURRIE BROS. INC.; CURTIN MATHESON INC.; CYPRUS IND. MINERAL CO.; "C" MISC.; THE DAILY NEWS; DALCO TRUCK RENTAL INC.; DALE HARDWARE; DATA DISCOUNTS; DATA DOCUMENTS; DATA SYSTEMS; L. R. DAVIS; W. CLAUDE DAVIS, M.D.; "D" MISC.; DAYTON TIME LOCK; DEAL HARDWARE; DEAN-MARK OFFICE SUPPLY; DEANO, INC. OF NO. CALIF.; DECISION DATA COMPUTER CORP.; DEEPWATER CHEMICAL CORP.; DEER-O-PAINTS & CHEM DELTA CHEMICALS; CITY & COUNTY OF DENVER; DENVER DODGE TRUCK CTR.; DENVER WATER DEPT.; DMV; DEPT. OF TRANSP.; DEPT. OF WATER & POWER; DESERT INT'L; DESMOND MAIL SERVICE; "D" MISC.; DIAGRAPH ACCOUNTING; DIAGRAPH – BRADLEY IND.; DIAL EMPLOYMENT AGENCY; DIAMOND INTERNATIONAL; DIAMOND SHAMROCK CHEM. CO.; DIXON PAPER; DIVERSIFIED VEHICLE DRIVER/SYSTEMS; DORSETT & JACKSON, INC. | |
| 10 | McKesson Supplier Invoices Western Region: PILOT CHEMICAL CO.; PITNEY BOWES; "P" MISC.; PHOENIX LINEN & TOWEL; PPG INDUSTRIES; PLATEAU EQUIP. SUPPLIES; PORT A BALANCING CO.; PLEX CHEMICAL CORP.; PORT A WASH; CITY OF PORTLAND; PORTLAND GEN. ELECTRIC; PORTLAND PRESSURE WASH. RADIO CONTACT CORP.; RANDALL INDUSTRIES; RATLIFFS OFFICE EQUIP.; CITY OF RAWLINS; RAY LUMBER CO.; "R" MISC.; REAGENT CHEMICAL AND RESEARCH; REDBURN TIRE CO.; RED WAGON CARPET & CLEANING; THE REGISTER; REIMANN & MCKINNEY; RELIABLE PACKAGING; RENTCO; RHEEM MFG.; JAMES H. RHODES & CO.; RHODES JAMISON; "R" MISC.; RIEKE CORP.; RIEKE CONTAINER COMPANY; RIGGLE OIL CO; RIVERSIDE CITY & COUNTY; RIVERSIDE HIGH & WATER CO; PORTLAND TRAILBLAZERS; POTASH IND.; PREMIER MALT PRODUCTS; PRICE INDUSTRIAL; PROMPT TEMPORARY SERVICE; PRUDENTIAL OVERALL; PUBLIC SERVICE CO. OF CO; PUBLIC SERVICE CO. OF NEW MEX; QUALITY INK; QUAD CHEMICAL CORP.; "P" MISC.; "Q" MISC.; RBM ELECTRIC; R&R PALLET REPAIR CO. | |

| Box No. | Description | Date Range |
|---|---|---|
| 11 | McKesson Supplier Invoices Western Region: "R" MISC.; ROBINSON GMC INC.; ROHM & HASS COMPANY; ROLLINS LEASING CORP.; ROPER PLASTICS; ROSE VALLEY PALLET SVC.; FRANK B. ROSS CO.; RSR CORP.; ROYCE CHEMICAL; RYAN HERCO PRODUCTS; RYDER TRUCK RENTAL; SEA ENGINE BROTHERS; SANITARY SUPPLY OF TUCSON; SANTA FE SPRINGS; SARGENT WELCH SCIENTIFIC CO.; "S" MISC.; SCHWAAB; SCHICK MOVING & SALES; SEA SCIENTIFIC; SALES & MARKETING EXECUTIVES; SALSBURY LABORATORIES; SALT RIVER PROJECT; SANDERSON SAFETY; SANDLER STORAGE; SCM CORP.; SEAMLEX METAL HOSE; SEARS ROEBUCK & CO.; SEATTLE BARREL & COOPERAGE; SEC CORPORATION; SELPAC CORPORATION; SETHNESS PRODUCTS CO.; SEVEN UP BOTTLING; SF USED WOODEN PALLET; SHANNONS PAINT INC.; SHEPHERD CHEMICAL CO.; SHELL OIL CO.; THE SHERWIN WILLIAMS CO.; SHELL CHEMICAL CO. | |
| 12 | McKesson Supplier Invoices Western Region: HAMILTON RENTAL SERVICE; HANCOCK; HYDROPONICS; JEANNE HANSEN; HANSON EQUIPMENT; HARRINGTON INDUSTRIAL PLASTICS; HARSHAW CHEMICAL CO.; HARSTAM CHEMICAL CORP.; HASKELL LINEN SUPPLY; H.JST LUMBER CO.; HATHAWAY ALLIED PRODUCTS; "H" MISC.; HEFLU – HARRINGTON INDUSTRIAL PLASTICS; HELPMATES OF CALIFORNIA; HENDRICKS GMC TRUCKS; HERCULES INCORPORATED; HERTZ CORP.; HICKEY PIPE & SUPPLY; HILL BROTHERS CHEMICAL; HILL OIL CO.; HOBBS TRAILER; HOFFMAN ELECTRONICS; HOLDINGS LITTLE AMERICA; HOLTHE DISPOSAL SERVICE; HOME CRAFT BOOKSTORE; HOODER CHEMICAL; HOWE RICHARDSON SCALE CO.; HOWELL IND.; HUDDLESTON EQUIPMENT CO.; HUMKO SHEFIELD; PHILIP HUNT CHEMICAL CORP.; HUSKY OIL; HYDRA LIFT EQUIPMENT CO.; IBM CORP.; ICC STATE OF IDAHO; ICI UNITED STATES; IMC CHEMICAL GROUP | |
| 13 | McKesson Supplier Invoices Western Region: IMC CHEMICAL GROUP (APRIL – SEPTEMBER); IDEAL RADIATOR COMPANY; ILLINOIS MANUFACTURER DIRECTORY; INDEPENDENT TEMPORARY PERSONNEL; INDEPENDENT PRESS-TELEGRAM; INDUSTRIAL TRUCKING INCORPORATED; INDUSTRIAL (MISCELLANEOUS); INLAND CITIES TRUCK REPAIR; INSTEL CORPORATION; HENRY INTERDONAT; INTERCOUNTAIN PRINTING AND STATIONERY; INTERNATIONAL HARVESTER; INTERSTATE BRANDS CORPORATION; INTERNATIONAL (MISCELLANEOUS); IC-ITOH INDUSTRIAL MACHINERY; I-MISCELLANEOUS; J. B. J. BALANCE; J & J WELDING; JACS FLOWERS; JANITOR DONS; JERRYS HOUSE OF SPIRITS; JIMMY GNIC OF TUCSON; JIM'S AIR COMPRESSOR; J&M FIRE EXTINGUISHER COMPANY; J&L CONSTRUCTION; J4–JNZ (MISCELLANEOUS); J&O TRUCK STOP; JOHN'S SUPER X; JONES CHEMICALS INCORPORATED (OCTOBER – MARCH); JONES CHEMICALS INCORPORATED (APRIL-SEPTEMBER); JONES SEPTEMBER; JONES HAWAII TOM; JORDAN REFRIGERATION; JORGENSEN & COMPANY; JUNCTION PALLET; JO-JZZ (MISCELLANEOUS); KAISER ALUMINUM; KAISER ALUMINUM; KALAMA CHEMICAL; KAY-FRIES CHEMICAL; KAEAB LUBRICATING; KELLY SERVICES INC.; KENNECOTT SALES INC.; KENDALL ELECTRIC; KENNECOTT SALES CORP.; KEYSTONE– INGRAHM CORPORATION; KA-KNZ (MISCELLANEOUS); J.P. C. KILBURN COMPANY; KISTLER IND. SERVICE; DAVE KNOX PLASTICS; KA-KNZ (MISCELLANEOUS); FRANK M. KRAUSE–TAX COLLECTOR; KEN HUMES-CO. ASSESSOR; KWIK COVER SALES COMPANY; KO-KZZ (MISCELLANEOUS); KERR-MCGEE CHEMICAL | |
| 14 | McKesson Supplier Invoices Western Region: SILMAR; SILVA IR & VALENTINE; SMILCO CHEM; SO CAL CHEM SOUTH LAND CORP; SOUTH-WEST SALT CO; SOUTHWEST SOLVENS; SPECIALTY ORGANICS; STANDARD WITCH HAZEL; STAUFFER CHEM CO. - CHICAGO; STAY & DAY PAINT MATERIALS CO.; SUGAR PRODUCTS; HENRY SUNDHEIMER CO.; SUPERIOR LIME & CHEM CO.; SYNTEX AGRI BUSINESS; INC.; S – MISC.; T & R CHEMICALS; TENNECO CHEMICALS INC.; TEXAS GULF, T – MISC.; STRAHT & PITSCH INC.; UNION CAMP CORP.; UNION CARBIDE Jan- Dec 1979 | |

PRODUCED 1/16/06

3

| Box No. | Description | Date Range |
|---|---|---|
| 15 | McKesson Supplier Invoices Western Region: OIL & SOLVENT PROCESS; OCCIDENTAL CHEM.; OGLEBAY NORTON COMPANY; OLIN CORP.; PACIFIC SMELTING, PENNWALT; PFIZER; PHELPS DODGE REFINING; PHILIPS CHEMICAL PHILLIPS PETROLEUM; PHILADELPHIA QUARTZ CO.; PILOT CHEMICAL; PLEX CHEMICAL CORP; POTASH OF AMERICA; PPG INDUSTRIES | |
| 16 | McKesson Supplier Invoices Western Region | |
| 17 | McKesson Supplier Invoices Western Region: UNION CHEMICALS – MARCH 79, FEB, JAN, DEC 78, NOV, OCT, SEPTEMBER; COLLIER CARBON – AUGUST, JULY, JUNE, MAY, APRIL; UNION OIL CO. (AMSCO DIV); UOP CHEMICAL; US BORAX; US GYPSUM; US LIME; US INDUSTRIAL CHEM CO.; USS AGRI CHEM | 1978-1979 |
| 18 | McKesson Supplier Invoices Western Region: USS AGRI CHEMICAL; U – MISCELLANEOUS; VALCO MFG.; VALLEY NITROGEN PRODUCERS; VAN WATERS & ROGERS; VELSICOL CO.; ALBERT VERLEY & CO.; VNC MANUFACTURING; VILLA WHOLESALE; VIRGINIA CHEMICAL; VULCAN MATERIALS; V – MISCELLANEOUS | |
| 19 | McKesson Supplier Invoices Western Region: XCI UNITED STATES; HENRY INTERDONATI; INTSEL CORPORATION "J" MISC.; JMC CHEMICAL; JONES HAMILTON; "J" MISC; KLIX CHEMICAL CO. INC.; KENNECOTT SALES CORP.; KALAMA CHEMICAL; KERR-MCGEE; KWIK COVER SALES; "K" MISC; LADLAW CORP.; LANSOL LABS LESLIE FOODS INC.; LIBERTY TAGS–FORMS OF CALIFORNIA; PETE LIEU & SONS; LINDORA ENTERPRISES; LITHIUM CORP. OF AMERICA; LOS ANGELES CHEMICAL; LONZA, INC.; AJ LYNCH & CO.; "L" MISCELLANEOUS; MACMILLAN PIPER INC.; M&T CHEMICALS INC.; MALLINCKRODT CHEMICAL WORKS; MALMSTROM CHEMICAL CORP.; MANUFACTURING CHEMISTS | |
| 20 | McKesson Supplier Invoices Western Region: MAR VEL; MARATHON MOROO; MASTER CHEMICAL INC; MERCK & CO. INC.; METACHEM LABORATORIES; MILLERS HONEY; MISSISSIPPI LIME; MONSANTO; NALCO CHEMICAL CO; NORDA, INC.; NOURY CHEMICAL; NREN SOUTHWEST; "N" MISC.; NORSK HYDRO; NARCO CORP.; NATIONALL LABS; NMCET CORP.; MORTON SALT; MT. HODD CHEMICAL "M" MISC. | |
| 21 | McKesson Supplier Invoices Western Region: JOHNS MANVILLE SALES; JONES HAMILTON; KALAHA CHEMICAL KENNECOTT SALES CORP.; KERR MCGEE; "K" MISC.; LAIDLAW CORP.; LESLIE FOODS INC.; LIBERTY TAGS – FORMS OF CALIFORNIA; PETE LIEN & SONS; LITHIUM CORP. OF AMERICA; LONZA INC.; AJ LYNCH; "L" MISC.; MALLINCKRODT CHEMICAL WORKS; M&T CHEMICALS; MALMSTROM CHEMICAL CORP.; MANUFACTURING CHEMISTS; MARATHON MOROCO; MAR VEL; MERCK & CO., INC.; METACHEM LABORATORIES; MILLERS HONEY CO.; MISSISSIPPI LIME CO.; MORTON SALT CO.; MT. HOOD CHEMICAL CORP.; "M" MISC.; NALCO CHEMICAL COMPANY; NARCO CORP.; NIACET CORP.; THE MOROO CO.; NORDA, INC.; NORSK HYDRO AS; NOURY CHEMICAL CORP.; N-REN SOUTHWEST; "N" MISC.; OGLEBAY NORTON CO.; OIL & SOLVENT PROCESS; OLIN CORPORATION; "O" MISC.; PACIFIC SMELTING; PENNWALT; PFIZER; PHELPS DODGE REFINING; PHILLIPS CHEMICAL; PHILADELPHIA QUARTZ CO.; PILOT CHEMICAL; POTASH OF AMERICA; PPG; PREMIER MALT PRODUCTS; PRIOR CHEMICAL CORP.; PROCTOR & GAMBLE; "P" MISC.; RANDOM INDUSTRIES; REAGENT & CHEMICAL RESEARCH; REICHHOLD CHEMICAL; RHODES & CO.; ROHM & HAAS CO.; FRANK B. ROSS; ROYCE CHEMICAL; RSR CORP.; "R" MISC.; SALSBURY LABORATORIES; SCHULLE CORP.; SEARNESS PRODUCTS; SHELL CHEMICAL; SHEPARD CHEMICAL | |

4

| Box No. | Description | Date Range |
|---|---|---|
| 22 | McKesson Supplier Invoices Western Region: STAUFFER CHEMICAL CO.; THE SHERWIN-WILLIAMS CO.; SILMAR; SINCLAIR & VALENTINE SMILO CHEMICAL; SOUTHERN CALIFORNIA CHEMICAL; SOUTHWEST SOLVENTS; SPECIALTY ORGANICS INC.; STAUFFER CHEMICAL CO.; STAY AND DAY PAINT MATERIALS CO.; HENRY SUNDHEIMER CO.; S – MISCELLANEOUS; TENNECO CHEMICAL; TEXAS GULF; T – MISCELLANEOUS; UNION CARBIDE CORP.; UNION CHEMICALS | |
| 23 | McKesson Supplier Invoices Western Region, National Accounts: AGRICO CHEMICAL; ALLIED CHEMICAL; AMICHEM PRODUCTS INC.; AMERICAN COLLOID COMPANY; AMERICAN CYANAMID CO.; AMERICAN HOECHST CORP.; AMERICAN MAIZE PRODUCTS; AMOCO OIL COMPANY; AMCHEM/ANGELES CHEMICAL COMPANY; ARNOLD AND CLARK CHEMICALS; ASARCO AMERICAN SMELTING AND REFINING CO.; ASH GROVE CEMENT; ASHLAND CHEMICAL; ATLAS PROCESSING INC; A – MISC. SUPPLIERS; J.T. BAKER; BELZAK CORP.; BORDEN CHEMICALS INC.; B – MISC.; COLUSA CHEMICAL CO.; CARUS CHEMICAL CO.; CELANESE CHEMICAL CO.; CHEMTECH INDUSTRIES; CHEM-WEST INDUSTRIES; CHEVRON USA; CHARLES B. CHRYSTAL COMPANY; CHURCH AND DWIGHT CO. INC.; CIBA-GEIGY; AGRIC CHEMICALS; CITIES SERVICE CO.; CLIMAX CHEMICALS; CPC – CORN PRODUCTION INTERNATIONAL; THE CORMIN CORP.; CYPRUS INDUSTRIAL MINERALS; C – MISC.; DEEPWATER CHEMICAL CO.; DIAMOND SHAMROCK CHEM. CO.; PHIL L. DOSTAL; DOW CHEMICAL; E. I. DUPONT DE NEMOURS; DOW CHEMICALS | 1979 |
| 24 | McKesson Supplier Invoices Western Region, National Accounts: D – MISC.; EAGLE – PITCHER INDUSTRIES INC. ELNEC INC.; EMERY INDUSTRIES INC.; EXXON COMPANY OF THE USA; FERRO CORP.; FIRST CITY NATIONAL BANK/DOW CHEMICAL; FMC CORP.; F – MISC.; GEORGIA PACIFIC; GLYCO CHEMICALS INC.; GPS INDUSTRIES; W.R. GRACE AND COMPANY; GARDEN CHEMICALS; GREAT LAKES CHEMICALS; RW GREEFF AND CO. INC.; GREFCO INC.; GREIF BROS. CORP.; G&W NATURAL RESOURCES; G – MISC.; HARSHAW CHEMICALS CO.; HARSTAN CHEMICAL CORP.; HERCULES INC.; HILL BROTHERS CHEMICAL; HOOKER INDUSTRIAL CHEMICALS; HUMKO CO.; ICIUS CHEMICALS; IMC CHEMICALS; HEMERY INTERDONANT; INTSEL CORP.; I – MISC. | 1979 |
| 25 | McKesson Supplier Information – Miscellaneous: PFIZER; XEROX; CHURCH & DWIGHT; BAKING GUIDES; THE COMING ROOM | |
| 26 | McKesson Repack Approvals | |
| 27 | McKesson Repack Approvals | |
| 28 | McKesson Repack Approvals | |
| 29 | McKesson Repack Approvals: ODESSA; OKLAHOMA CITY; PHILADELPHIA; PITTSBURGH; PHOENIX; PORTLAND; RICHMOND; SAN ANTONIO; SEATTLE; SCHAUMBURG BRANCH | |
| 30 | McKesson Repack Approvals | |
| 31 | McKesson Repack Approvals | |
| 32 | McKesson Repack Approvals | |
| 33 | McKESNER MSDS MASS MAILING & CUSTOMER CORRESPONDENCE RE: MSDS; COMPUTER PRINTOUTS OF CORRECTED MSDS MASS MAILINGS FROM 1986. CUSTOMER NAMES ARE PROVIDED, BUT NO PRODUCT NAMES- ONLY NUMBERS. | 1986 |

| Box No. | Description | Date Range |
|---|---|---|
| 34 | McKESSON LABELS: ACETIC ACID 56%; ACETIC ACID GLACIAL; ACETIC ANHYDRIDE MIXTURE; ACETONE; ALGESEPT; AL-JA-BAR; ALUMINUM CHLORIDE; ALUMINUM SULFATE SOLUTION; AMBITROL CR; AMBITROL FL; AMMONIA ALUM; AMMONIA ANHYDROUS; AMMONIUM BI FLUORIDE; AMMONIUM CARBONATE; AMYL ACETATE; ANTI-FREEZE, PERMANENT AP-62; AP-73R; AP-82; AP-170; AQUA AMMONIA; BEATS; BEESWAX; BENZENE; BENZINE; BENZOL; BENZYL ALCOHOL; BENZYL ALCOHOL MF; BORAX; N-BUTYL ALCOHOL; N-BUTYL ACETATE; N-BUTYL ALCOHOL; FEC-BUTYL ALCOHOL; BUTYL CARBITOL; BUTYL CELLOSOLVE; BUTYL CELLOSOLVE ACETATE; CAMPHOR; CARAMEL COLORING; CARBITOL SOLVENT; CARBOLIC ACID – LIQUID CARBON TETRACHLORIDE; CASTOR OIL (BLEACHED AND REFINED); CAUSTIC POTASH FLAKE; CAUSTIC POTASH LIQUID; CAUSTIC SODA BEADS; CAUSTIC SODA FLAKES; CELLOSALTS ACETATE; CELLOSALTS SOLVENT; CETYL ALCOHOL – 90% FLAKE; CHELATED CAUSTIC SODA; CHELATED ZINC; CHLORDANE – 45 %; CHLORDANE – 75%; CHLORINE, LIQUEFIED; CHLORINE; CHLORINE, LIQUEFIED; CHLOROTHENE INDUSTRIAL; CHLOROTHENE NU; CHLOROTHENE VG; CHROMIC ACID; CITRIC ACID; CUMENE HYDROPEROXIDE CONTENTS DANGEROUS; CYCLE – SOLV 60; CYCLE – SOLV 99 MECSOLV; CYCLOHEXANOL; CYCLOHEXYLAMINE | |
| 35 | OLD McKESSON LABELS NOTEBOOKS; McKESSON BINDER OF ENVIROSYSTEMS LABELS; FOREMOST McKESSON LABEL INVENTORY LOG; ALPHABETICAL LIST OF INVENTORY, FOR WHICH WE HAVE LABELS; OLD McKESSON LABELS; A-L; McKESSON CHEMICAL PRODUCT LABELS, A-D; McKESSON CHEMICAL PRODUCT LABELS, E-11 | |
| 36 | 1996 SITE INVESTIGATION AND SOIL REMEDIATION REPORT BY McKESSON IN GLENDALE, AZ | |
| 37 | Inventory Cards 1972–1984 MCK & WR | |
| 38 | Inventory Cards 1972–1984 MCK & WR | |
| 39 | McKESSON SUPPLIER INVOICES; WESTERN REGION | |
| 40 | McKESSON SUPPLIER INVOICES; WESTERN REGION | |
| 41 | McKESSON SUPPLIER INVOICES; WESTERN REGION | |
| 42 | McKESSON SUPPLIER INVOICES, WESTERN REGION; AMERICAN COLLOID COMPANY; AMERICAN CYANAMID; AMERICAN DISTRICT TELEGRAPH COMPANY; AMERICAN FLANGE & MANUFACTURING CO.; AMERICAN HOECHST; AMERICAN LAUNDRY MACHINERY; AMERICAN LECITHIN COMPANY; AMERICAN MAIZE PRODUCTS; AMERICAN PLUMBING SUPPLY COMPANY; ARPCO; AMERICAN SMELTING COMPANY; AMERICAN – MISC.; AMOCO OIL CO.; ECHO; ARROW – GARDNER; ANDY'S TRAVEL CENTER; ANGELES CHEMICAL; AM–ARZ – MISC.; ARMAK, INC.; ARNOLD & CLARKE; ARIZONA, ARCO CHEMICAL COMPANY; ARIZONA EMPLOYERS COUNCIL; ARIZONA JANITOR SUPPLY; ARIZONA, STATE OF, ALL DEPARTMENTS; ARIZONA, PUBLIC SERVICE COMPANY; ARIZONA SULPHUR COMPANY; ARIZONA – MISC.; ARONS BUILDING; ARROW WELDING SUPPLY; ARROYO SALES; CITY OF ARVADA; AR–ASX – MISC.; AMERICAN SMELTING & REFINERY COMPANY; ASH GROVE CEMENT; ASHLAND CHEMICAL; ATLANTIC RICHFIELD CO.; ATLANTIC RICHFIELD CREDIT CARDS; ATLAS PROCESSING; AT–AZZ – MISC. | |
| 43 | McKESSON SUPPLIER INVOICES, WESTERN REGION; S.L. ABBOTT COMPANY; ABUCO CHEMICAL; ALL PURE CHEMICAL; ALLIED CHEMICAL AMCHEM PRODUCTS, INC.; AMERICAN COLLOID CO.; AMERICAN CYANAMID; AMERICAN FROCHST CORP.; AMERICAN LECITHIN COMPANY; AMERICAN MAIZE PRODUCTS; AMERICAN SMELTING COMPANY & REFINERY; AMOCO OIL COMPANY; AMCHEM; ANGELES CHEMICAL COMPANY; ARIZONA, AGRO-CREMICAL COMPANY; ARIZONA MISCELLANEOUS SUPPLIERS; ARNOLD & CLARK CHEMICAL; ASARCO; ASH GROVE CEMENT; ASHLAND CHEMICAL | 1877

1979–1980 |

PRODUCED 1/18/06

6

| Box No. | Description | Date Range |
|---|---|---|
| 44 | MCKESSON SUPPLIER INVOICES, WESTERN REGION: ASHLAND CHEMICAL; ATLAS PROCESSING; A – MISC.; LT. BAKER; BELZAK CORP.; BORDEN CHEMICAL INC.; G.A. BRAUN INC.; RW BRUCKER CO.; BUCKEYE CELLULOSE CORP.; B – MISC.; CALISA CHEMICAL CO.; CARUS CHEMICAL CO.; CELANESE CHEMICAL CO.; CENTRAL SOLVENTS & CHEMICALS CO.; CHARTER INTERNATIONAL OIL CO.; CHEMICAL SALES; CHEMOPHARM CO.; CHEMTECH INDUSTRIES; CHURCH & DWIGHT; CHARLES B. CRYSTAL CO.; CIBA GEIGY CHEMICALS; CITIES SERVICES; CLIMAX CHEMICAL; COLLIER CARBON CPC INDUSTRIAL DIVISION; THE COSMIN CORP.; COZINCO; CYRUS INDUSTRIAL MINERALS; C – MISC.; DEEPWATER CHEMICAL COMPANY; DELTA CHEMICALS INC.; DIAMOND SHAMROCK; | |
| 45 | DIATOMIC CHEMICAL CO.; EHL I. ROSTAI | 1978 |
| 46 | MCKESSON SUPPLIER INVOICES, WESTERN REGION | |
| 47 | MCKESSON SUPPLIER INVOICES, WESTERN REGION: DISL AGRI CHEM; US BORAX; V – MISC.; VIRGINIA CHEMICALS; VULCAN MATERIALS; WESTCO CHEMICALS; WESTERN SALT; WITCO CHEMICAL; W – MISC.; X – MISC.; Y – MISC.; Z – MISC. | 1984-1985 |
| 48 | MCKESSON SUPPLIER INVOICES, WESTERN REGION: KALAMA CHEMICAL; KEROGY CHEMICAL; KERR MCGEE; L – MISC.; L&T REPAIR SERVICE LCP; LESLIE SALT; LEND LEASE; LITHIUM CORP. OF AMERICA; LONZA; LUS LIGHTHOUSE; A.J. LYNCH | 1964-1985 |
| 49 | MCKESSON SUPPLIER INVOICES, WESTERN REGION: CYPRUS; CRAIN AUTO ELECTRIC; CHURCH & DWIGHT; CHILEAN NITRATE; CHEVRON; CARPENTER CHEMICAL CO.; CARUS CHEMICAL CO.; CELANESE CHEMICAL & PIGMENT CO.; BELZAK; BORDEN CHEMICAL; C – MISC.; CPC INTERNATIONAL; CANNINGS HARDWARE; ARSARCO INC.; B – MISC. | |
| 50 | MCKESSON SUPPLIER INVOICES, WESTERN REGION | 1984 |
| 51 | MCKESSON INVENTORY CORRECTION SLIPS, LOS ANGELES, CA | |
| 52 | HAULERS: CHEMICAL LEAMAN; AAA COOPER; DSR ENTERPRISE; NATIONAL BULK TRANSPORTATION; MCKENZIE; MILLER TRANSPORTATION; MERCURY FREIGHT; MATLOCK; MALONE FREIGHT; MCLEAN; EGRHANDT; GROENDYKE TRANSPORTATION; STEVE D. THOMPSON TRUCKING; FLEET SMITH TRANSFER; SMALLY TRANSPORT; SAIA MOTOR; ROSS NEELEY; RYDER P/L; RED WING; ARROW TECHNICAL; AIR PRODUCTS; ALABAMA POWER; ALABAMA RIVER PUMP; ALLIED PAPER; AMERICAN CYANAMID; ANSUL, INC.; ARIZONA CHEMICAL; ARMSTRONG WORLD; B – MISC.; BELCO RESOURCES; BOLS CANDIES; BORDEN CHEMICAL; C – MISC.; CAMPBELL TAGGART; CHEVRON USA.; CIBA GEIGY; CONTAINER CORP.; D – MISC.; E. I. DUPONT; E – MISC.; ESCAMBIA COUNTY UTILITIES AUTHORITY; F – MISC.; FERSON OPTICS; OVERNIGHT TRANSPORTATION; POOLE TRUCKING; FREIGHT CLAIMS; FREIGHT BILL TRANSMITTAL; YOUNGER BROTHERS; WINGATE TRUCKING; WILEY SANDERS TRUCK LINES, INC.; THURSTON MOTOR; TRANSUS; G – MISC.; H – MISC.; HALLIBURTON; HARRISON COUNTY WASTE WATER MANAGEMENT DISTRICT; I – MISC.; IP MOBILE MILL; J – MISC.; K – MISC.; K – MISC.; M – MISC.; MERCK & COMPANY; MISSISSIPPI POWER; MOBILE PULLEY; MONSANTO; N – MISC.; NEWS-CO SERVICES; NEWTEK INC.; O – MISC.; OLIN CORP.; P – MISC.; PARTHENON PRINTS; Q – MISC.; R – MISC.; REICHHOLD CHEMICAL; W. R. RODDENBERY; S – MISC.; ST. REGIS PAPER; STOCK PAPER; SHELL CHEMICAL; SINCLAIR & VALENTINE; SMITH BAKERY; SONY MAGNETIC; STATE OF ALABAMA; T – MISC.; TELEDYNE CORP.; DYNOCHEM; THIOKAL CHEMICAL; U – MISC.; UNION CARBIDE; VIRGINIA CHEMICAL; W – MISC.; WESTINGHOUSE ELECTRIC | |

PRODUCED 1/16/05

7

| Box No. | Description | Date Range |
|---|---|---|
| 53 | MCKESSON CUSTOMER FILES: BASF WYANDOTTE; BEKAERT STEEL WIRE; WILLIAM L. BONNELL; ARC; CITY OF ATLANTA; AMARP ATLANTA DAIRIES; ATLANTA HOUSING AUTHORITY; ATLANTIC STEEL; ATLAS CASTING; CRS RECORDS; CAPITAL CITY PAINT COMPANY; BUCKEYE CELLULOSE; BURLINGTON INDIANA; BROWN & WILLIAMSON; W. B. BONSAL; BRUGGS & STRATTON; BRONNER BROTHERS; ASF/ATCO | |
| 54 | MCKESSON CUSTOMER FILES: D & L PLATING; OCCIDENTAL CHEMICAL CORPORATION | 1982 |
| 55 | MCKESSON BUSINESS & SAFETY TRAINING TAPES | 1985-1986 |
| 56 | MCKESSON TRAINING TAPES: SAFETY VIDEOS; CUSTOMER SERVICE VIDEOS; SLIDES | |
| 57 | MCKESSON TRAINING TAPES; MCKESSON CHEMICAL MARKETING VIDEOTAPES LEDGER BOOKS CHARLOTTE INVOICES, GREENSBORO INVOICES, ROANOKE INVOICES, MCKESSON ENVIROSYSTEMS COMPANY, BUSINESS CHARTER, FILE LABELED BREPT MCLEAN, MCKESSON CHEMICAL COMPANY WEEKLY CALL SCHEDULES; FILE LABELED LINDA SANDRIDGE, WEEKLY CALL SCHEDULES, DEBITS FOR ACCOUNT MANAGEMENT PROGRAM; MCKESSON CORPORATION-CHEMICAL GROUP, CUSTOMER SALES ANALYSIS BY PRODUCT, FISCAL DATE 1986; LOOSE DOCUMENTS INCLUDE REPORTS OF TELEPHONE CALLS AND HANDWRITTEN NOTES BY UNIDENTIFIED INDIVIDUAL; FILE LABELED ZET CONTAINING VARIOUS CORRESPONDENCE AND CONTAINER RETAINER RENTAL AGREEMENTS | |
| 58 | MCKESSON REPACK INSTRUCTION SHEETS | |
| 59 | MCKESSON COMMUNITY AWARENESS & OPERATIONS MANUALS | |
| 60 | MCKESSON HAZ COMMUNICATIONS TRAINING PROGRAM; TRAINING SUPPORT MATERIALS ENVIRONMENTAL UPGRADE; HAZARD COMMUNICATION PROGRAM; WRITTEN PROGRAM; HAZARD COMMUNICATIONS UPDATES PRESS CLIPPINGS; SERIES 1; SERIES 2; SERIES 3; SERIES 4; SERIES 5; FIRST ON SCENE: CAER; CAER ACTIVITIES; CORRESPONDENCE – 1986; HAZWASTE TRAINING – 85; MINNEAPOLIS; CHICAGO; CHLORINE TRAINING; SAN FRANCISCO PHOENIX; CUSTOMER RETURNS ON 10/85 MAILING; BINDER: MCKESSON LIFT TRUCK OPERATORS TRAINING MANUAL; MCKESSON EMERGENCY RESPONSE KIT & 8 ORIENTATION VIDEO | |
| 61 | MCKESSON BOL & SHIPPING DOCS; SHIPMENT MEMORANDUMS, DUPLICATIVE OF INVOICES FILES | 1984-1985 |
| 62 | MCKESSON BILLS OF LADING | 1984-1985 |
| 63 | MCKESSON SUPPLIER INVOICES: STAUFFER CHEMICAL; LCP CHEMICALS; DOW CHEMICAL; OLIN CORPORATION; DIAMOND SHAMROCK | |
| 64 | MCKESSON SUPPLIER INVOICES: DIAMOND SHAMROCK CHEM COMPANY; LCP CHEMICALS; STAUFFER CHEMICAL COMPANY; DOW CHEMICALS USA; OLIN | 1984 |
| 65 | MCKESSON LABEL NOTEBOOKS; INVENTORY LOG; ENVIROSYSTEMS LABELS | |
| 66 | MCK-EISNER FILES: LABELS – CALIFORNIA REGISTRATION; LABELS – BLANK CHARGE SHEETS FOR LABEL BILLING; LABELS – APPROVAL FORMS; LABELS – KIADURA STENCILOMI, INK; LABELS – DOW CHEMICAL, TRADEMARK AGREEMENT, 1981 ENERGY MANAGEMENT REPORT (FILE EMPTY); SOUTHERN – GENERAL; ADC; HERLIN PRESS – INVOICES, 1982, 1980; HERLIN/HERLIN PRESS – CORRESPONDENCE, 1981; HERLIN PRESS – CORRESPONDENCE, 1982; LABEL BILLING REPORTS (402 THROUGH 1/83); FYE 1982 CLOSEOUT INVENTORY; ADC LABEL BILLING REPORT 1983 | |
| 67 | MCKESSON CHEMICAL VIDEOTAPES | |
| 68 | MCKESSON CLOSED LEGAL FILES | |

PRODUCED 1/16/06

| Box No. | Description | Date Range |
|---|---|---|
| 69 | MCKESSON/BEINER INFORMATION: 2 BINDERS OF REPACK INSTRUCTION SHEETS; CAL/S RIGHT TO KNOW LAW HANDOUT; US DEPARTMENT OF LABOR INSPECTION PRODUCED/RULES FOR HAZARD COMMUNICATION STANDARD | |
| 70 | Refusal of McKesson Litigation Files – memorandum/transact letters re: non-environmental cases; Temple v. Foremost-McKesson, Foremost-McKesson v. Allied; Univer documents; | |
| 71 | Environmental Waste Resource Site documents (superfund site in IL) | |
| 72 | Tax Blanket Exemption Certificates | |
| 72 | Supplier Invoices Western Region | |
| 73 | Supplier Invoices Western Region | |
| 74 | Supplier Invoices Western Region | |
| 75 | Supplier Invoices Western Region | |
| 76 | Supplier Invoices Western Region | |
| 77 | Supplier Invoices Western Region | |
| 78 | Supplier Invoices Western Region | |
| 79 | Supplier Invoices Western Region | |
| 80 | Supplier Invoices Western Region | |
| 81 | Supplier Invoices Western Region | |
| 82 | Supplier Invoices Western Region | |
| 83 | Supplier Invoices Western Region | |
| 84 | Supplier Invoices Western Region | |
| 85 | Supplier Invoices Western Region | |
| 86 | Supplier Invoices Western Region | |
| 87 | Supplier Invoices Western Region | |
| 88 | Supplier Invoices Western Region | |
| 89 | Supplier Invoices Western Region | |
| 90 | Supplier Invoices Western Region | |
| 91 | Supplier Invoices Western Region | |
| 92 | Supplier Invoices Western Region | |
| 93 | Supplier Invoices Western Region | |
| 94 | Supplier Invoices Western Region | |
| 95 | Supplier Invoices Western Region | |
| 96 | Supplier Invoices Western Region | |
| 97 | Supplier Invoices Western Region | |
| 98 | Supplier Invoices Western Region | |
| 99 | Supplier Invoices Western Region | |
| 100 | Supplier Invoices Western Region | |
| 101 | Supplier Invoices Western Region | |

9

| Box No. | Description | Date Range |
|---|---|---|
| 102 | Supplier Invoices Western Region | |
| 103 | Supplier Invoices Western Region | |
| 104 | Supplier Invoices; re: Texas Invoices | |
| 105 | Supplier Invoices Western Region | |
| 106 | Supplier Invoices Western Region | |
| 107 | Supplier Invoices Western Region; contains some YW&R invoices form 1987 | |
| 108 | Supplier Invoices Western Region | |
| 109 | Supplier Invoices Western Region | |
| 110 | Supplier Invoices Western Region | |
| 111 | Supplier Invoices Western Region | |
| 112 | Supplier Invoices Western Region | |
| 113 | Supplier Invoices Western Region | |
| 114 | Product Literature from various distributors | |
| 115 | Product Literature from various distributors | |
| 116 | Product Literature from various distributors | |
| 117 | Product Literature from various distributors | |
| 118 | Product Literature from various distributors | |
| 119 | Product Literature from various distributors | |
| 120 | Product Literature from various distributors | |
| 121 | Product Literature from various distributors | |
| 122 | Product Literature from various distributors | |
| 123 | Product Literature from various distributors | |
| 124 | Product Literature from various distributors | |
| 125 | Product Literature from various distributors | |
| 126 | Supplier Invoices and Purchase Orders Western Region | |
| 127 | Supplier Invoices and Purchase Orders Western Region | |
| 128 | Supplier Invoices and Purchase Orders Western Region; 8,9,9/83 Daily Activity Schedules; "will calls" documents | |
| 129 | Bill of Ladings; monthly stock adjustment printouts; daily activity schedules 11&12/85 | |
| 130 | Supplier Invoices; Columatic Rate Book (handwritten list of products--doesn't indicate which location); daily schedules (doesn't indicate which location) | |
| 131 | Supplier Invoices; re: Houston locations | |
| 132 | Supplier Invoices Western Region | |
| 133 | Handguns and Brassware; Tx documents | |
| 134 | Documents re: Beaumont, Tx facilities | |
| 135 | Corporate Accounting Policy & Procedures Manual; Hazard Communication Binder; duplicate copy of Employee Right-to-Know Binder | |

10

PRODUCED 016900

| Box No. | Description | Date Range |
|---|---|---|
| 137 | Portland Product literature: technical bulletins; industrial product information from suppliers | |
| 138 | Portland Product literature: technical bulletins; industrial product information from suppliers (focus of the product literature is location specific except the Portland boxes which are industrial Portland product (most on the outside of the boxes) | |
| 139 | McKesson Labels | |
| 140 | McKesson Labels | |
| 141 | McKesson Labels | |
| 142 | McKesson Labels, Supplier Labels | |
| 143 | Three Old McKesson Label Notebooks M-Z | |
| 144 | Product Literature (from various distributors) | |
| 145 | Container Accounting | |
| 146 | Contained Accounting; Chlorine Cylinder Purchases | |
| 147 | Inventory Cards (just for the names of cities) | |
| 148 | Operating Financial Data 1986; Annual Operations Statement; Operating Financial Data | |
| 149 | Chemlime Purchases | |
| 150 | McKesson Corporation SEC Filings | |
| 151 | McKesson Operating Financial Data 6/83; Central and Eastern District documents; Budget reports (not location specific) | |
| 152 | VW&R & Reinilee & Bryce Co. Acquisition; data processing organizations file; inventory file (not re: SFS); Premalo re: Pittsburg, Philadelphia, Portland and Phoenix locations; hazardous waste storage props in Phoenix, Portland, St. Louis | |
| 153 | Distributor Contracts - not location specific | |
| 154 | Distributor Contracts - not location specific | |
| 155 | Distributor Contracts - not location specific | |
| 156 | Distributor Contracts - not location specific | |
| 157 | Distributor Contracts - not location specific | |
| 158 | Distributor Contracts - Not location specific; customer contracts re: Southern locations | |
| 159 | Western Region Classification Interviews 9/3/86, 9/4/86, 9/5/86, 9/6/86 (REDACTED VERSIONS HAVE BEEN PRODUCED, PRIVILEGE LOG PROVIDED), documents re: Central Region interviews; recycling operations binder (marketing receipts by region); Central Region tanks binder; Files "Environmental Action Program Expenditures"; "Underground Fuel Tank Risk Assessment Program"; "Environmental Action Program"; Environmental Action Program Monthly Log"; "UST Survey"; "Environmental Upgrade Project"; Environmental Action Program Risk Assessment/Tanks"; "Environmental Action Program Risk Assessment/Tanks"; "Environmental Upgrade Project"; Environmental Action Program Background Materials"; "Risk Assessment Rating Guide" (PRIVILEGE LOG WAS PRODUCED FOR PRIVILEGED DOCUMENTS LOCATED IN THIS BOX) | |
| 160 | Section, specific lease documents-No SFS | |
| 161 | CO, WA, OR and AZ tax returns/documents; quarterly tax returns W-2's | |
| 162 | Environmental Risk Assessments for Eastern and Central Regions - (LOCATED ON PRIVILEGE LOG) | |
| 163 | Videotapes (Western Region, surveys each of the locations including SFS); Eastern and Central Region videotapes; Texas location inspections videotape; Univar 1-3 videotapes; Omaha videotape; McKesson Environmental Risk Assessment Western Region; SFS location Assessment documents re: SFS; Color photos of McKesson locations (3 photos of SFS being produced). (PRIVILEGED DOCUMENTS LOCATED ON PRIVILEGE LOG). | |

| Box No. | Description | Data Range |
|---|---|---|
| 165 | Videotapes; "SF Area"; "LA Area (duplicate clip of SFS site as video products); "New Orleans site"; "St. Louis Area"; "Atlanta Area"; "PA area", "Cincinatti Area", "Change Area"; Three large size tapes (BETA); entitled "Customer Service Excellence", "McKesson Chemical The Winning Strategy Efficiency" (duplicate). | |
| 166 | Data Sheets on specific locations (Not SFS); 2285 Monthly Financial Statements | |
| 167 | Product Literature from various distributors | |
| 168 | Product Literature from various distributes | |
| 169 | Product Literature from various distributes | |
| 170 | Product Literature from various distributes | |
| 171 | Disclosure Schedule re: Petrone Lease, Disclosure schedule exhibits; Lease documents (No SFS) | |
| 172 | Hazard Communication Handbook from Training; Around the Country (duplicate); Right-To-Know Handbook (duplicate); Chemical Operations & Safety Manual (duplicate) | |
| 173 | Product Literature from various distributors | |
| 174 | Product Literature from various distributors | |
| 175 | Dwight Lundry Deposition from Unknown v. Continental case; previously produced with McKesson v. Continental litigation documents | |
| 176 | Product Literature from various distributors | |
| 177 | McKesson Supplier Invoices, Southern Region | |
| 178 | McKesson Supplier Invoices, Southern Region | |
| 179 | McKesson Supplier Invoices, Southern Region | |
| 180 | McKesson Supplier Invoices, Southern Region | |
| 181 | McKesson Supplier Invoices, Southern Region | |
| 182 | McKesson Supplier Invoices, Southern Region | |
| 183 | McKesson Supplier Invoices, Southern Region | |
| 184 | McKesson Supplier Invoices, Southern Region | |
| 185 | McKesson Supplier Invoices, Southern Region | |
| 186 | McKesson Supplier Invoices, Southern Region | |
| 187 | McKesson Supplier Invoices, Southern Region | |
| 188 | McKesson Supplier Invoices, Southern Region | |
| 189 | McKesson Supplier Invoices, Southern Region | |
| 190 | McKesson Supplier Invoices, Southern Region | |
| 191 | McKesson Supplier Invoices, Southern Region | |
| 192 | McKesson Supplier Invoices, Southern Region | |
| 193 | McKesson Supplier Invoices, Southern Region | |
| 194 | McKesson Supplier Invoices, Southern Region | |
| 195 | McKesson Supplier Invoices, Southern Region | |
| 196 | McKesson Supplier Invoices, Southern Region | |

PRODUCED 1/16/06

12

| Box No. | Description | Date Range |
|---|---|---|
| 197 | McKesson Supplier Invoices, Southern Region | |
| 198 | McKesson Supplier Invoices, Southern Region | |
| 199 | McKesson Supplier Invoices, Southern Region | |
| 200 | McKesson Supplier Invoices, Southern Region | |
| 201 | McKesson Supplier Invoices, Southern Region | |
| 202 | McKesson Supplier Invoices, Southern Region | |
| 203 | McKesson Supplier Invoices, Southern Region | |
| 204 | McKesson Supplier Invoices, Southern Region | |
| 205 | McKesson Supplier Invoices, Southern Region | |
| 206 | McKesson Supplier Invoices, Southern Region | |
| 207 | McKesson Supplier Invoices, Southern Region | |
| 208 | McKesson Supplier Invoices, Southern Region | |
| 209 | McKesson Supplier Invoices, Southern Region | |
| 210 | McKesson Supplier Invoices, Southern Region | |
| 211 | McKesson Supplier Invoices, Southern Region | |
| 212 | McKesson Supplier Invoices, Southern Region | |
| 213 | McKesson Supplier Invoices, Southern Region | |
| 214 | McKesson Supplier Invoices, Southern Region | |
| 215 | McKesson Supplier Invoices, Southern Region | |
| 216 | McKesson Supplier Invoices, Southern Region | |
| 217 | McKesson Supplier Invoices, Southern Region | |
| 218 | McKesson Supplier Invoices, Southern Region | |
| 219 | McKesson Supplier Invoices, Southern Region | |
| 220 | McKesson Supplier Invoices, Southern Region | |
| 221 | McKesson Supplier Invoices, Southern Region | |
| 222 | McKesson Supplier Invoices, Southern Region | |
| 223 | McKesson Supplier Invoices, Southern Region | |
| 224 | McKesson Supplier Invoices, Southern Region | |
| 225 | McKesson Supplier Invoices, Southern Region | |
| 226 | McKesson Supplier Invoices, Southern Region | |
| 227 | McKesson Supplier Invoices, Southern Region | |
| 228 | McKesson Supplier Invoices, Southern Region | |
| 229 | McKesson Supplier Invoices, Southern Region | |
| 230 | McKesson Supplier Invoices, Southern Region | |
| 231 | McKesson Supplier Invoices, Southern Region | |

13

PRODUCED 1/16/06

| Box No. | Description | Date Range |
|---|---|---|
| 232 | McKesson Supplier Invoices, Southern Region | |
| 233 | McKesson Supplier Invoices, Southern Region | |
| 234 | McKesson Supplier Invoices, Southern Region | |
| 235 | McKesson Supplier Invoices, Southern Region | |
| 236 | McKesson Supplier Invoices, Southern Region | |
| 237 | McKesson Supplier Invoices, Southern Region | |
| 238 | McKesson Supplier Invoices, Southern Region | |
| 239 | McKesson Supplier Invoices, Southern Region | |
| 240 | McKesson Supplier Invoices, Southern Region | |
| 241 | McKesson Supplier Invoices, Southern Region | |
| 242 | McKesson Supplier Invoices, Southern Region | |
| 243 | McKesson Supplier Invoices, Southern Region | |
| 244 | McKesson Supplier Invoices, Southern Region | |
| 245 | McKesson Supplier Invoices, Southern Region | |
| 246 | McKesson Supplier Invoices, Southern Region | |
| 247 | McKesson Supplier Invoices, Southern Region | |
| 248 | McKesson Supplier Invoices, Southern Region | |
| 249 | McKesson Supplier Invoices, Southern Region | |
| 250 | McKesson Supplier Invoices, Southern Region | |
| 251 | McKesson Supplier Invoices, Southern Region | |
| 252 | McKesson Supplier Invoices, Southern Region | |
| 253 | McKesson Supplier Invoices, Southern Region | |
| 254 | McKesson Supplier Invoices, Southern Region | |
| 255 | McKesson Supplier Invoices, Southern Region | |
| 256 | McKesson Supplier Invoices, Southern Region | |
| 257 | McKesson Supplier Invoices, Southern Region | |
| 258 | McKesson Supplier Invoices, Southern Region | |
| 259 | McKesson Supplier Invoices, Southern Region | |
| 260 | McKesson Supplier Invoices, Southern Region | |
| 261 | McKesson Supplier Invoices, Southern Region | |
| 262 | McKesson Supplier Invoices, Southern Region | |
| 263 | McKesson Supplier Invoices, Southern Region | |
| 264 | McKesson Supplier Invoices, Southern Region | |
| 265 | McKesson Supplier Invoices, Southern Region | |
| 266 | McKesson Supplier Invoices, Southern Region | |

14

PRODUCED 1/16/06

| Box No. | Description | Date Range |
|---|---|---|
| 267 | McKesson Supplier Invoices, Southern Region | |
| 268 | McKesson Supplier Invoices, Southern Region | |
| 269 | McKesson Supplier Invoices, Southern Region | |
| 270 | McKesson Supplier Invoices, Southern Region | |
| 271 | McKesson Supplier Invoices, Southern Region | |
| 272 | McKesson Supplier Invoices, Southern Region | |
| 273 | McKesson Supplier Invoices, Southern Region | |
| 274 | McKesson Supplier Invoices, Southern Region | |
| 275 | McKesson Supplier Invoices, Southern Region | |
| 276 | McKesson Supplier Invoices, Southern Region | |
| 277 | McKesson Supplier Invoices, Southern Region | |
| 278 | McKesson Supplier Invoices, Southern Region | |
| 279 | McKesson Supplier Invoices, Southern Region | |
| 280 | McKesson Supplier Invoices, Southern Region | |
| 281 | McKesson Supplier Invoices, Southern Region | |
| 282 | McKesson Supplier Invoices, Southern Region | |
| 283 | McKesson Supplier Invoices, Southern Region | |
| 284 | McKesson Supplier Invoices, Southern Region | |
| 285 | McKesson Supplier Invoices, Southern Region | |
| 286 | McKesson Marketing & Silicon Product Literature | |
| 287 | McKesson Inventory Cards, Southern Region, Canoga Park | |
| 288 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 289 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 290 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 291 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 292 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 293 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 294 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 295 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 296 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 297 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 298 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 299 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 300 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |
| 301 | McKesson Supplier Invoices, Job Tickets; Debit and Credit Memos; Customer Files, Freight Bills, Purchase Orders - Beaumont location. | |

| Box No. | Description | Date Range |
|---|---|---|
| 302 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 303 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 304 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 305 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 306 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 307 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 308 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 309 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 310 | McKesson Supplier Invoices, Job Tickets, Debit and Credit Memos, Customer Files, Freight Bills, Purchase Orders - Beaumont location | |
| 311 | McKesson Freight Bills, Beaumont and Houston locations | |
| 312 | McKesson Sales Records, Houston location | |
| 313 | McKesson Aeromedic Daily inc Supplier List, Asset/Equipment Records, Texas and Central Region locations | |
| 314 | McKesson Texas Property Agreements | |
| 315 | McKesson Texas Property Agreements | |
| 316 | McKesson Customer Invoices, Chamblee, GA location | |
| 317 | McKesson Product Inventory Cards, Tulsa OK location | |
| 318 | McKesson Invoices - Houston location | |
| 319 | McKesson Invoices - Houston location | |
| 320 | McKesson Invoices - Houston location | |
| 321 | McKesson Invoices - Houston location | |
| 322 | McKesson Bill of Lading - Chattanooga, TN location | |
| 323 | McKesson Bill of Lading - Chattanooga, TN location | |
| 324 | McKesson Bill of Lading, 1986 - Chattanooga locations, VW&R Bill of Lading 1987 - Chattanooga location | |
| 325 | McKesson Bills of Lading, Job Tickets, Inventory Cards - Chattanooga, TN location | |
| 326 | McKesson Invoices to Municipalities in AL, TN, NC, VA, | |
| 327 | McKesson Invoices, Southern Region on Microfiche | |
| 328 | McKesson Asset Ledger, not split up by location | |
| 329 | McKesson Inventory Cards - Philadelphia location | |
| 330 | McKesson Inventory Cards - Philadelphia location | |
| 331 | McKesson Property Files, Hazardous Waste Management Permit for State of NM, Governmental Inspection Reports, Environmental Permits, Safety and Compliance Review inc Albuquerque location. | |
| 332 | McKesson Customer Invoices, Texas location | |
| 333 | McKesson Supplier Invoices, Beaumont, TX location | |
| 334 | McKesson Customer and Supplier Invoices, Beaumont, TX location | |
| 335 | McKesson Invoices, Houston, TX location | |

| Box No. | Description | Date Range |
|---|---|---|
| 336 | Portland Product Literature From Various Distributors | |
| 337 | McKesson Supplier Invoices, Grand Junction location | |
| 338 | McKesson Supplier Invoices, Grand Junction location | |
| 339 | McKesson Files re: Grand Junction Case | |
| 340 | McKesson Supplier Invoices, Grand Junction location | |
| 341 | McKesson Supplier Invoices, Grand Junction location | |
| 342 | McKesson Grand Junction location Property Files | |
| 343 | McKesson Files re: Grand Junction Case | |
| 344 | McKesson Vendor and Fleet Maintenance Invoices 1982-1983 re: Grand Junction location | |
| 345 | McKesson Supplier Invoices, Grand Junction location | |
| 346 | McKesson Supplier Invoices re: Grand Junction location | |
| 347 | McKesson Permit Information, one Wilson Street Permit | |
| 348 | McKesson Distribution Alpha Files | |

17

PRODUCED 1/16/06

# Exhibit 5

**From:**   Jeff Caufield
**Sent:**   Thursday, December 01, 2005 11:24 AM
**To:**   'John Edgcomb'; mwilke@edgcomb-law.com; 'Courtney LeBoeuf'; 'Wilms, Nancy M.'
**Cc:**   'Timothy C. Cronin'; dlyon@crolaw.com; Amber Hinojosa; Ken James

**Subject:** Angeles: Univar Documents Meet and Confer

Dear Counsel:

This will confirm that an impass has been reached with respect to McKesson's obligation to contact and pursue documents in the possession of Univar relevant to this outstanding discovery in this litigation.  Angeles contends that McKesson has the obligation to pursue documents and determine the whereabouts of documents sent to Univar as being in the "custody and control" of McKesson.  McKesson has absolutely refused to pursue any documents in the possession of the Univar or to determine what happened to documents in the possession of Univar contending that the documents are not in the "custody and control" of McKesson.

Accordingly, please be advised that we will be preparing and filing a Local Rule 37 Joint Stipulation seeking to compel McKesson to a) contact Univar, b) ascertain the whereabouts of all records transmitted to Univar by McKesson in the purchase/sale of the McKesson Chemical division, c) produce all potentially relevant records in the possession of Univar and/or provide an explanation as to what happened to the records.

If you have any questions, please contact the undersigned.

Very truly yours,

Jeffery L. Caufield
*Caufield & James LLP*
2851 Camino Del Rio South, Suite 250
San Diego, California 92108
Direct phone: (619) 794-3031
Fax: (619) 325-0231
e-mail: jeff@caufieldjames.com
website: www.caufieldjames.com

THE INFORMATION CONTAINED IN THIS E-MAIL IS CONSIDERED TO BE PRIVILEGED AND CONFIDENTIAL.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE DELETE AND NOTIFY THE SENDER IMMEDIATELY.

# Exhibit 6

# CAUFIELD & JAMES, LLP
2851 Camino Del Rio South, Suite 250
San Diego, California 92108
Ph: (619) 325-0441 Fax: (619) 325-0231
www.caufieldjames.com

Writer's Direct:
(619) 794-3031 (phone)
(619) 325-0231 (fax)

January 18, 2005

**BY E-MAIL ONLY**
John D. Edgcomb, Esq.
Mary Wilkes, Esq.
Law Office of John D. Edgcomb
311 California Street, Suite 340
San Francisco, CA 94104

Re:  Angeles Chemical Co., v. McKesson Corp. et al.,

Dear Mr. Edgcomb,

This letter responds to your letter dated January 16, 2006, in connection with the non-disclosure and non-production of approximately 348 boxes of "newly found" documents which have been withheld by McKesson for the last four (4) years. You now finally admit, after McKesson and you personally have denied it for years, and after countless hours of meet and confers, research, discovery, and motion writing, that such documents are within, and were always within, the possession of Univar and therefore the possession, custody and control of McKesson. We are shocked by the repeated hiding of documents by McKesson, your continued refusal to produce them, and the complete lack of remorse by you and your client. We are witnessing a pattern of conduct that is difficult to believe.

For the reasons more fully set forth below, we hereby respectfully request the following:

1.    McKesson produce, or offer for inspection, immediately all 348 boxes of documents as they are currently being kept by Univar (and any additional boxes, documents or information currently within the possession of Univar or McKesson); and

2.    McKesson also produce, or offer for inspection, any and all documents within such "newly found" 348 boxes of documents that McKesson claims or in any way believes are or were "privileged" for any reason; and

3.    Your response, including any relevant facts or case law citation you deem pertinent to your conduct, by this Friday, January 20, 2006.

1

If we fail to hear from you, or if we cannot otherwise reach mutual resolution to these matters, we will be forced to immediately file a Joint Stipulation for Production of Univar documents based primarily upon the facts and law cited in this letter. We will request that the Court provide the remedies requested above, as well as additional sanctions as deemed appropriate by the Court, including for our attorneys' fees and costs in preparing the motion.

### A.     <u>Meet and Confer</u>

As a threshold matter, you have begun for whatever reason to take a rather unique, skewed and inaccurate approach to the "meet and confer" process under Local Rule 37-1 and applicable case law. We have cited the relevant law in our most recent Joint Stipulation re Privilege Logs, and direct you to review the case law cited therein. The meet and confer process under the federal rules is designed to narrow the issues for the parties' and Court's better understanding to make the process the most efficient for the Court. It is not meant to be a perpetual indefinite process that can be manipulated by one party for months on end, and that can NEVER be exhausted or met by the other. We understand your reluctance to be brought before the Court. Your conduct is not flattering to you or your client, and will surely result in "natural consequences" under the FRCP and case law that will be enforced by the judge. We advise you to immediately explain yourself to us, with law and facts, in response to this letter.

Additionally, in this case, we have been meeting and conferring for years regarding the production of the documents now abruptly "found" for the first time within Univar's possession. McKesson, and you personally, have made several extremely firm and entrenched replies, representations and assurances to the parties and this Court under oath regarding your discovery efforts, including most egregiously your efforts to search for the documents that were under (we believe knowingly) your very nose for years. You have said that no such documents existed, "no stone was left unturned" and that McKesson had no knowledge where such documents existed. Your representations in this regard are all well documented, and now obviously false, and will be brought before this Court. As recently as several months ago, you took the position that you had no obligation to seek documents at Univar, and that you absolutely refused to request any such documents from Univar. Instead, you contended that Univar had no such documents and you had no reason to believe they did and you defiantly indicated you would not ask them. Incredible. Now you admit unabashedly they have 348 boxes of documents, apparently a significant portion of McKesson Chemical Company's operations, environmental, safety, policies and procedures, vendor records etc.. . . documents from the prior sale of such division of McKesson to Univar (previously known as Van Waters & Rogers). There is no reasonable or conceivable excuse for your conduct.

You also take the equally incorrect position that you can escape the effects of your egregious conduct by "throwing a bone" to Angeles in compromise, and that Angeles must accept your unreasonable offers or be in violation of the meet and confer process and Local Rules. The Court will see through your feeble attempts at further manipulating the process. You cannot violate, desecrate and humiliate the discovery process, break the law, ignore the FRCP, Local Rules, case law, and even more

importantly Court orders and judicial factual findings, then offer something far less than you were required to provide in the first place, and expect or require Angeles to accept it in return. Angeles is justified in demanding that McKesson comply with the law. Angeles expects, and will accept, nothing less. We have the right to review and analyze all relevant documents, and all documents that may or could lead to admissible evidence. Your continued hiding of documents, and "don't ask, don't tell" policy is now completely confirmed and proved (again) by this most recent violation in connection with the Univar documents. You cannot be trusted to make any determinations regarding relevancy or applicability of documents in this litigation. The Court has ruled as such, and you have shown a propensity to "misconstrue" (knowingly or not) what is germane to this case.

Lastly, based upon your refusal to produce such documents in such fashion in your January 16, 2006 letter, we are at a loss to understand why you insist on further meet and confer. You know the reasons we are asking for the documents. We have cited the law to you repeated times in connection with other matters. The Court has ruled you cannot be trusted, based upon your prior conduct, and ruled on nearly identical issues in connection with the 179 boxes of "Brobeck Documents." Your feigned ignorance and continued "stonewalling" only make your conduct worse. To clarify and solidify our position, please consider the following.

### B.    **Production of All 348 Boxes**

#### 1.    **McKesson Cannot Be Trusted**

Without stating again the Court's previous orders, suffice it to say McKesson and its counsel cannot be trusted to make any "relevancy" or similar determinations as to what is applicable, or may lead to admissible, documentary or other evidence in this case. We do not, and cannot, trust you based upon your prior and continuing conduct. Your continued and ongoing discovery abuses with no remorse bear this out. You are not capable of making any determinations in this regard, and we are now aware, you never were.

Furthermore, there are now piling up a litany of discovery abuses as outlined in the following documents, declarations in support thereof, and attached exhibits, already served upon McKesson:

    a.    Joint Stipulation re Deposition Transcripts;

    b.    Joint Stipulation re Settlement Agreements;

    c.    Joint Stipulation re Protective Order 30(b)(6);

    d.    Joint Stipulation re Relevancy;

    e.    Joint Stipulation re Privilege Logs;

    f.    Court Order re re 30(b)(6); and

    g.    Court Order re Relevancy.

Angeles incorporates by reference as if set forth herein, each of those documents (including declarations and exhibits in support thereof) in their entirety, in an effort to streamline the description of McKesson's long and distinguished history, pattern and practice of discovery abuses. After McKesson's prior egregious conduct, we didn't think

that we could be surprised by any more of McKesson's behavior, however, the recent "bombshell" that McKesson "found again" another 348 boxes of new and additional documents did surprise us.

## 2.     <u>Relevance – May Lead to Admissible Evidence</u>

"Parties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party . . . <u>Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.</u>" (FRCP 26(b)(1), emphasis added.) Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Federal Rules of Evidence, Rule 401; see also <u>Dolby v. Lucent</u> (N.D. Cal. 2004) 2004 WL 2445232.)

There is no doubt that "relevancy" for purposes of discovery is broad. "For the question of relevancy 'is to be more loosely construed at the discovery stage than at the trial.'" (<u>Kerr v. U.S. District Ct., Northern District of CA</u> (1975) 511 F.2d 192, 196, citing 8 Wright & Uller, Federal Practice and Procedure, s 2008 at 41 (1970).) Therefore, under Federal Rule of Civil Procedure, Rule 26(b)(1), "it is no ground for objection that information sought in pretrial discovery would not be admissible at trial, 'if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.'" <u>Id</u>. (citing <u>Olympic Refining Company v. Carter</u> 332 F.2d 260, 266 (9th Cir. 1964). "[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment' . . . litigants have a right to 'every man's evidence' . . . and wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." (<u>Shoen v. Shoen</u> (9th Cir. 1993) 5 F.3d 1289, 1292, citations omitted.) "In addition to discovering information pertaining to a party's case in chief, it is entirely proper to obtain information for other purposes such as cross-examination of adverse witnesses." (<u>Id</u>. At 196-197, citing <u>United States v. Meyer</u>, 398 F.2d 66, 72 (9th Cir. 1968).)

Remarkably, the issues surrounding the Univar documents are nearly identical to the issues already decided upon by the Court regarding the 179 boxes of "Brobeck Documents" that were suddenly "found" by McKesson almost two years ago. Now, McKesson has suddenly "found again" this time 348 boxes of documents regarding McKesson's operations etc. astoundingly four (4) years into this litigation. The Court here recently ruled on the eerily similar and nearly identical issue of McKesson's inability to determine "relevant" from "non-relevant" documents, because its credibility was "frayed and spent." You incorrectly, and amazingly argue that the Court's ruling was incorrect, and only considered one page of deposition testimony to make its ruling. Bury your head in the sand, it does not change the color of the sky. Re-read the orders. Among other things, the Court relied upon McKesson's sudden "finding" of 179 boxes in its possession after years of searching, McKesson's and its counsels' prior false assertions that it had exhaustively searched everywhere, McKesson and its counsel's conduct in redacting deposition transcripts at all (let alone relevant testimony regarding SFS), the shell game tactics, the withholding and hiding of voluminous documents, and McKesson, its counsel, and Mescher's position in not being forthright in identifying and divulging documents, etc. The Court found McKesson is playing shell games with the

discovery process in total, not just in regards to one page of deposition testimony. We believe the Joint Stipulation re Privilege Logs removes all doubt regarding McKesson's conduct. You will disagree. The irony is, if you felt the Court was incorrect, isn't it your obligation to your client in this case to appeal the ruling? You did not.

The 348 boxes of documents are relevant to this lawsuit, or appear reasonably calculated to lead to admissible documents and evidence. Accordingly, and for the reasons already cited in the Joint Stipulation re Relevancy, and in the Joint Stipulation re Privilege Logs, and the Court's rulings on relevancy and 30(b)(6), you should turn over the documents in their entirety.

### 3.    Discovery Abuses – Court Has Broad Sanctioning Power

The Court has long had wide discretion in sanctioning a party for disclosure and discovery abuses, either through the specific authority of the Federal Rules of Civil Procedure or through its inherent powers. Fjelstad v. American Honda, 762 F.2d 1334, 1338 (9th Cir. 1985); Tarango Trucking v. County of Contra Costa, 202 F.R.D. 614, 618 (N.D. Cal. 2001); Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 555-557 (N.D. Cal. 1987). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Residential Funding, 306 F.3d at 106-07. Some courts have employed an even lesser standard for imposing sanctions, holding that "evasive or incomplete answers are tantamount to no answer at all," allowing sanctions under FRCP, Rule 37(d). Airtex Corp. v. Shelley Radiant Ceiling Co., 536 F.2d 145, 155 (7th Cir. 1976).

Specifically, when a party fails to disclose or produce information or documents that were previously requested through discovery, and such documents were in the possession of the responding party but were not produced, a court may impose various sanctions, including monetary sanctions (costs and attorney's fees), evidence preclusion, and even default judgment, among other sanctions. Fed. R. Civ. P. 26(g) and 37(c). "[W]here . . . the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the party that breached its obligation) . . . ." Residential Funding, 306 F.3d at 101.

### 4.    McKesson's Repeated and Continuing Failure to Produce Information and Documents in Response to Discovery Requests Should Be Sanctioned By Requiring McKesson To Turn Over All 348 Boxes

As discussed above, an attorney's or party's signature on a discovery response constitutes a certification that such response is complete and correct to the best of the signer's knowledge and belief, formed after reasonable inquiry. Fed. R. Civ. P. 26(g)(1). In this regard, in signing a response to a request for production of documents, a party or attorney is certifying that it is producing all relevant documents which are in their "possession, custody or control." Fed. R. Civ. P. 34(a).

5

A party responding to a discovery request under FRCP, Rule 34 must review all the files in its possession, custody or control which may contain documents responsive to its adversary's requests. Fed. R. Civ. P. 34; MTB Bank v. Fed. Armored Express, 1998 WL 43125, at 5 (S.D.N.Y. 1998) (citing, Bank of New York v. Meridien Biao Bank Tanz. Ltd., 171 F.R.D. 135, 147-54 (S.D.N.Y. 1997) (imposing continuing obligation to inquire about responsive documents in possession of managing agents, accountants and lawyers)). Under "Federal Rule of Procedure 34, which governs the production of documents during discovery, the clear rule is that documents in the possession of a party's current or former counsel are deemed to be within that party's 'possession, custody and control.'" Johnson v. Askin, 202 F.R.D. 112, 114 (SDNY 2001) (quoting, MTB Bank,1998 WL 43125, at 4). See also, Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., 1994 WL 419830, at 6 (S.D.N.Y. 1994) (finding that party had right of access to documents in possession of former counsel).

Additionally, "possession, custody or control" is construed broadly and includes documents that a party has the legal right or ability to obtain upon demand from the possession of another, which would include from an attorney, doctor, accountant or subdivision which it controls. Martini v. A. Finkl & Sons Co., 955 F.Supp. 905, 907 (N.D.Ill. 1997); Wardrip v. Hart, 934 F.Supp. 1282, 1286 (D.Kan. 1996); Florentia Contracting Corp. v. Resolution Trust Co., 1993 WL 127187, at 3 (S.D.N.Y. 1993).

As we have stated ad nauseum in prior correspondence, McKesson and Univar had a contractual agreement as part of the sale of McKesson Chemical Company to Univar that Univar would continue to hold all McKesson documents and cooperate with McKesson in the event McKesson ever needed access to such documents. Clearly, this put the 348 boxes of documents within the possession, custody and control of McKesson.

Sanctions may be imposed even for negligent failures to provide discovery. Lew v. Kona Hosp., 754 F.2d 1420, 1427 (9th Cir. 1985); Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir. 1978); Tarango, 202 F.R.D. at 620 (citing Fjelstad, 762 F.2d at 1343).

If the certification is violated, the court "shall" impose an appropriate sanction on the signer unless substantial justification for the violation is shown, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including reasonable attorney's fees. Fed. R. Civ. P. 26(g)(3) and 37(c)(1).

In the face of the multiple discovery requests from Angeles, and given the contested nature of McKesson's business practices in contaminating its own and the surrounding properties, McKesson's inability or unwillingness to locate the McKesson Chemical Company's operations documents, that were clearly within its possession and control is an inexcusable failure to comply with the discovery rules.

Several Ninth Circuit district and appellate cases have found that when a party fails to produce documents after a specific request for production under Rule 34, an appropriate sanction is to award expenses including attorney's fees for bringing the motion on which sanctions are based, and also attorney's fees for conducting additional discovery based on the late production of documents. Marquis, 577 F.2d 641-42; Tarango, 202 F.R.D. at 618, 620; Radiation Survivors, 115 F.R.D. at 555-58.

In our case, all we are currently asking of McKesson is to turn over all 348 boxes of documents for inspection. The Court has good cause to force McKesson to produce such documents since McKesson has failed and refused to turn over such documents now for four (4) years into this litigation.

6.   **No Prejudice or Burden To McKesson: Angeles' Request Is Not Overly Burdensome or Oppressive, Since The Univar Documents Are A Finite Universe of Easily Identifiable, Accessibly Located, Organized Set of Highly Relevant Documents Already Produced in the Sale to Univar**

There is no prejudice or burden on McKesson in producing the 348 boxes of documents. The documents, similar to Brobeck's documents, are all in one easily located place, apparently already organized in boxes, with indices, all within Univar's and McKesson's possession. Also, apparently, judging from the Index of all 348 boxes already produced by McKesson, McKesson has already gone through, reviewed and analyzed all 348 boxes. The fact that McKesson already produced the documents to Univar, shows that they are in one easily identifiable location and easily re-produced. There is no burden to McKesson in producing all the documents for inspection.

7.   **The Univar Documents Must Be Produced So Angeles May Effectively Cross-Examine McKesson Employees, Executives and Adverse Witnesses**

Not only is the information relevant to Angeles' claims and defenses, but the information sought could well lead to the discovery of facts which could be used to impeach the adverse witnesses' credibility at trial. "In addition to discovering information pertaining to a party's case in chief, it is entirely proper to obtain information for other purposes, such as cross-examination of adverse witnesses." Kerr v. U.S. District Court for Northern District of CA (9th Cir., 1975) 511 F.2d 192, 196-197.)

McKesson has produced approximately 100 deposition transcripts from the Underlying Litigation, which primarily discuss matters relating to SFS, Union City and Commerce City. McKesson has withheld a vast number of documents relating to business and environmental matters in general at such sites, and any and all documents that reference Union City or Commerce City, or that McKesson in its own proven "untrustworthy" judgment deems to be "irrelevant." McKesson's historical decisions regarding what it determines to be "irrelevant" is extremely and incorrectly overbroad. The information regarding the other sites in the Underlying Litigation is relevant to proving that McKesson had prior knowledge of contamination at the other sites, and then intentionally took conduct similarly damaging to the environment at SFS and knowingly detrimental to Angeles. Angeles should have the right to confront and cross-examine McKesson employees, executives, decision-makers and other deponents with this vital information in this litigation, to determine and impeach their credibility on this vital topic.

8. **Angeles Has Been Severely Prejudiced by McKesson's Extensive Withholding of Documents From Univar**

Over the years, McKesson's non-disclosure and non-production of documents and information relating to McKesson's Operations has caused Angeles to spend extra time and money in attorneys' fees and costs revisiting this issue and attempting to encourage and force McKesson to find relevant documentation. In this regard, you adamantly refused for four (4) years to call or write Univar, when you knew McKesson sold its chemical division to Univar, you were aware that Univar and McKesson had agreed contractually that Univar would protect such McKesson documents, cooperate with McKesson in producing them, and not destroy them without notice to and/or consent from McKesson. For all intents and purposes, Univar was simply storing the McKesson documents for McKesson, and McKesson had the legal right to retrieve such documents at any time. In this regard, the documents were clearly within the possession, custody and control of McKesson under applicable law.

Startlingly, it appears that the highest ranking executives at McKesson knew that the documents were being held by Univar for McKesson, that such documents were transferred as a result of the sale, and letters and other communications prove this. Once again, McKesson has been caught in its own web of deceit, hide the ball and shell game tactics of knowing where the documents were, and intentionally not disclosing or producing them to Angeles. Worse, McKesson and you personally went to great lengths to mislead Angeles and this Court of the location of such documents, repeatedly thwarting, blocking and sandbagging all of Angeles' attempts over the years to subpoena and otherwise discover the documents from Univar. Even more precocious are your highly suspect and coy representations to Angeles and this Court about who you asked (or didn't ask) for documents or information within McKesson in order to satisfy your discovery obligations. McKesson has employed the "don't ask, don't tell" policy in this litigation for years, which is now finally coming to light. Magistrate McMahon, and especially Honorable Terry Hatter, are not apparently the types of judges who foster this type of conduct.

Furthermore, Angeles has been at a disadvantage in discovery and has been prejudiced by not being able to prepare its case and conduct discovery with the full inclusion of information related to the McKesson Insurance Litigation and McKesson's Operations. As a result of McKesson's failure to produce the required information, Angeles will have to once again re-visit and reexamine key issues in the case and expend even more time and money in reviewing the documentation, propounding additional discovery and taking additional depositions. To date, McKesson has continued to delay in producing the documents within its possession, and now admits within its possession an additional 348 boxes of documents representing the very operations documents that McKesson has been disclaiming as "vanished" for years. McKesson's inexcusable conduct has caused and will continue to cause Angeles to expend additional attorneys' fees and costs.

9. **Angeles Has Good Cause to the Broader Discovery of the Subject Matter of This Litigation Which Includes the 348 Boxes of Univar Documents In Their Entirety**

For good cause, a party may discover all relevant information relating to the broader "subject matter" at issue, and not just the "claims and defenses" in the complaints and answers. (Thompson v. Department of Housing & Urban Development (D. MD 2001) 199 FRD 168, 171; Sanyo Laser Products, Inc. v Arista Records, Inc. (SD IN 2003) 214 FRD 496, 498.) Relevancy to the subject matter is interpreted broadly. Information is "relevant to the subject matter" if it might reasonably assist a party in evaluating the case, preparing for trial or facilitating settlement thereof. (Hickman v. Taylor (1947) 329 U.S. 495, 506-507.) However, the "standard of relevancy is not so liberal as to allow a party to . . . explore matter which does not presently appear germane on the theory that it might conceivably become so." (Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL-CIO-CLC (DC Cir. 1997) 103 F.3d 1007, 1012-1013.) For the many reasons set forth above, Angeles has good cause and should receive the Univar documents in their entirety.

### 10. McKesson is Protected By Motions in Limine and Admissibility Rulings in Pre-Trial Determinations of Relevancy

McKesson is making a big deal that it will be highly prejudiced if the Univar documents are produced in their entirety. This is simply not the case. The proper method of protecting McKesson is through the pre-trial process of determining relevant and admissible evidence. McKesson is free to bring motions in limine to address its concerns and challenge any so called "irrelevant and inadmissible" evidence at that time. Therefore, McKesson is not prejudiced by Angeles receiving all 348 boxes of documents as requested.

### C.    McKesson Has Waived All Privileges Related to the Univar Documents Under Burlington And Related Law

As you know, we have recently briefed extensively in the Joint Stipulation re Privilege Logs the issues regarding a party's obligations to produce privilege logs in a timely and specific fashion for documents within its possession, custody and control. Clearly, the documents of McKesson Chemical Company and McKesson Corporation have been within Univar's control since the inception of this lawsuit and McKesson has intentionally failed and refused to even ask Univar for any documents, despite McKesson's and Univar's contractual obligation to cooperate and maintain McKesson records and not destroy them. Therefore, McKesson should have produced such documents four years ago, as it knew, or should have known they had them for that long. In turn, McKesson should have also produced "privilege logs" regarding any claimed or asserted privileges regarding such documents four years ago. We note, despite having reviewed the documents apparently extensively, McKesson still has failed and refused to turn over any privilege logs regarding the documents within Univar's possession. Accordingly, based upon the extensive case law and factual citations in the Joint Stipulation re Privilege Logs, the Burlington decision, FRCP Rules 26(b)(5) and 34, and the Advisory Committee Notes thereto, we submit that McKesson has waived all rights to any privileges re the Univar documents as failing to timely produce any privilege logs regarding such documents.

Additionally, under the law as set forth above, the Court has broad sanctioning power to impose penalties upon parties regarding their discovery abuses. We further submit that McKesson's conduct of intentionally failing and refusing to turn over or identify the 348 boxes of documents in Univar's possession for over four years, in concert with McKesson's prior horrendous conduct and progressively worsening pattern and practice of discovery abuses listed above and referenced herein, warrants a Court to sanction McKesson by finding it has waived its privileges as a penalty for its repeatedly hiding documents and stalling this litigation.

Based upon these reasons, under Local Rule 37-1, and considering that the parties have been meeting and conferring on these issues for months now (and you have already adamantly refused to produce the requested documents, contrary to the spirit of nearly identical court rulings), Angeles hereby demands an immediate response to the requests herein, but in no event later than Friday, January 20, 2006. Absent mutual resolution to the issues by then, Angeles will be submitting forthwith a Joint Stipulation regarding the matters discussed herein.

We look forward to your timely response.

Very truly yours,

Jeffery L. Caufield
Of Caufield & James LLP

Cc: Timothy Cronin
     Devon Lyon

10

# Exhibit 7

LAW OFFICE OF

JOHN D. EDGCOMB

115 Sansome Street

Suite 805

San Francisco, CA 94104

415.399.1555 tel.

415.399.1885 fax

jedgcomb@edgcomb-law.com

December 12, 2005

**BY E-MAIL AND FEDEX**
Jeffery L. Caufield, Esq.
Caufield & James, LLP
2851 Camino Del Rio South, Suite 250
San Diego, California 92108

Re: Univar Documents Meet and Confer

Dear Mr. Caufield:

In the spirit of cooperation and effort to resolve a discovery dispute between the parties, McKesson contacted Univar and inquired about the possibility that Univar possessed McKesson Chemical Company ("MCC") documents that were either responsive to plaintiffs' document requests or to other informal requests for documents made by plaintiffs to McKesson. Univar responded that it had general MCC documents, although the box summaries it had did not indicate any of these documents specifically referred to MCC's Santa Fe Springs site ("SFS Site").

We completed our review of the first set of MCC documents made available by Univar today. We located the following documents that arguably could be responsive to plaintiffs' document requests or other requests. Except as noted, these documents are currently being scanned or, in the case of videotapes, have been copied. We expect all will be produced this week. We will forward the scanning invoices as soon as we receive them and expect that your firm will reimburse us for one-half of the costs.

1. Supplier invoices for chemicals sold to the MCC facility at 9005 Sorenson Ave., Santa Fe Springs, CA site.
2. SFS Approval to Repack Items and SFS Repack Approval Activity Reports. (These two folders contain form documents authorizing the SFS Site to repack specific chemicals and related documents).
3. "Repack instruction sheets" for MCC products (1 box of generic documents, not related to any specific MCC site).
4. Photographs of the SFS Site (less than 20).
5. McKesson Chemical Operations & Training Manual (with docs. dated 9/15/85 and 7/30/86)(we believe we have produced this to you before, but are re-producing this version in an abundance of caution), California Right-to-Know Law training manual (generic manual but relates to chemicals and safety, so it is being produced), other company-wide training materials and memoranda (generic, but relate in part to chemicals and safety, so they are being produced).

Jeffery Caufield, Esq.
December 12, 2005
Page 2

6.  Ten videotapes produced by McKesson in 1985 or 1986.  We are producing all
the videos listed for the sake of completeness, even though some only mention
environmental concerns in passing, if at all. The video titles are:

- The Winning Strategy – Efficiency (11/20/85)
- Hazard Communication & Employee Right to Know (12/9/85)
- The Winning Strategy – Safety & The Environment, McKesson & The
  Chemical Industry (2/6/86)
- First On The Scene (2/6/86)
- Account Management, Matching Price & Cost To Serve (4/3/86)
- The Winning Strategy – Safety & The Environment, Part II (5/2/86)
- We Deliver More (5/19/86)
- McKesson Emergency Response Kit A & B video (7/4/86)
- The Winning Strategy (no date on tape)
- The Winning Strategy – Customer Service (no date on tape)

We enclose the copies of these videos, Except "The Winning Strategy –
Efficiency," which we will forward when we receive it.

7.  Two boxes of generic slides, apparently on worker safety issues (they do not
appear to contain any relevant information, but again we are producing for the
sake of completeness).

We also have located two boxes containing solely generic labels of MCC products
that we are giving you the option of reviewing and/or scanning.  We believe are of
limited value.  They are generic and do not relate to any specific MCC facility.
Let us know if you wish to inspect these labels, have them scanned, or neither.
There were no privilege documents identified during our document review
completed today, so we will not be producing a privilege log.

Any remaining MCC documents in Univar's possession are in Seattle and will be
made available for our review later this week after Univar reviews and extracts all
Univar documents.  We will produce any additional responsive documents as
soon as we complete our review.  Please call me if you have any questions.

Very Truly Yours,

John D. Edgcomb

Enclosures (9)

cc: Devon Lyon, Esq.

# Exhibit 8



SQUIRE, SANDERS & DEMPSEY L.L.P.

One Maritime Plaza, Suite 300
San Francisco, California 94111-3492

Office: +1.415.954.0200
Fax: +1.415.393.9887

Direct: +1.415.954.0368
DiGibson@ssd.com

July 25, 2007

**VIA MESSENGER**

Jeffery Caufield, Esq.
**Caufield & James**
2851 Camino Del Rio South, Suite 250
San Diego, CA  92108

      Re:    **Revised/Supplemental Privilege Log**

Dear Mr. Caufield:

      Along with this letter, Squire, Sanders & Dempsey L.L.P. ("SSD") provides its Revised and Supplemental log of documents withheld from SSD's production of documents pursuant to claims of privilege, pursuant to the Court's Order dated July 5, 2007. This consists of SSD's privilege log provided on April 19, 2006 (with minor corrections as to bates numbers in items 56 and 58), along with SSD's Revised/Supplemental Log Pursuant to July 5, 2007 Court Order.

      SSD has taken diligent steps to locate responsive documents and to review them for attorney work product, attorney-client privilege and confidentiality. Given the large number of files, the length of time that has passed since most of the work was performed, and the number of entities that might claim a privilege as to documents in SSD's possession, SSD reserves the right to add to the log and to request the return of any documents that are later discovered to be subject to a claim of privilege and to have been inadvertently produced, and/or to augment the log with any later-discovered documents.

            Sincerely,

            SQUIRE, SANDERS & DEMPSEY L.L.P.

            Diane L. Gibson

DLG/mdd

SANFRANCISCO/227715.1

CINCINNATI • CLEVELAND • COLUMBUS • HOUSTON • LOS ANGELES • MIAMI • NEW YORK • PALO ALTO • PHOENIX • SAN FRANCISCO • TALLAHASSEE • TAMPA • TYSONS CORNER
WASHINGTON DC • WEST PALM BEACH | CARACAS • RIO DE JANEIRO • SANTO DOMINGO | BRATISLAVA • BRUSSELS • BUDAPEST • FRANKFURT • LONDON • MOSCOW
PRAGUE • WARSAW | BEIJING • HONG KONG • SHANGHAI • TOKYO | ASSOCIATED OFFICES: BUCHAREST • BUENOS AIRES • DUBLIN • KYIV • MILAN • SANTIAGO
www.ssd.com

| # | Date | Author(s) | Recipient(s) | CC | Subject | Format/Description | Purpose | Bates No. | Privilege |
|---|---|---|---|---|---|---|---|---|---|
| 14 | 2/4/1986 | Nick Gardner, McK Regional Compliance Specialist | I. Meyerson, Esq. McK (D); David McK VP Materials Mgmt., W. Loo McK Director Geo-Technical Services, D. Landry McK Mgr. Western Regional Operations | J. Lacey | McKesson Chemical Co. re: Phoenix service center re ADHS draft order | Intra-Company Correspondence re: Meyerson's preparation of response re Phoenix Service Center | McKesson employee seeking legal advice from in-house counsel | SS0004798 | A/C, AWP |
| 15 | 4/15/1986 | Nick Gardner, McK Regional Compliance Specialist | I. Meyerson, Esq. McK, D. Davis McK VP Materials Mgmt., D. Landry McK Mgr. Western Regional Operations, W. Loo McK Director Geo-Technical Services, Inc. re: Phoenix Environmental | | McKesson Chemical Co. re ADHS compliance order re Phoenix facility | Intra-Company Correspondence re N Gardner's comments on draft ADHS compliance order re Phoenix facility | McKesson employee seeking legal advice from in-house counsel | SS0004695-SS0004697 | A/C, AWP |
| 16 | 2/11/1986 | Nick Gardner, McK Regional Compliance Specialist | Dick Davis, McK VP Materials Mgmt | J. Lacey, D. Landry, B. Cramm, W. Loo, R. Aegust | McKesson Chemical Co. re Phoenix environmental response status report | Intra-Company Correspondence re Phoenix environmental response status report (REDACTED last of one entry describing discussions with Ivan Meyerson, Esq.) Produced redacted version | Determine site investigation strategy. | SS0004620-SS0004691, SS0004717-SS0004719 (duplicate copy) | A/C, AWP |
| 17 | 4/11/1986 | Nick Gardner, McK Regional Compliance Specialist | Dick Davis, McK VP Materials Mgmt | J. Lacey, D. Landry, B. Cramm, R. Aegust/W. Bange, W. Loo, | McKesson Chemical Co. re Phoenix environmental response activities report | Intra-Company Correspondence re Phoenix environmental response activities report (REDACTED last of one entry describing discussions with Ivan Meyerson, Esq. and counsel) Produced redacted version. | Determine site investigation strategy | SS0004917-SS0004913, SS0004723-SS0004724 (duplicate copy) | A/C, AWP |
| 18 | 2/24/1989 | Susan Pauker, Esq. McK | B. Blecker, Jon d'Almelda, Doug Elsner, Morrison Kiroor, Ivan Meyerson, Esq., Alan Pearce, Ronald Pawlenski | | McKesson Chemical Co. re McKeven v. Ingalls Shipyards | Intra-Company Correspondence re: asbestos wrongful death action | | | A/C, AWP |
| 19 | 5/19/1986 | Doug Elsner | Susan Pauker, Esq. | | McKesson Chemical Co. re asbestos litigation | Intra-Company Correspondence re: fact gathering re asbestos litigation. | Update McKesson employees on status of litigation. | SS0002007 | A/C, AWP |
| 20 | 5/28/1992 | Ivan Meyerson, Esq. | Doug Elsner | | Forward: McKesson re New Jersey application | Intra-Company Correspondence re responding to inquiry re New Jersey application | Communicate with in-house counsel. Provide legal advice on how to respond to inquiry. | SS0004670, SS0015418-SS0015419 (duplicate copy) | A/C, AWP |

Bold entries are from SSD's second set of documents (2 boxes) provided to McKesson on 4/5/07

3 of 4